UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE  :
WORKERS EAST,                :     07 Civ. 4816 (GBD)
                             :
            Plaintiff,       :     VERIFIED COMPLAINT
                             :
     -against-               :
                             :
RITE AID CORPORATION and     :
THE JEAN COUTU GROUP (PJC), INC., :
THE JEAN COUTU GROUP USA, INC., :
d/b/a BROOKS ECKERD DRUG STORES :
                             :
            Defendants.      :
------------------------------------------------------------X

Plaintiff 1199SEIU United Healthcare Workers East, affiliated with the Service Employees International Union ("1199" or "Union"), by its undersigned attorneys, Levy Ratner, P.C. for its Complaint against Rite Aid Corporation and Eckerd/Brooks (collectively referred to as "Defendants") alleges:

## NATURE OF THE ACTION

1.      This is an action to for a preliminary injunction in aid of arbitration under the collective bargaining agreement between 1199 and Defendant Rite Aid Corporation ("Rite Aid") of an arbitrable dispute.  The dispute involves Rite Aid's threatened refusal to apply the terms of the parties' collective bargaining agreement to drug stores acquired by Rite Aid pursuant to an anticipated merger between Rite Aid and Defendant The Jean Coutu Group (PJC), Inc. ("Coutu Inc."), and Defendants' union avoidance campaign directed towards employees at those stores.  1199 asks the Court in this proceeding to enjoin Defendants from engaging in their union avoidance campaign until such time as the arbitration procedure is concluded and it is determined whether Defendant Rite Aid's

threatened refusal apply the collective bargaining agreement to newly acquired stores, and Defendants' union avoidance campaign, violates the parties' collective bargaining agreement. Injunctive relief to preserve the status quo is necessary to preserve the integrity of the arbitration process and prevent that process from becoming a futile and hollow formality.

## JURISDICTION AND VENUE

2.   This Court has federal question jurisdiction based upon Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. This action is properly before this Court pursuant to LMRA §301(c), which permits lawsuits by a labor organization in the district of its principal place of business.

## PARTIES

3.   Plaintiff 1199 is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §152(5), with its principal place of business at 310 West 43rd Street, New York, New York 10036. It is the collective bargaining representative for approximately 250,000 employees in New York and throughout the east coast of the United States, including approximately 6,500 pharmacists, pharmacy technicians, pharmacy interns, clerks, stock persons, shift supervisors, assistant managers and other employees employed by Defendant Rite Aid.

4.   Defendant Rite Aid is an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business at 30 Hunter Lane, Camp Hill, Pennsylvania.

5.   Defendant Rite Aid operates retail drug stores and pharmacies.

7.      Defendant Coutu Inc. is an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business in Longueuil, Quebec, Canada.

8.      Defendant The Jean Coutu Group USA, Inc. d/b/a Brooks and Eckerd Drug Stores ("Coutu USA") is a subsidiary of Defendant Coutu Inc. and is an an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business at 50 Service Avenue, Warwick RI 02886-1021.

9.      Defendant Coutu USA owns and operates approximately 1,850 Brooks Eckerd retail pharmacy stores ("Eckerd stores") in the Northeast and Mid-Atlantic regions of the United States.

## THE COLLECTIVE BARGAINING AGREEMENT

7.      Plaintiff and Defendant Rite Aid have been parties to a series of collective bargaining agreements, the most recent of which was effective for the period October 11, 1998 through October 10, 2002 ("CBA").

8.      The CBA has been extended, with certain modifications, by two (2) subsequent Memoranda of Agreement, the first effective for the period October 13, 2002 through October 14, 2006 ("2002 MOA") and the second effective for the period October 14, 2006 through October 14, 2010 ("2006 MOA").

9.      The CBA, as modified by the 2002 MOA and 2006 MOA sets forth the terms and conditions of employment for covered employees.

10. Article 2 of the CBA provides that 1199 is the sole and exclusive representative of all professional and nonprofessional employees in the drug stores in the geographical area set forth in Article 1 ("Bargaining Unit").

11. The CBA sets forth the negotiated terms and conditions of employment in the Bargaining unit, including, *inter* alia, wages (Article 5), negotiated hours of work (Article 7), vacations and holidays (Articles 8 and 9, respectively), seniority protection (Article 12), and health insurance and pension benefits (Articles 26 and 27, respectively). These terms and conditions have been extended, with certain modifications, by the 2002 MOA and 2006 MOA.

12. CBA Article 1, Coverage, provides that

> This Agreement shall be binding upon the Union, the Employer and its successors and assigns, but shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by Rite Aid Corporation (including, but not limited to those in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores), in the City of New York, and the New York Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and Rockland, and the City of Albany, and the New Jersey Counties of Passaic, Bergen, Essex, Hudson, and Union and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in Middlesex County, New Jersey, regardless of the name or whether the drug store is operated individually or as a partnership or corporation.
>
> \* \* \*
>
> The words "Employer" or Employers," as whenever used in this Agreement, and the pronouns, "he" and "his," used in connection therewith, are intended to apply to the Employer, Rite Aid Corporation, and to each drug store covered hereunder, whether operated by an individual, copartnership or corporation.

13. CBA Article 1 was not modified by the 2002 MOA or the 2006 MOA.

14. Article 31 of the CBA contains a broad grievance and arbitration procedure for the resolution of all disputes between 1199 and Defendant Rite Aid. It provides:

> All complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement (herein referred to as a "grievance" shall be adjusted pursuant to the terms and conditions of this grievance and arbitration procedure.

15. Article 31's definition of "grievance" was not modified by the 2002 MOA or the 2006 MOA.

16. The arbitration provision of Article 31, as modified by the 2006 MOA, permits the Union to refer unsettled grievances to arbitration before an Arbitrator designated by the American Arbitration Association.

## THE UNDERLYING ARBITRABLE DISPUTE

17. Upon information and belief, Rite Aid and Coutu Inc. entered into a merger agreement pursuant to which Rite Aid will acquire, in full, all Eckerd stores, including those stores within the geographical area set forth in Article 1 of the CBA ("Merger Agreement").

18. Upon information and belief, the Federal Trade Commission's approval of the Merger Agreement is currently pending.

19. In or around April 2007, Rite Aid, in conjunction with the management of the to-be-acquired Eckerd and Brooks stores, launched a union avoidance campaign though which Defendants are evidencing open hostility towards the Union and are discouraging employees at the those stores from speaking with Union representatives, signing union authorization cards, communicating with their co-workers about theUnion

or otherwise demonstrating support for the Union ("Union Avoidance Campaign"). Defendants have also threatened reprisals against employees who support the Union. Defendants' Union Avoidance Campaign is currently ongoing.

20. On or about May 24, 2007, Defendant Rite Aid informed the Union that it intends to apply a "union-free business model" to the Brooks stores it acquires pursuant to the Merger Agreement.

21. On or about May 31, 2007 the Union filed a demand for arbitration seeking, *inter alia,* a declaratory ruling from an arbitrator that Defendant Rite Aid's stated intention to keep the acquired Eckerd stores "union free" is a violation of Article 1 of the CBA and a ruling that Defendants' concerted Union Avoidance Campaign violates the implied covenant of good faith and fair dealing in the CBA because it frustrates the Union's ability to enforce Article 1 as to those newly acquired stores.

22. On or about May 31, 2007, the Union sent a letter to Defendant Ride Aid enclosing a copy of its demand for arbitration and requesting that Rite Aid consent to expedited arbitration of this dispute.

23. To date, Rite Aid has not agreed to expedited arbitration.

24. 1199 has filed this action for relief in aid of the duly demanded arbitration to preserve the *status quo* and the arbitrator's power to remedy the claimed breach by directing that Defendants cease engaging in the Union Avoidance Campaign.

25. If Defendants' Union Avoidance Campaign continues pending an arbitrator's award, 1199 will be irreparably harmed by its inability to enforce Article 1 of the CBA ("Coverage") with respect to the to-be-acquired Eckerd stores and the

employees at those stores will be irreparably harmed by being denied Union representation and contractual benefits to which they are entitled.

### AS AND FOR A FIRST CAUSE OF ACTION

26. 1199 repeats and realleges each and every allegation contained in paragraphs numbered 1 though 25 hereof with the same force and effect as if again set froth herein at length.

27. The dispute between 1199 and Rite Aid is arbitrable under their Agreement.

### AS AND FOR A SECOND CAUSE OF ACTION

28. 1199 repeats and realleges each and every allegation contained in paragraphs numbered 1 though 27 hereof with the same force and effect as if again set forth herein at length.

29. The arbitration remedy which 1199 seeks would include an Award requiring Defendants to cease and desist from its Union Avoidance Campaign and other conduct which serves to frustrate 1199's ability to enforce Article 1 of the CBA as it applies to newly acquired stores

30. As the continuation of Defendants' Union Avoidance Campaign pending the conclusion of the arbitration process will irreparably harm the Union, its Bargaining Unit, and the employees at the Eckerd stores, such that an arbitrator will not be able to issue an adequate remedy, the Court should enjoin Defendants' Union Avoidance Campaign pending the completion of the underlying arbitration to preserve the integrity of Article 31, Grievance and Arbitration, and protect against an unremediable breach of Article 1, Coverage.

## **PRAYER FOR RELIF**

WHEREFORE, Plaintiff requests that this Court (1) enter an order prohibiting Defendants from continuing their Union Avoidance Campaign and further prohibiting Defendants from engaging in other conduct which would frustrate the Union's ability to enforce the CBA, including the After-Acquired Clause of Article 1, as applied to the to-be-acquired Eckerd stores within the geographical area set froth in Article 1 pending an arbitrator's decision that doing so is permissible under the CBA and (2) granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
       June 6, 2007

                                                Respectfully submitted,

                                                  /s/ Allyson L. Belovin
                                            Allyson L. Belovin (AB 3702)
                                            LEVY RATNER, P.C.
                                            Attorneys for Plaintiff
                                            80 Eighth Avenue, 8th Floor
                                            New York, New York 10011
                                            (212) 627-8100 (phone)
                                            (212) 627-8182 (fax)
                                            abelovin@lrbpc.com