# EXHIBIT A

LEGEND:
'1998 contract language
**2002 Update**
2006 Update
All ~~strikethrough/deletions~~ are marked

**PREAMBLE**

AGREEMENT made as of this 15 day of October 2006, by and between 1199

NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION, SEIU, with its offices

at 310 West 43rd Street, Borough of Manhattan, City of New York, (hereinafter the "Union"),

and RITE AID CORPORTATION, (hereinafter the "Employer").


WITNESSETH:


WHEREAS, the Employer is engaged in the retail drug business; and

WHEREAS, the Union is a labor organization composed in pertinent part of employees

employed in the retail drug business and in other types of establishments from time to time

organized by the Union and has demonstrated to the Employer that it represents a majority of its

Associates in the unit described herein; and

WHEREAS, the parties hereto desire to cooperate in establishing uniform conditions of

employment which will tend to secure to the Associates a living wage and eliminate unfair

conditions of labor and to provide methods for a fair and peaceful adjustment of all disputes that

may arise between the parties hereto or between the Employer and its Associates;

NOW, THEREFORE, in consideration of the premises and the promises herein

contained, the Union and the Employer, each on its own behalf, agree as follows:

**ARTICLE 1**

COVERAGE

1.1     This Agreement shall be binding upon the Union, the Employer and its successors and assigns, but shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by Rite Aid Corporation (including, but not limited to those in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores), in the City of New York, and the New York Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and Rockland, and the City of Albany, and the New Jersey Counties of Passaic, Bergen, Essex, Hudson, and Union, and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in Middlesex County, New Jersey, regardless of the name or whether the drug store is operated individually or as a partnership or corporation.

1.2     All provisions of this Agreement shall apply to the previously listed New York counties of Orange, Putnam, Ulster, Dutchess, and Sullivan and the City of Albany, except that modifications to this Agreement affecting those counties shall be set forth in a written addendum attached to this Agreement as Schedule C A.

1.3     All provisions of this Agreement shall apply to the previously listed New Jersey counties, except staff pharmacists and supervising pharmacists shall be excluded from the bargaining unit in those counties.  Other modifications to this Agreement affecting those counties shall be negotiated separately and shall be set forth in a written addendum attached to this Agreement as Schedule D B.

1.4     The Employer obligates itself to live up to the terms and provisions of this Agreement, and warrants that it will comply with the provisions of this Agreement requiring contributions to the National Benefit Fund for Health And Human Services Employees ("NBF") and the 1199 Health Care Employees Pension Fund for the Hospital League/1199 Training and Upgrading Fund ("TUF"), 1199 Employers Child Care Fund ("CCF"), and the 1199 Job Security

Fund ("JSF"), and the Union obligates itself in good faith for all of its members that it will live up to the provisions of this Agreement.

1.5    The words, "Employer" or "Employers" as and whenever used in this Agreement, and the pronouns, "he" and "his," used in connection therewith, are intended to and apply to the Employer, Rite Aid Corporation, and to each drug store covered hereunder, whether operated by an individual, co-partnership or corporation.

1.6    The words, "Associate" or "Associates" as and whenever used in this Agreement, and the pronouns, "he" or "his" used in connection therewith, are intended to apply to each Associate covered by this Agreement whether male or female, full-time or part-time.

1.7    The term, "drug store" as and whenever used in this Agreement, also includes and shall mean "retail drug store" and/or "pharmacy."

1.8    The term "retail drug business" as and whenever used in this Agreement, shall be interpreted to mean the business of operating drug stores and health and beauty aid stores as defined herein.

1.9    The term "health and beauty aid store" as and whenever used in this Agreement, shall be interpreted to mean a retail drug store without a pharmacy.

## ARTICLE 2

RECOGNITION

2.1    The Employer hereby recognizes the Union as the sole and exclusive representative of all of the professional and nonprofessional Associates of the Employer in the drug stores set forth in Article 1 hereof, but excluding guards, store managers, co-managers, pharmacy department managers, and supervisors as defined by the National Labor Relations Act, as amended, in respect to rates of pay, wages, hours and other conditions of employment.  No provision included in this Agreement shall be applicable to an Associate who is not in the aforesaid bargaining unit.

## ARTICLE 3

### UNION SHOP AND CHECK OFF

3.1    All present Associates of the Employer who are members of the Union shall maintain their membership in good standing in the Union as a condition of continued employment.

3.2    All present Associates who are not members of the Union shall become members of the Union thirty (30) days after the effective date of this Agreement, or after the execution of this Agreement, whichever is later, and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

3.3    All Associates hired after the effective date of this Agreement, shall become members of the Union no later than the thirtieth (30th) day following the beginning of such employment and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

3.3.1    During each Associate's thirty (30) day orientation period, a management representative shall inform each such Associate of his or her rights and obligations under this Article, and shall provide him or her with applicable Union, Benefit and Pension Fund forms for completion simultaneously with all other applicable employment forms.

3.4    Upon written notice from the Union, the Employer will deduct all Union membership dues as set forth in the standard 1199 authorization form. The Employer will be provided with a copy of said form executed by the Associate.

3.5    The Employer agrees to discharge from its employment, immediately, any one of its Associates upon notice from the Union that such Associate has ceased to be a member in good standing of the Union by reason of his failure to pay the initiation fee and periodic dues uniformly required as a condition of acquiring or retaining membership. The Employer agrees that the mailing of a certified notice to it at its address herein given shall be deemed sufficient notice under this Article.

3.6    It is specifically agreed that the Employer assumes no obligation, financial or otherwise, arising out of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions, or proceedings by any Associate arising from deductions made by the Employer hereunder for regular dues, initiation fees, or other amounts required by the Union to satisfy Union shop provisions of this Agreement.

# ARTICLE 4

## HIRING

**4.1**    The Union has established an Employment Service to be administered and financed by the Union.  Neither the Service in referring, nor the Employer in hiring, shall discriminate against an applicant because of membership or non-membership in the Union or any ground prohibited under this Agreement.

**4.2**    Within ninety (90) days of the execution of this Agreement, the parties agree to establish a joint committee for the purpose of strengthening the Employment Service to make it more effective.

**4.3**    Rite Aid Associates will be required to sign an acknowledgement/confirmation of receipt of updates of Company Policies, Procedures, Training Guidelines including HIPAA training and other new technology or government regulated training.

**4.4**    The Employer may require Associates to complete electronically and/or initial Company Policies, Work Rules, and Training Materials (including CBT Training) that are job related or required by law, and to verify that those policies and rules have been read and that the Associates are familiar with their contents.  Company Policies which are given to Associates and Work Rules will be furnished to the Union.

**4.5**    <u>Interns</u>

    **4.5.1**    A Pharmacy Intern who does not agree to an early commit with the Employer will be deemed to have voluntarily resigned their position thirty (30) days after the early commitment deadline.

    **4.5.2**    Pharmacy Graduate Interns that do not take their boards at the earliest possible offering, and Pharmacy Interns that do not pass their boards after three (3) consecutive attempts, can be transferred to another location, or reclassified from an Intern to a Pharmacy Technician position, or may be separated from employment.

## ARTICLE 5

### WAGE INCREASES

5.1    For purposes of wage increases, minimum wages, ~~bonuses~~ and progressions, any part-time **Associate** who works thirty-five (35) or more hours per week for eight (8) consecutive weeks shall thereafter be considered a full-time **Associate**.  If such **Associate** works less than thirty-five (35) hours per week for eight (8) consecutive weeks, he/she shall revert to part-time status.

**5.2**    **All non-probationary Associates who are on the payroll on ~~ratification~~ December 13, 2006 will receive the minimum wage set forth in Article 6 or the general wage increase listed below for ~~October 13, 2002~~ December 3, 2006, whichever is greater. Thereafter, the ~~following percentage increases shall apply only to those~~ Associates will receive scheduled pay progression increases and when completed with the progression, will receive the next scheduled general wage increase because of being above the progressions.  ~~who are paid more than the Minimum Wage schedule set forth in Article 6 due to either their seniority or their wage rate.  Said increases shall be calculated on the associate's rate in effect on the day before each general wage increase listed below:~~**

| ~~10/11/02~~ | ~~12/13/03~~ | ~~12/12/04~~ | ~~12/7/04~~ |
|---|---|---|---|
| ~~4%~~ | ~~4%~~ | ~~4%~~ | ~~4%~~ |

5.2.1    All associates below a base wage of ten dollars ($10.00) per hour and out of the progression will receive an across the board increase on the following dates:

| December 3, 2006 | 3% increase to base wage |
| December 2, 2007 | 3% increase to base wage |
| March 8, 2009 | 4% increase to base wage |
| June 13, 2010 | 4% increase to base wage |

5.2.2    All associates with a base wage of ten dollars ($10.00) per hour or above will receive a three percent (3%) across the board increase to base wage on the following dates:

> December  3, 2006
>
> December  2, 2007
>
> December 14, 2008
>
> December 13, 2009

5.2.3    Pharmacists will receive a three percent (3%) across the board increase to base wage or brought to the minimum rate whichever is greater (not both) on the following dates:

> December  3, 2006
>
> December  2, 2007
>
> December 14, 2008
>
> December 13, 2009

(Note:  Interns will follow the Intern pay schedule)

5.2.4    Effective December 3, 2006, Intern wage increases will be moved from a December time period to the first (1st) full pay period in June.  Interns will receive only the wages outlined in Article 6, Section 6.1 and will not receive any general wage increases.

~~5.2.1   The following are examples of the application of the foregoing:~~

~~A Pharmacy Technician who has been employed by the Employer for twelve (12) months and who is receiving $7.00 per hour immediately prior to the ratification date of this Agreement will, upon ratification, receive a five percent (5%) increase to $7.35 per hour effective October 10, 1998.  Thereafter, for the duration of this Agreement, this Pharmacy Technician would receive all scheduled progression increases but would not receive a general wage increase until May 1, 2002, when he or she would be above the progressions because of seniority.~~

5.2.2   A Pharmacy Technician who has been employed for twelve (12) months and who is making only $6.00 per hour immediately prior to ratification will receive an increase to $7.00 per hour effective October 10, 1998, as the scheduled progression for an Associate of that classification and experience.  Thereafter, that Pharmacy Technician would receive the same increases as the Pharmacy Technician referred to in example (1) above.

5.2.3   Effective October 13, 2002, all pharmacists on the pay roll on that date making less than the minimum will be brought up to the minimum for October 13, 2002 and on ratification will be adjusted to the new minimum and thereafter, 4% general wage increases on 12/14/03, 12/12/04, and 12/7/05.

5.2.3.1 Pharmacists earning above the minimum at ratification shall receive a 2% wage increase and a 2% cash bonus at ratification and thereafter.

C.      In addition, each associate employed on the ratification date of this Agreement and still employed as of December 31, 2000, shall receive a cash bonus of 1% of his or her year 2000 W-2 gross compensation, to be paid by January 31, 2001.

D.      In addition, the following bonuses shall be paid on or before April 1, 2000:

1   Each associate employed on the ratification date of this Agreement and on March 1, 2000, shall receive the following minimum bonus:

a.  Full-time:  $500;

b.  Part-time:  $250.

2   Each associate employed for at least one (1) year on March 1, 2000, shall receive the following minimum bonus:

a.  Full-time:  $250;

b.  Part-time:  $125.

5.3     Part-time Associates are guaranteed a minimum of four (4) hours of work per scheduled work day.

**ARTICLE 6**

MINIMUM WAGES

6.1    The following minimum salary wage is hereby established for the categories herein below listed:

| | 12/3/2006 | | 12/2/2007 | | 12/14/2008 | | 12/13/2009 | |
|---|---|---|---|---|---|---|---|---|
| | Min. | $ Inc. | Min. | $ Inc. | Min. | $ Inc. | Min. | $ Inc. |
| Pharmacist, Supervising* | $50.00 | | $51.50 | | $53.05 | | $54.65 | |
| Pharmacist, Registered* | $48.75 | | $50.25 | | $51.80 | | $53.40 | |
| Intern, Graduate** | $21.00 | | $21.00 | | $21.00 | | $21.00 | |
| Intern, 6th Year** | $16.00 | | $16.00 | | $16.00 | | $16.00 | |
| Intern, 5th Year** | $15.00 | | $15.00 | | $15.00 | | $15.00 | |
| Intern, 4th Year** | $13.00 | | $13.00 | | $13.00 | | $13.00 | |

*Pharmacists below $46.00/hr will be raised to $46.00/hr on Dec. 3, 2006 and full minimum rate on June 3, 2007. See Article 6, Section 6.5.

**Interns will be moved to a June increase date. See Section 5.2.4

| Manager, Assistant | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 0-9 Years | $10.75 | | $10.91 | | $11.07 | | $11.24 | |
| 10-14 Years | $12.50 | | $12.69 | | $12.88 | | $13.07 | |
| 15 + Years | $13.75 | | $13.96 | | $14.17 | | $14.38 | |

| Shift Supervisor: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Step 1 - Start | $8.00 | | $8.00 | | $8.00 | | $8.00 | |
| Step 2 -+6 months | $8.15 | | $8.15 | | $8.15 | | $8.15 | |
| Step 3 -+6 months | $8.55 | | $8.55 | | $8.55 | | $8.55 | |
| Step 4 -+6 months | $8.75 | | $8.75 | | $8.75 | | $8.75 | |
| Step 5 -+6 months | $9.05 | | $9.05 | | $9.05 | | $9.05 | |
| Step 6 -+6 months | $9.35 | | $9.35 | | $9.35 | | $9.35 | |
| Step 7 -+6 months | $10.00 | | $10.00 | | $10.00 | | $10.00 | |

| Technicians, Pharmacy: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Step 1 - Start | $8.00 | | $8.00 | | $8.00 | | $8.00 | |
| Step 2 -+6 months | $8.15 | | $8.15 | | $8.15 | | $8.15 | |
| Step 3 -+6 months | $8.55 | | $8.55 | | $8.55 | | $8.55 | |
| Step 4 -+6 months | $9.10 | | $9.10 | | $9.10 | | $9.10 | |
| Step 5 -+6 months | $9.40 | | $9.40 | | $9.40 | | $9.40 | |
| Step 6 -+6 months | $9.65 | | $9.65 | | $9.65 | | $9.65 | |
| Step 7 -+6 months | $9.85 | | $9.85 | | $9.85 | | $9.85 | |
| + 5 years | $11.60 | | $11.60 | | $11.60 | | $11.60 | |
| + 10 years | $12.60 | | $12.60 | | $12.60 | | $12.60 | |
| + 15 years | $14.10 | | $14.10 | | $14.10 | | $14.10 | |

| Full/Part-time Cashiers | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Step 1 - Start | $7.15 | | $7.15 | | $7.15 | | $7.15 | |
| Step 2 -+6 months | $7.55 | | $7.55 | | $7.55 | | $7.55 | |
| Step 3 -+6 months | $7.80 | | $7.80 | | $7.80 | | $7.80 | |
| Step 4 -+6 months | $8.25 | | $8.25 | | $8.25 | | $8.25 | |
| Step 5 -+6 months | $8.50 | | $8.50 | | $8.50 | | $8.50 | |
| Step 6 -+6 months | $9.00 | | $9.00 | | $9.00 | | $9.00 | |
| Step 7 -+6 months | $9.15 | | $9.15 | | $9.15 | | $9.15 | |

Those above the new hire progression in either time of service or rate of pay shall be eligible for the applicable across the board wage increases.

6.2    In each of the aforestated periods, Associates receiving salaries or wages less than the minimum provided for in ~~Paragraph A~~ Section 6.1 hereof, shall be increased to said minimum. Associates receiving salaries or wages equal to or in excess of the minimum provided for in ~~Paragraph A~~ Section 6.1 hereof, shall continue to receive their bi-weekly salary or wages without reduction.

~~C.    The Employer shall pay to his employees the commission on merchandise which he receives from the manufacturers or distributors of such merchandise. The commission shall be paid to such employees only on such merchandise which the employees actually sell.~~

6.3    Salaries or wages including overtime, if any, shall be paid ~~at the end of each bi-weekly~~. All monies due an Associate shall be itemized on the pay check. ~~Commissions and/or bonuses, whenever earned and whenever payable, to which an employee may be entitled, shall not be deemed part of the weekly salaries or wages but shall be paid to said employee in addition to their weekly salaries or wages~~. Neither salaries or wages ~~nor commissions and/or fixed bonuses~~ shall be reduced except as provided in Article 14.

6.3.1    The employer shall make a good faith effort to break down accrued holiday, sick time and vacation time to which Associates are entitled on pay checks.

6.4    Pharmacists who are promoted to Supervising Pharmacist shall receive a $50.00 per week increase in their then present bi-weekly wages, notwithstanding the amount of the Pharmacist bi-weekly wages at the time of his/her promotion.

6.5    Pharmacist's minimum, effective December 3, 2006:*

| | |
|---|---|
| Supervising Pharmacists | $50.00/hr |
| Staff Pharmacists | $48.75/hr |

*Pharmacists who are earning less than forty-six dollars ($46.00) will be increased to a base rate of forty-six dollars ($46.00) per hour as of December 3, 2006. On June 3, 2007, these same Pharmacists will be increased to the full applicable minimum rate.

6.6    Premiums:

    6.6.1    Pharmacy Trainers will be paid a seventy-five cent ($.75) per hour premium when they are performing scheduled training of other associates. The Employer will select the trainers based on knowledge, skill, ability, and availability.

    6.6.2    Positional Premiums:

        6.6.2.a    Pharmacy Technicians who successfully complete Rite Aid Pharmacy Technician Training and who are certified by passing the Rite Aid Certified Technician Test will receive a promotion increase of seventy-five cents ($.75) or the rate for a Pharmacy Technician of the same length of service in the proposed scale, which ever is greater. This premium will be effective the first full pay period following the examination.

        6.6.2.b    Shift Supervisors who successfully complete Rite Aid Shift Supervisors training program or when they are continually performing the functions of the position on a regular basis in the absence of a manager (opening or closing by his or herself), whichever is earlier, will receive on the first full pay period following that date either a promotion premium of seventy-five cents ($.75) or the rate for a Shift Supervisor of the same length of service in the New Hire Progression, which ever is greater.

        6.6.2.c    All associates hired at or above $8.75 will be considered as already having received a promotion increase.

        6.6.2.d    All associates who are or have been part of the current Pharmacy Technician or Shift Supervisor pay matrix as outlined in the 2002 Memorandum of Agreement will be considered as already having received a promotion increase. Therefore, these associates will not receive an additional promotional increase.

6.7    The term "Shift Supervisor" is to be applied to those persons who are entrusted with the keys to a store for the purpose of normal openings and closings when the store manager

is not available. ~~A Shift Supervisor shall receive a $.50 per hour premium over the minimum hourly rate applicable on the rate at promotion or $7.00, whichever is greater, in addition to his base hourly rate during the time he serves as a Shift Supervisor.~~

6.8    The Employer shall employ one (1) full-time (40-hour minimum) Bargaining Unit Supervising Pharmacist (or a Pharmacist paid at the rate of a Supervising Pharmacist) in each drug store where the Employer assigns a Prescription Department Manager.

**ARTICLE 7**

HOURS OF WORK

7.1     The work week for all full-time Associates shall be forty (40) hours per week, spread over five eight hour days, subject to Article 5, **Section 5.1** hereof.

7.2     All work by an Associate, including a part-time Associate, over and above eight (8) hours in any day and forty (40) hours in any week and all work by an Associate, including a part-time Associate, on the sixth (6th) work day in any week, shall be deemed overtime and shall be paid for at time and one-half (1½) the regular rate of pay.  However, for pharmacists hired after ~~the ratification date of this Agreement~~ October 11, 1998, only work over and above forty (40) hours in any week and on the sixth (6th) work day in a week shall be deemed overtime and shall be paid for at time and one-half (1½) the regular rate of pay.  Pharmacists who were in the bargaining unit prior to October 11, 1998 and are currently being paid overtime for over eight (8) hours worked in a day will, on June 3, 2007, begin to receive overtime for hours worked over ten (10) in a day.  As of January 13, 2008, no Pharmacist will be paid overtime based on the number of hours worked in a day.

7.3     For the purpose of computing overtime pay, in any week, a holiday to which an Associate is entitled shall be deemed the equivalent of eight (8) hours work performed.

7.4     Regular full-time Associates shall receive not less than two (2) days off each week, such days off to include at least one (1) Sunday every two (2) weeks.  Further, each Associate shall in addition receive not less than one (1) evening off every week.

7.4.1     The Employer agrees that it is desirable to provide Associates with two (2) consecutive days off each week and that he will endeavor to carry out this principle to the extent practical and possible in his sole discretion, it being understood that this particular provision shall not be subject to the arbitration machinery of this Agreement.

7.5     Where an Employer employs only one Registered Pharmacist in a store which operates and is open for business on a full seven-day week basis, said **Associate** may be required to work one full day during any one week, but not for more than thirteen (13) consecutive hours.

7.6     The Employer shall adjust the work schedule of a Union Delegate, as necessary, to enable him to attend Union Delegate Assembly Meetings not to exceed thirteen (13) evenings a year.

7.7     Should any dispute with respect to unpaid overtime arise and should the same be submitted to arbitration, the Impartial Arbitrator shall have the right to take into consideration whether or not the claimed overtime was authorized.

7.8     All split shifts are hereby forbidden.

7.9     Any claim for unpaid overtime compensation to which an **Associate** may be entitled under the terms and provisions of this Agreement shall be deemed waived unless such claim is made within ninety (90) days from the date when such unpaid overtime compensation became due and payable.

7.10    All breaks and lunch time shall be scheduled by the Manager no later than one hour after the beginning of each shift, except under unforeseen circumstances (e.g., a cashier calls in sick).

# ARTICLE 8

## VACATIONS

**8.1     Vacation is a work earned benefit.**  All Associates employed on the effective date of this Agreement shall receive a vacation with full pay during each calendar year as follows:  If at the time such vacation is taken, an Associate has been employed by the Employer and/or its predecessors:

| | |
|---|---|
| ~~1 year but less than 4 years~~ | ~~two (2) weeks vacation~~ |
| 1 year but less than 2 years | one (1) weeks vacation |
| 2 years but less than 4 years | two (2) weeks vacation |
| 4 years but less than 7 years | three (3) weeks vacation |
| 7 years but less than 20 years | four (4) weeks vacation |
| 20 years or more | five (5) weeks vacation |

~~8.1.1   Associates employed after the effective date of this Agreement (October 11, 1998) shall also receive the foregoing vacation pay, except for the following:~~

~~8.1.2   The improvements for employees with seven (7) years and twenty (20) or more years shall take effect March 1, 1999.~~

8.1.1    Part-time Associates shall be entitled to vacation on the same basis as set forth above, but prorated in the proportion that their work hours bear to the full work-week in the category in which employed.

8.1.2    The Employer and the Associates shall by mutual consent work out the vacation schedules for the ensuing calendar years in the December immediately preceding the respective calendar year.  The schedule shall be posted in the store no later than December 31 for the ensuing calendar year.

**8.2**     ~~Absence due to sickness or any other involuntary absence shall not affect an~~ ~~employee's entitlement with pay if such absence does not exceed one (1) week in case of~~ ~~employees with one year's employment; one (1) month in case of employees with two (2) years~~

~~employment; one (1) month in case of employees with two (2) years employment; two (2)~~
~~months in case of employees with three (3) years employment; three (3) months in case of~~
~~employees with five (5) years employment; four (4) months in case of employees with seven (7)~~
~~years employment; six (6) months in case of employees with nine (9) years or more of service.~~
**The numbers of hours constituting a vacation week shall be the total number of hours paid**
**to the Associate in the preceding year dividing by the number of weeks actually worked. In**
**the event an Associate was on an approved written leave of absence for the reasons of**
**personal or medical leave, the Associate's total number of weeks worked in the preceding**
**year will be divided by a figure arrived at by subtraction the number of weeks of such**
**personal or medical leave from the number of weeks employed.**

    **8.3**    Vacations may be taken at any time during the calendar year, **except during the**
**period from November 1 – December 31,** except in cases of personal or family emergency.
Vacation pay shall be given to the Associates at the time of their vacation. Choice of time as to
an Associate's vacation shall be on the basis of seniority, and the mutual consent of the
Employer and the Associates, which shall not be unreasonably denied by the Employer.
However, in scheduling a third (3rd) or fourth (4th) week of vacation for those entitled thereto,
the Employer may make such third (3rd) or fourth (4th) weeks discontinuous from the first two
(2) weeks, but no later than the end of the year in which the vacation accrues.

    **8.4**    Any Associate who resigns or who is laid off prior to the vacation period shall be
entitled to pro rata vacation pay which shall be paid to such Associate at the time of resignation
or lay-off. Solely for the purpose of computing pro rata vacation pay under this paragraph, the
Associates' anniversary date of hire shall be deemed the commencement of the vacation year for
all Associates who have already received one or more vacations. For those Associates who have
not for any reason received theretofore a vacation, the date of hiring shall be deemed the
commencement of the vacation year. Any Associate who resigns shall give his/her Employer
one (1) week notice to entitle him/her to pro rata vacation pay. **Associates who resign without**
notice or who are discharged for cause shall not be entitled to pro rata vacation pay.

8.5     An Associate who has not completed his qualifying period of employment for maximum vacation under the vacation schedule of this Agreement, and takes his vacation prior to such completion of the qualifying period of employment, shall be paid his earned vacation pay up to the start of his vacation and the balance upon completion of the qualifying period of employment.

8.6     All regularly scheduled or regularly earned premium pay shall be included in the computation of vacation pay entitlement.

8.7     All vacation time must be taken during the Associate's vacation year and there is no "carryover" of vacation time from one year to the next.  In addition, vacation time will not be paid out "in lieu" of time off.  In the event the Employer has denied a vacation request, not to include the period of November 1 through December 31, and the Associate was not given the opportunity to take their earned vacation, it may be "carried over" for one year upon receipt of documentation from the Associate and their supervisor at the time of refusal.

**ARTICLE 9**

HOLIDAYS

**9.1**    Each Associate on the payroll as of the effective date of this Agreement **(October 11, 1998)** who has completed six (6) months of service shall be off with full pay on all holidays that the store is closed and in no event shall an Associate be off on less than ten (10) holidays per year with full pay.

**9.1.1**    Associates on the payroll as of the effective date of this Agreement **(October 11, 1998)** with less than six (6) months of service shall be scheduled off on holidays when the store is closed and provided with another day's work during the holiday week.  Holidays should be observed at approximately equal intervals during the course of the calendar year.

**9.1.2**    Associates hired after the effective date of this Agreement **(October 11, 1998)** shall be off with pay on the following number of holidays:

| | |
|---|---|
| 3 months to 1 year of service | 6 holidays |
| 2 years of service | 8 holidays plus Birthday |
| 3 years of service or more | 10 holidays plus Birthday. |

**9.1.3**    All personal/holiday and sick days are entered into the system the first day of the first full pay cycle each January.  Holidays will now be used as personal days.

**9.1.4**    For Associates hired ON or AFTER December 13, 2006:

| | Personal/Holiday | Sick | Birthday |
|---|---|---|---|
| | Total number of days | | |
| After  6 months of service | 2 | 1 | 0 |
| After 12 months of service | 4 | 2 | 1 |
| After 24 months of service | 6 | 3 | 1 |
| After 36 months of service | 8 | 5 | 1 |
| After 48 months of service | 10 | 7 | 1 |

9.1.5  All unused holidays in any one year shall be paid not later than January 15th of the next succeeding year, at time and one-half (1 ½) at the then current rate.  If the failure to take a holiday was at the Associate's request, payment for such holiday shall be made at straight time.

9.1.6  In the month of October of each year, the Employer and the Associates shall by mutual consent work out a holiday schedule for the ensuing one (1) year period. This schedule shall be posted in the shop no later than October 31st of each year.

9.2     The holidays to which the Associate shall be entitled hereunder shall be selected from among the following: Martin Luther King's Birthday (January 15), Lincoln's Birthday, Washington's Birthday, Easter Sunday, Decoration Day, Independence Day, Labor Day, Columbus Day, Election Day, Veteran's Day, Thanksgiving Day, Christmas Day, New Year's Day, the Associate's Anniversary Date of Employment and Personal Days.  Choice of holidays from among those listed by an Associate shall be on the basis of seniority and the mutual consent of the Employer and the Associate.  Once a holiday is designated, Associates shall be required to work the regularly scheduled day before and after the holiday in order to be eligible for holiday pay, unless the Associate has a justifiable excuse.  The holiday schedule shall be so arranged that an Associate shall receive not less than one-half (½) of his or her full allotment of the afore enumerated holidays with pay within each six (6) month period of each year.

9.3     Should any of the enumerated holidays to which an Associate is entitled, fall on his day off or during his vacation, such Associate shall, in addition to his regular pay, be paid for such holiday.  Should any Associate be called in to work on any holiday to which he is entitled, he shall, in addition to this regular day's pay, be paid for such holiday at the rate of time and one-half (1 ½) his regular rate.

9.4     Should a store be closed for Rosh Hashanah, Yom Kippur and/or Good Friday, the Employer may substitute these holidays, or any of them, in place of an equivalent number of the holidays hereinabove enumerated.  Where a store is not closed on Rosh Hashanah, Yom Kippur

and /or Good Friday, an Associate shall have the right to substitute these holidays or any of them in place of an equivalent number of the afore-enumerated holidays.

9.5     Part-time Associates shall be entitled to holidays with pay on the same basis as hereinabove set forth, but prorated in the proportion that their work hours bear to the full work-week under the category in which employed.

9.6     All Associates employed on ~~the effective date of this Agreement~~ **or before October 11, 1998** shall receive his/her birthday off with his/her regular day's pay after one (1) year of service. Should an Associate's birthday fall on his/her day off or during his/her vacations, they shall, in addition to regular pay, be paid for his/her birthday. Should an Associate be called in to work on his/her birthday, they shall be given another day off with his/her regular pay within seven (7) days from his/her birthday.

## ARTICLE 10

DISCHARGE OR LAY-OFF

**10.1**    No Associate, including part-time Associates, shall be discharged or laid-off, nor shall the working hours of any Associate be reduced, except upon good and sufficient cause and only with the consent of the Union, which consent shall not be unreasonably withheld. However, the Employer may summarily discharge an Associate for criminal or civil negligence, dishonesty, or sabotage, deliberate destruction of Company property, unauthorized punching of a time card, falsification of a document, being under the influence of alcohol after one (1) warning, use or possession of illegal drugs (except in the performance of duties), or the possession of a weapon, which is hereafter referred to as "summary discharge." Should the Employer deem himself aggrieved because of the Union's refusal to consent to any discharge, lay-off, or reduction of working hours, of any Associate, or should the Union deem itself aggrieved because of any summary discharge as hereinabove set forth, the dispute shall be submitted to arbitration as in hereinafter provided. Pending arbitration and rendition of a decision by the Impartial Arbitrator in all cases except where a "summary discharge" is involved, the Associates(s) involved shall remain on their jobs. Should the Impartial Arbitrator find against the Employer on such "summary discharge," the Associate(s) involved shall be reinstated in their positions with full back pay. In all cases except "summary discharge," or discharge or lay-offs under Paragraph 10.2 and/or Paragraph 10.3 of this Article should the Union consent to a discharge, lay-off or reduction of working hours, or should the Impartial Arbitrator sustain the Employer in any such discharge or lay-off, the Associate involved shall be entitled to one (1) week's notice or its monetary equivalent.

**10.2**    If the employment of any Associate is terminated by lay-off or discharge because of adverse business conditions or because of the discontinuance of business, closing or liquidation of the store, such associates shall be entitled to severance pay in accordance with the following length of service schedule (including service with the Employer's predecessors).

| Length of Service | Severance Pay |
|---|---|
| More than six (6) months and less than one (1) year | One (1) week's pay |
| One (1) year or more but less than two (2) years | Two (2) week's pay |
| Two (2) years or more but less than three (3) years | Three (3) week's pay |
| Three (3) years or more | Four (4) week's pay |

10.2.1  Such severance pay shall be deemed deferred earnings of the **Associates** involved and, further, shall in all legal proceedings be deemed preferred claims.

10.2.2  Should the Union, in any of the situations referred to in the within Paragraph 10.2, refuse to consent to a layoff or discharge of any **Associate or Associates**, the matter shall be submitted to arbitration in the manner hereinafter provided, and, if the Impartial Arbitrator sustains the Employer, the laid off or discharged **Associate** or associates shall be entitled to severance pay as aforementioned.  Such severance pay shall also be paid, of course, to any **Associate or Associates** to whose discharge or layoff the Union consents.

10.2.3  It is specifically understood and agreed that, where an **Associate's** lay-off or discharge is due to the Employer's bona fide closing of his store, the Employer shall have the right in any arbitration proceeding to interpose his financial inability to pay severance pay claims as a defense, which issue shall be determined by the Impartial Arbitrator.

10.2.4  If the employment of any **Associate** is terminated by voluntary or involuntary bankruptcy or as a result of an assignment for the benefit of creditors, there shall accrue to such **Associate** upon termination entitlement to severance pay in accordance with the above length of service schedule.

10.2.5  In the event of layoff or termination of employment, temporary or permanent, due to fire or other like disaster in a store, or because of the removal to a new location or remodeling of the store, the Employer shall pay severance pay to such affected **Associates** in accordance with the above schedule in the following manner: for the first week a full week's pay; for the second and subsequent weeks in an amount equal to a full week's pay minus any amount received by the **Associate** as unemployment insurance or wages on a new job.  Such payments shall be made until the total amount of severance pay entitlement has been received by the **Associate** or until he returns to work, whichever occurs sooner.

10.3    If an **Associate** is discharged or laid off as the result of a bona fide sale of a business, the **Associate** affected shall be entitled to the following severance pay:

| Length of Service | Severance Pay |
|---|---|
| Less than one (1) year | One (1) week's pay |
| One (1) year but less than two (2) years | Three (3) week's pay |
| Two (2) years or more but less than three (3) years | Four (4) week's pay |
| Three (3) years but less than eight (8) years | Six (6) week's pay |

10.3.1  For each additional two (2) years after six (6) years of employment with the Employer and/or his predecessors, the **Associate** involved shall be entitled to an additional one (1) week's severance pay.

10.3.2  In the case of sale of store, Seller and Buyer shall be jointly and severally liable for severance pay.

10.4    The rule of seniority shall apply to all discharges or layoffs under Paragraph 10.2 and/or Paragraph 10.3 of this Article within the classification or category in which the Associate is employed.

10.5    Where an Associate is discharged or laid off under Paragraph 10.2 and/or Paragraph 10.3 of this Article, he shall, in addition to the severance pay provided above, be placed on a preferential list for a period of one (1) year from which vacancies or new positions in his classification or category may be filled by the employer.  Associates on such preferential list shall be rehired in the inverse order of their discharge or layoff so that the last one discharged or laid off shall be the first one rehired.  An Associate so rehired shall be deemed restored to his seniority standing as of the time of his discharge or layoff, and his salary shall be the higher of: (1) the minimum rate for the position at the time of reinstatement; or (2) the salary received at the time he was discharged or laid off.

10.6    No worker shall be terminated due to bad inventory without just cause.

# ARTICLE 11

## ANTI-DISCRIMINATION

**11.1**     The Employer will not discriminate against any **Associate** or prospective **Associate** because of his membership or activities in the Union or because of his race, color, creed, sex, age, national origin, disability, or political belief or affiliation.

## ARTICLE 12

SENIORITY

**12.1**    The employer recognizes and will apply the principle of seniority in all matters pertaining to the job.  Seniority shall be based upon the total length of employment with the Employer and/or its predecessors if Associates of the predecessor were represented by the Union, subject to Article 10.  The last Associate hired shall be the first laid off.  Associates laid off shall be placed on a preferential list from which vacancies or new openings shall be filled and in the filling of vacancies or new openings Associates shall be rehired in the inverse order of their layoffs at a salary which shall not be less than that received by them at the time of such layoff. An Associate's tenure on a preferential list shall terminate, if not rehired, at the end of one (1) year.  A layoff shall not be deemed an interruption of service for the purpose of this Agreement.

**12.2**    Except for "Union leave of absence," as is below described in Article 21, any Associate absent for any reason whatsoever for two (2) or more years shall be deemed terminated.

## ARTICLE 13

### PROMOTIONS

13.1    Should a promotional opening due to a vacancy or otherwise occur, preference shall be given for such position to the members of the Union in the store on the basis of seniority, provided in the judgment of the Employer, they are qualified to fill such position. The Employer's judgment in respect to an Associate's qualifications shall be made without discrimination whatsoever. An Associate promoted shall be on a four (4) weeks' probationary period to demonstrate his qualifications, and if not retained therein, shall be restored to his old position. An Associate who is promoted to Shift Supervisor shall be on a probationary period as outlined in 13.5.1.

13.2    A Supervising Pharmacist, Shift Supervisor or Assistant Manager who is demoted for just cause shall have removed from his rate of pay the differential which he or she is paid under the Contract for acting as such. A Supervising Pharmacist promoted after October 5, 1985, who is demoted for just cause, shall have fifty dollars ($50.00) removed from his rate of pay.

13.3    Associates promoted or transferred out of the bargaining unit shall have six (6) months to raise any contractual claims or grievances as a condition of the promotion or transfer. Thereafter, all such claims or grievances are barred. This will also apply to Associates who are terminated for any reason.

13.4    All graduate students seeking to be promoted to staff pharmacist position shall participate in drug testing designated by the Employer. No one shall be promoted to the position of staff pharmacist unless or until he or she passes the drug test without qualification. Any person failing a drug test must enroll in and complete the 1199 SEIU Members Assistance Drug Rehabilitation Program.

13.5    Shift Supervisor Qualifications

13.5.1    Shift Supervisors candidates must meet the minimum requirements for the position including, being at least twenty-one (21) years of age, and will be selected following the standard Rite Aid selection process. For Associates hired or promoted after December 13, 2006, Shift Supervisors must successfully complete the Rite Aid Supervisor Training and all required Computer Based Training (CBTs), and all new Shift Supervisors shall successfully complete a twelve (12) week position probationary period. Any Associate removed from the Shift Supervisor position shall revert to his/her former rate inclusive of any general increase paid during such assignment.

13.5.2    The Shift Supervisor who successful completes the training program and all required CBTs or when they are continually performing the functions of the position on a regular basis in the absence of a manager (opening or closing the store by his or herself) whichever is earlier will receive the Shift Supervisor pay rate as outlined in Article 6, Section 6.6.2.b. The Shift Supervisor will still be expected to complete all required training and CBTs.

13.5.3    The Shift Supervisor will not be expected to make supervisory decisions with regard to the work force and such decisions will be referred to management. When the Shift Supervisor is in charge of the store, he or she will be expected to report any unusual or out of the ordinary activities including any violations of policy work rules involving other Associates without recommendation.

13.6    Pharmacy Technicians Certifications

13.6.1    Pharmacy Associates, who have been performing the duties of a Rite Aid Pharmacy Technician for **five (5) or more years as of December 13, 2006** and have such verified by two (2) active Rite Aid Supervising Pharmacists, will be considered for the purposes of job classification as being Rite Aid Certified Technician upon the completion of the Rite Aid Technician Certification program and all required CBTs. One of the certifying Pharmacists must be the Pharmacy Technicians current supervising

Pharmacist. If the Pharmacy Technician has not worked for two Supervising Pharmacists, then the Pharmacy District Manager (PDM) can sign one of the affidavits. These certification documents must be returned to the Human Resources Manager by no later than six (6) months from December 13, 2006, otherwise this process will be void and the associate must complete the Rite Aid Certification Training including passing the examination.

13.6.2    Associates who are certified in accordance with this section are encouraged to complete the Rite Aid Pharmacy Technician certification exam; however, the results will not prevent the Associate from being classified as a Rite Aid Certified Technician should all of the above criteria be met. In the event that the state does require certification, this exception to the examination process will become void.

13.6.3    All Pharmacy Associates who have been performing the duties of a Rite Aid Certified Pharmacy Technician for **less than five (5) years as of December 13, 2006** must successfully complete the Rite Aid Pharmacy Technician certificate program and pass the examination and complete all required CBTs within nine (9) months of December 13, 2006. If the Associate does not successfully complete the Rite Aid Pharmacy Technician certificate program and pass the examination and complete all required CBTs, then the Associate shall be covered under the Cashier contractual provisions, including rates of pay.

13.6.4    All Cashiers hired after December 13, 2006 and working in the Pharmacy must successfully complete the Rite Aid Pharmacy Technician certificate program and pass the examination and complete all required CBTs.

## ARTICLE 14

CONSCRIPTION

**14.1**    Notwithstanding anything to the contrary which may be set forth herein above, the Employer agrees to reinstate any Associate in their position, with all rights and privileges, including cumulative salary increases and seniority status, any Associates who shall have volunteered or have been drafted into the United States Armed Services immediately upon his leaving such services, providing however, that such Associates shall apply for reinstatement within ninety (90) days of leaving such service. In such event, the Employer, upon reinstatement of such Associate, shall have the right to dismiss without severance pay an Associate in the same category having the least seniority.

## ARTICLE 15

### CONCESSION

**15.1**    The Employer hereby agrees that it will not during the term of this Agreement grant a concession in any drug store to any person, firm or corporation **related to the Drug Store or Pharmacy Industry. Furthermore, the Employer agrees to provide the Union written notice of its intent to add a concession not related to the drug store or pharmacy industry.** ~~or permit any person, firm or corporation to operate a concession in such drug store without the written consent of the Union. The Union's refusal to grant its consent shall be conclusive and shall not be subject to arbitration, anything in this Agreement to the contrary notwithstanding.~~

~~The foregoing provision, with respect to the requirement of the Union's consent for the granting of a concession, shall not apply in any case where a concession has heretofore been granted and is in existence at the time of the execution of this Agreement.~~

**15.2**    **At the Union's request, the parties shall meet and confer to discuss proposed concession.**

**15.3**    Should the Union consent to the Employer's grant of a concession, ~~and in any situation where the grant of a concession by the Employer is not by Paragraph 16.1 hereof forbidden,~~ it is specifically understood and agreed to that no more than one (1) ~~concessionaire shall work in such~~ concession shall be in a store. **No 1199 member will be required or permitted to work in any capacity in the concession.**

## ARTICLE 16

### CLASSIFICATIONS

**16.1**    A seniority list will be furnished to the Union by the Employer upon request for each store, which list sets forth the store number, the names of **Associates** at the store, their classifications by category of work, their date of hire, their rate of pay and whether they are full-time or part-time.  The Union shall have the right hereafter to go to arbitration to correct and rectify any inaccuracies that may appear on the seniority list.

~~B.    Where an Employer employs only one full-time or part-time employee and such employee's employment is terminated by resignation or discharge for cause (except when such discharge is due to the bona fide sale of the store where such employee works or the reduction of the working force due to adverse business conditions as heretofore provided), the vacancy created shall be filled forthwith in the same category and for at least the same number of hours.~~

**16.2**    During the continuance of this Agreement, the classification of the **Associates** or any of them shall not be changed, and no **Associate** shall be transferred from one of the enumerated categories to another without the written consent of the parties, and no **Associate's** salary shall be reduced except as provided in Article 13.

**16.4**    **Associates** who were hired to work in a specific category but who have since been doing work that would bring them into another category, shall be reclassified and their salaries be fixed on the basis of this new category.

# ARTICLE 17

## NO STRIKE OR LOCKOUT

**17.1**    During the term of this Agreement there shall be no lockout, or individual shop lockout by the Employer, or strike or individual shop strike or shop stoppage or boycott by the Union against the Employer for any reason or cause whatsoever so long as this Agreement is complied with in respect to submitting complaints, grievances and disputes to arbitration as herein provided and there is compliance with the decision of the arbitrator as herein provided.

**17.2**    There shall be no lockout, strike or stoppage pending the determination of any complaint, grievance or dispute.

# ARTICLE 18

## NO INDIVIDUAL AGREEMENTS

18.1    The Employer agrees that it will not enter into any individual agreements, directly or indirectly, with any of its Associates, whereby any of the provisions of this Agreement are modified or abrogated, and further, that during the continuance of this Agreement, it will not negotiate or enter into any agreement for the employment of pharmacists and/or any and all clerks working in drug stores covered by this Agreement with any organization, association or corporation claiming to be a labor union representing pharmacists and/or clerks working in drug stores, other than the Union, party to this Agreement.

## ARTICLE 19

UNION ACCESS TO PREMISES

    **19.1**    Any authorized representative of the Union shall be permitted to enter the Employer's place of business during reasonable hours for the collection of dues, the adjustment of disputes and grievances, to communicate with its members and/or confer with the Employer, provided the same shall not involve the loss of work time; and the Union shall be further permitted, at its option, to appoint or elect one of the Associates actually working in the Employer's place of business as a Union representative, for either or all of the aforementioned purposes.

## ARTICLE 20

TRIAL PERIOD

**20.1**    The Employer may discharge a new **Associate** during the trial period of sixty (60) days from the day such new **Associate** has been engaged by the Employer.  Such a discharge shall not be subject to the grievance and arbitration procedure.

## ARTICLE 21

UNION LEAVE OF ABSENCE

**21.1**    Any Associate who shall accept a full time salaried position with the Union shall be entitled to a leave of absence and upon termination of his employment with the Union shall be reinstated in his position in the store with all rights and privileges including seniority status. It is specifically understood and agreed to that an Associate on such leave of absence shall not during such leave of absence be entitled to vacation, holiday or severance pay, and that upon the return of such, the Employer shall have the right to dismiss, without severance pay an Associate in the same category having least seniority.

**21.2**    The Union shall give two (2) weeks written notice prior to an Associate's leave of absence for Union business. The Associate may take such leave for a period of up to two (2) years.

# ARTICLE 22

## TRANSFERS

**22.1**    The Employer shall not permanently transfer any of its nonprofessional **Associates** from one of its stores to another without first receiving the written consent of the Union thereto.

**22.2**    The Employer may transfer any **Associate** on a temporary basis from store to store, for up to a maximum of ninety (90) days, provided that any such transfer is not discriminatory or made to impose a penalty, and provided further that such transfer does not result in a reduction of wages or earnings or a deprivation of other benefits.

**22.3**    The Employer agrees to provide reasonable advance notice of any transfer of any **Associate**, and, for Supervising Pharmacists and Staff Pharmacists, to provide a reason for any permanent transfer.

**22.4**    An **Associate** may request in writing to the District Manager a transfer to any open position for which the **Associate** is qualified, and said request shall be granted by the Employer based upon the principles of seniority set out in Article 12 of this Agreement.

## ARTICLE 23

CHILD LABOR

**23.1** The Employer agrees not to hire children under the age of sixteen (16) years at its store or stores.

## ARTICLE 24

SEVERABILITY

24.1    Should any Article, in whole or in part, of this Agreement, or any clause or provision therein, be adjudged invalid or unenforceable, the same shall not in any way whatever affect the balance of the Agreement.

## ARTICLE 25

PRIOR BENEFITS AND PRIVILEGES

25.1     All rights, privileges and benefits which have heretofore accrued to and have been enjoyed by the **Associates**, and which are not inconsistent with the terms of this Agreement, shall continue unimpaired and shall continue to accrue to and be enjoyed as heretofore by said **Associates**.