## ARTICLE 26

NATIONAL BENEFIT FUND

**26.1**    The Employer shall continue to contribute to the National Benefit Fund for Hospital and Health Care Employees, and shall make monthly payments based upon the previous month's payroll. ~~From the January 11, 2002~~ As of October 11, 2006, **the contribution shall consist of a sum equal to** ~~17.24%~~ **20.85% of the gross payroll of the Associates for the preceding month exclusive of the amounts earned by the Associates during the first four (4) months following the beginning of their employment.** ~~On July 11, 2002, the Employer agrees to increase its contribution from 17.24% of the gross payroll of the Associates for the preceding month, exclusive of the amounts earned by the Associates during the first four (4) months following the beginning of their employment, to 19.50%.~~ **Effective July 1, 2003, and each twelve (12) months thereafter, the rate shall be adjusted, as determined by the Fund's actuary.**

26.1.1   Payments shall be due no later than thirty (30) days following the payroll month on which they are based.  By way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the thirtieth (30th) day of August.

26.1.2   Such payments shall be used by the Trustees of the Benefit Fund for the purpose of providing the Associates with social benefits, e.g., disability benefits, death benefits and hospital benefits as the Trustees of the said Fund may from time to time determine.

~~B.        Effective October 1, 1998, the Benefit Fund will implement the improvements set out in Schedule A, attached hereto.~~

**26.2**    If payments are not made in compliance with Section 26.1 above, the Employer shall, from and after the due date thereof, and until full payment of arrears is made, pay interest

on such arrears at the rate of one and one-half percent (1 ½%) per month or the maximum permitted by law, whichever is less.

26.2.1  However, in cases where an Employer has voluntarily agreed to a verification of the amounts contributed to the Fund through an inspection of the payroll records of its Associates by a Certified Public Accountant retained by the Fund, the Employer shall not be obligated to make retroactive interest payments or payment of costs and expenses pursuant to Article 28, Paragraph **28.3.3** where the Employer proves to the satisfaction of the Arbitrator designated under Article 28 that the principal amounts at issue were not contributed because of a genuine oversight by the Employer.  In such a case, interest upon the principal amounts determined by the Certified Public Accountant retained by the Fund shall be due the Fund at the rate specified in the immediately preceding paragraph from and after the early of the following dates: (1) the date of the Award of the Arbitrator designated under Article 28; or (2) thirty (30) days following receipt of a written request for payment form the Fund which sets forth the amount claimed, and the basis upon which it has been determined.

26.3    The National Benefit Fund shall be held and administered under the terms and provisions of the Agreement and Declaration of Trust, and any amendments thereof, which provides for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise of deadlock that may develop among or between said Trustees shall be submitted to arbitration before an Arbitrator or Umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

26.4    It is agreed that the National Benefit Fund will provide disability benefits for the Associates covered by the Agreement, in accordance with the requirements of the New York State Disability Benefits Law.  In view of the assumption of this obligation by the said Fund, the Employer agrees not to make any deductions from the covered Associates' wages on account of

disability benefits. The National Benefit Fund will certify the assumption of this obligation in connection with disability benefits to the appropriate State Agency and to the Employer.

26.5    An independent audit of the National Benefit Fund shall be made annually and a statement of the results thereof shall be furnished to the Employer.

26.6    The Trustees shall continue to provide Benefit Fund enrollment cards to the Employer in accordance with its prior practice.

H.    1999 EMPLOYMENT, TRAINING AND JOB SECURITY FUND. Effective upon suspension of Pension Fund contributions pursuant to Article 27, Paragraph 27.1 hereof, the Employer shall contribute to the 1199 Employment, Training and Job Security Fund and shall make monthly payments based upon the previous month's payroll. The contribution shall consist of a sum equal to .25% of the gross payroll of the employees for the preceding month, exclusive of the amounts earned by employees during the first four (4) months following the beginning of their employment, through the expiration of this Agreement. The Union and the Employer agree that the remaining provisions of the collective bargaining agreement between the Union and the League of Voluntary Hospitals governing the 1199 Employment, Training and Job Security Fund shall be binding on them and that such provisions shall be and hereby are incorporated herein by reference.

I.    1199 CHILD CARE FUND. Effective as of January 1, 1999, the Employer shall contribute to the 1199 Child Care Fund and shall make monthly payments based upon the previous month's payroll. The contribution shall consist of a sum equal to .4% of the gross payroll of the employees for the preceding month, exclusive of the amounts earned by employees during the first four (4) months following the beginning of their employment. The Union and the Employer agree that the remaining provisions of the collective bargaining agreement between the Union and the League of Voluntary Hospitals governing the 1199 Child Care Fund shall be binding on them and that such provisions shall be and hereby are incorporated herein by reference.

**26.7**   The Employer agrees that the provisions of this Article and Article 28 will continue in full force and effect in the event of any change in the name, composition or structure of the National Benefit Fund or the creation of any successor fund which assumes the responsibility to provide the same or similar health benefits to the Associates covered by this Agreement, which change or changes are consented to by a majority of the Union Trustees and a majority of the Employer Trustees from the New York District or by operation of law.  In any event, all payment and other obligations referred to herein will be to the successor fund.

## ARTICLE 27

PENSION FUND

**27.1**    The Employer shall contribute to the 1199 Health Care Employees Pension Fund and shall make monthly payments based upon the previous month's payroll. ~~Effective on the ratification date of this Agreement and through September 30, 2001, the contribution shall consist of a sum equal to six and twenty-five one-hundredths of a percent (6.25%) of the gross payroll of the employees for the preceding month.~~ Effective October 1, 2001, the contribution rate shall increase to six and seventy-five one-hundredths of a percent (6.75%) of the gross payroll of the Associates for the preceding month. Excluded from gross payroll shall be amounts earned by the Associates for the first ~~two (2) months following the beginning of their employment for employees employed within the two (2) months prior to ratification of this Agreement, and amounts earned by employees for the first~~ twelve (12) months following the beginning of their employment ~~for employees employed after ratification of this Agreement~~.

**27.1.1** Payments shall be due no later than thirty (30) days following the payroll month on which they are based. By way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the thirtieth (30th) day of August.

**27.1.2** Such payments shall be used by the Trustees of the Pension Fund for the purpose of providing Pension or Retirement benefits for the Associates as the Trustees of the said Fund may from time to time determine.

~~During the term of this Agreement, contributions to the Pension Fund shall be suspended for ten (10) months according to a schedule determined by the Union and the League of Voluntary Hospitals based upon the recommendations of the Fund actuary.~~

**27.2**    If a payment or payments are not made in compliance with Section 27.1 above, the Employer shall, from and after the due date thereof, and until full payment of arrears is made,

pay interest on such arrears at the rate of one and one-half percent (1 ½%) per month or the maximum permitted by law, whichever is less.

27.2.1 However, in cases where an Employer has voluntarily agreed to a verification of the amounts contributed to the Fund through an inspection of the payroll records of its Associates by a Certified Public Accountant retained by the Fund, the Employer shall not be obligated to make retroactive interest payments or payment of costs and expenses pursuant to Article 28, Paragraph 28.3.3 where the Employer proves to the satisfaction of the Arbitrator designated under Article 28 that the principal amounts at issue were not contributed because of a genuine oversight by the Employer. In such a case, interest upon the principal amounts determined by the Certified Public Accountant retained by the Fund shall be due the Fund at the rate specified in the immediately preceding paragraph from and after the earlier of the following dates: (1) the date of the Award of the Arbitrator designated under Article 28; or (2) thirty (30) days following receipt of a written request for payment from the Fund which sets forth the amount claimed, and the basis upon which it has been determined.

27.3 The 1199 Health Care Employees Pension Fund shall be held and administered under the terms and provisions of the Agreement and Declaration of Trust, and any amendments thereof, which provide for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise or deadlock that may develop among or between said Trustees shall be submitted to arbitration before an Arbitrator or Umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

~~D.    Effective October 1, 1998, the Pension Fund will implement the improvements set out in Schedule B, affixed hereto.~~

27.4 Such Fund at all times shall take whatever action is necessary to secure and retain approval of the U.S. Internal Revenue Service as a qualified pension fund.

27.5    An independent audit of the 1199 Hospital and Health Care Employees Pension Fund shall be made annually and a statement of the results thereof shall be furnished to the Employer.

27.6    The Employer's obligation with respect to contributions to existing pension plans and the Pension Fund established hereunder shall not exceed the greater of the contribution required hereunder or the present cost of such existing plans to the Employer per **Associate**. The parties shall meet to study existing pension plans for the purpose of protecting **Associate** rights there under and providing for an orderly transfer of **Associates** into the Pension Fund hereunder. Any disagreement regarding implementation of these provisions shall not be subject to arbitration hereunder.

27.7    The Employer shall not withdraw from the Social Security Program.

27.8    The Employer agrees that the provisions of this Article and Article 28 will continue in full force and effect in the event of any change in the name, composition or structure of the 1199 Pension Fund or the creation of any successor fund which assumes the responsibility to provide the same or similar health benefits to the **Associates** covered by this Agreement, which change or changes are consented to by a majority of the Union Trustees and a majority of the Employer Trustees from the New York District or by operation of law. In the latter event, all payment and other obligations referred to herein will be to the successor fund.

27.9    Rite Aid agrees to establish a non-matching 401(k) plan if a minimum of twenty-five percent (25%) of the then existing bargaining unit apply in writing for the benefit.

# ARTICLE 28

## ENFORCEMENT

**28.1** The Employer shall submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Funds and/or to enable the Funds to comply with the requirements of Federal and applicable State law and for the collection of payments due pursuant to Articles 26, 27, 37, 38, and 39 of this Agreement.

**28.2** The Employer agrees to make available to the Funds such records of **Associates** as classifications, names, social security number, days worked, and accounts of payroll and/or wages paid which the Funds may require in connection with the sound and efficient operation of the Funds or that may be so required in order to determine the eligibility of **Associates** for the Fund benefits, and to permit Accountants for the Funds to audit such records of the Employer.

**28.3** In the event that an Employer fails to make payment of contributions as required by Articles 26, 27, 37, 38, and 39, there shall be prompt arbitration thereof before the Impartial Arbitrator designated under this Article. The Arbitrator is hereby empowered to:

**28.3.1 Direct** the remedying of such violations up to the date of hearing that have not been cured;

**28.3.2 Direct** that there be no further violations of such provision(s) of these Articles;

**28.3.3 Direct** that the following amounts, being the reasonable costs and expenses in connection with each Fund arbitration proceeding, be paid to the Fund(s) by the Employer:

**28.3.3(a)** For an uncontested proceeding, the lesser of ten percent (10%) of the amount found due to each Fund or five hundred dollars ($500) to each Fund involved.

28.3.3(b)    For a contested proceeding, the lesser of twenty percent (20%) of the amount found due to each Fund or one thousand dollars ($1,000) to each Fund involved.

28.3.4  In the event that an Employer fails to make payment of contributions as required by Articles 26 and 27, 37, 38, and 39, the Arbitrator shall also have the power to require the properly authorized agent of the Employer to sign a Confession of Judgment in the amount of the Award including interest, costs and expenses as herein above provided within ten (10) days from the issuance of the Award.

28.4.    ~~By December 31, 1998,~~ The parties shall designate Al Viani as the Impartial Arbitrator to hear and determine any disputes which may arise between the parties with regard to payment of contributions and/or interest under Articles 26, 27, 37, 38, and 39 and the enforcement thereof under this Article.  Such arbitration shall be heard no later than ten (10) days after written request for arbitration is submitted to the Arbitrator.  The Award of the Arbitrator shall be issued within five (5) days thereafter.  In the event of a vacancy in this position for whatever cause, the parties shall expedite the selection of an arbitrator to fill the vacancy.  If the parties are unable to agree, such disputes shall be handled in accordance with Article 31 until such time as the parties do agree on a replacement.

28.5    In the event that the attorneys for the Fund(s) or the Union are required to move in court for confirmation of the Award or to oppose a stay and/or motion to vacate or set aside the Award in whole or in part, reasonable attorney's fees shall be imposed by the Court, if the Award is confirmed or the stay denied.  Service of notices, papers, petitions, summonses or other process to enforce or confirm awards or judgments with respect to the collection of contributions to the Fund may be certified or registered mail.

28.6    In the event that the Trustees of the Fund(s) have terminated benefit coverage or pension credits of Associate(s) because the Employer has failed to comply with the contribution requirements of Articles 26, 27, 37, 38, and 39, then the Employer shall be directly liable to the affected Associate(s) for benefits to which the Associates would otherwise be entitled under the

Funds; the amount may not be credited or offset by the Employer against the amounts due the Fund(s) under Articles 26, 27, 37, 38, and 39. However, in the event that the Employer pays all past due contributions, interest costs and expenses as provided in this Article, it shall be entitled to a credit equal to sixty-five percent (65%) of the actual audited benefits paid directly, but shall in addition be liable for the costs of auditing such direct payments in the amount of fifteen percent (15%) of such amount.

28.7    Associates elected or appointed as Trustees of the Benefit or Pension Fund shall be released by the Employer without pay to attend scheduled meetings of the Trustees.

## ARTICLE 29

### SICK LEAVE AND OTHER LEAVES

**29.1**    Associates, having fulfilled requirements of Article 9, Section 9.1.4 or Section 29.3 below, shall be entitled to seven (7) days sick leave during the year with full pay at their regular salary or wages, same to be paid in full to the Associates at the end of the week in which such sick leave is taken.  Associates shall not be entitled to any paid sick leave during their first six (6) months of employment.

**29.2**    Sick leave shall not be cumulative from contract year to contract year.  All unused sick leave shall be paid to Associates by January 15th of the next succeeding year.  If the unused sick leave is paid after January 15, the Employer shall pay it at the then current rate.

**29.3**    In each contract year each Associate hired before December 13, 2006 having six (6) months or more but less than one (1) year of employment with the Employer or his predecessors shall, in the event he is kept from work because of sickness or injury, be entitled to a prorated sick leave not to exceed three and one-half (3 1/2) days with pay at his regular salary or wages.  Any such Associate who is sick or disabled for a greater period than his accumulated sick leave entitlement shall be entitled to receive the extra days up to an aggregate maximum of three and one half (3 1/2) days as and when he completes his first year of employment and the Employer shall pay same to said Associate periodically on the basis above provided.  After one (1) year of employment such newly hired Associates hired before December 13, 2006 shall accrue sick leave on the basis of seven (7) days per year.  For Associates hired ON or AFTER December 13, 2006, sick days will be accrued as outlined in Article 9, Section 9.1.4.

**29.4.**    Associates with less than six (6) months employment at the time of any sickness or injury shall not be entitled to any pay for sick leave resulting from sickness or injury.

**29.4.1**  Associates who quit without notice or who are discharged for cause shall not be entitled to pay for any earned but unused sick leave.

29.4.2  The Employer may require proof of illness after three (3) days of consecutive sick leave.

29.5.  Funeral Leave:  In the case of death in the Associate's immediate family (defined as parent, spouse, child, brother or sister) the Associate shall be granted leave of absence with pay not to exceed a maximum of four (4) scheduled work days for the purpose of arranging for or attending the funeral.  Additional days of leave may be taken by the Associate to be applied against the annual unused paid sick leave.

29.6  Jury Duty:  The Employer shall pay to an Associate, who has been employed six (6) months or more, the difference to a maximum of ten (10) working days between the jury fees paid to the Associate at his regular straight time pay while he is required to be absent from his scheduled work because of jury duty, provided also that he shall request exemption from jury duty if he is entitled to such exemption.  Associates on jury duty who are not required to remain in the courthouse on any day shall be obligated to ascertain whether the Employer wishes him to return to his job to perform the balance of his regularly scheduled work day.

29.7  Rest Periods for Check-Out Clerks:  Associates shall be entitled to a fifteen (15) minutes rest-period for each four (4) hours of work in any shift.

## ARTICLE 30

### THE PROFESSION

**30.1**    It is hereby acknowledged that the foremost obligation of the profession is to the public. It is therefore essential that Employer and pharmacist join cooperatively in the strict adherence to the ethic and the body of laws and rules pertinent to the profession. Toward this end, proper and current information is required. Consequently, all new technical information, literature, periodicals and other matter related to the professional conduct of drug store operations should be rightfully and freely available to the pharmacist.

**30.2**    The Employer agrees to provide, at his own cost and expense, insurance coverage which a reputable insurance carrier will issue, covering each pharmacist employed, and such insurance shall hold the pharmacist or pharmacists harmless from liability arising out of such pharmacist's professional duties. Upon request by the Union, the Employer is required to exhibit his policy to a Union representative.

**30.3**    It is understood that it is the function of the Supervising Pharmacist to see to it that the rules and regulations governing the practice and operation of pharmacies in the State of New York are strictly observed. The Employer therefore agrees to consult with the Supervising Pharmacist concerning all matters relating to the practice of the profession of pharmacy and to cooperate with the Supervising Pharmacist in complying with all of the requirements required by law.

**30.3.1** In the event that a Supervising Pharmacist becomes involved in proceedings before the State Board of Pharmacy or before any other regulatory governmental agencies or in a court action in connection with an alleged violation of a law or a rule or regulation governing the practice of pharmacy which was not committed by him personally, but chargeable in his capacity as Supervising Pharmacist, the Employer agrees to make him whole for any loss of time or imposition of penalty resulting there from, provided that the Associate has taken all reasonable and prudent

precautions to inform the Employer and the **Associates** of the laws, rules and regulations of the State Board of Pharmacy.

30.4    After twenty (20) years of employment with the Employer, each **Associate** shall be entitled to three (3) weeks of unpaid sabbatical leave, above and beyond all other paid leaves provided for in this Agreement. Such leave shall be granted to the **Associate** during his twentieth (20th) year of employment.

# ARTICLE 31

## GRIEVANCE AND ARBITRATION

**31.1**   All complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement (herein referred to as a "grievance") shall be adjusted pursuant to the terms and conditions of this grievance and arbitration procedure.

**31.1.1** STEP I:  An Associate having a grievance and/or his Union Delegate or other representative shall take it up with the Store Manager of the Associate's store at Step I within a reasonable time.  The Employer shall give its answer to the Associate and/or his Union Delegate or other representative within ten (10) working days after the presentation of the grievance in Step I.  The Employer will attempt to provide written notification to the union for any involuntary terminations which are not defined as summary discharges in said Articles.  All grievances must be submitted in writing within thirty (30) days of the Employer's notification to the Union of involuntary termination or they will be deemed to have been waived.

**31.1.2** STEP II:  If the grievance is not settled in Step I, the grievance may be presented at Step II within ten (10) working days after receipt of the Step I answer.  When a grievance is presented in Step II, it shall be reduced to writing, signed by the grievant and/or his Union Delegate, and presented to the Employer's Human Resources Manager representative.  A grievance so presented in Step II shall be answered by the Employer in writing within thirty (30) calendar days after presentation.

**31.1.3** A grievance concerning a discharge or suspension or a grievance affecting more than one Associate may be presented initially at Step II in the first instance.

**31.1.4** A grievance on behalf of the Employer may be presented initially at Step II by notice in writing addressed to the Union at its offices.

31.1.5  STEP III:  If the grievance is not settled in Step II, the grievance may be presented at the next scheduled Step III meeting between the Union and the Employer.  ~~within thirty (30) calendar days after receipt of the Step II answer.~~  Failure on the part of the grievant to appear at the next scheduled meeting, absent a legitimate excuse, shall result in the withdrawal of the grievance.  When a the grievance is presented in Step III, it shall be reduced to writing, signed by the grievant and his/her delegate, and presented to the Employer's Director of Labor Relations.  A grievance so presented in Step III shall be answered by the Employer in writing within thirty (30) calendar days after presentation.  ~~Failure of the Employer to render its decision within said time limit shall result in default by the Employer, and the grievance shall be deemed granted by the Employer~~ Failure of the Employer to answer including the Step III answer within the time limits shall be deemed a denial of the grievance.  Prior to either party claiming a "default," that party must provide written notice of "intent to default" advising that a default will be claimed unless the other party answers within thirty (30) days of the receipt of this notice letter.  All time limits under this grievance procedure may be extended by mutual agreement.  The Employer and the Union will mutually agree on the appropriate extension for the Hearings and Appeals process.

31.1.6  STEP IV:  ARBITRATION.  ~~If the grievance is not settled in Step III, the Union may refer and submit the grievance promptly to arbitration before an Arbitrator designated by the New York State Board of Mediation, located at 400 Broome Street, New York, New York 10013.  The Award of the Arbitrator shall be final and binding upon all the parties herein.~~ If the grievance is not settled in Step III, the Union may refer and submit the grievance promptly to arbitration before an Arbitrator selected in accordance with the procedures of the American Arbitration Association. The American Arbitration Association will produce one list of eleven (11) names of arbitrators, seven (7) of whom are members of the National Academy of Arbitrators, who have availability

to hear cases within thirty (30) working days of selection. The decision of the Arbitrator shall be final and binding upon all parties herein.

31.1.7 The demand for arbitration shall concisely state the alleged breach of the Agreement and remedy sought.

31.1.8 The cost of the arbitration shall be shared equally between the Union and the Employer.

31.2    Any such complaint, dispute or grievance shall be instituted by the Union or the Employer, as the case may be, and no right of action shall accrue in favor of any individual Associates.

31.3    The parties further agree that the Arbitrator shall fix the time and place for each hearing, and that notice thereof shall be sufficient if sent by ordinary mail at least ~~five~~ **fourteen (14) working** days prior to the time fixed for the hearing.

31.4    The decision of the Arbitrator shall have the effect of a judgment entered upon an Award and shall be enforceable under the Arbitration Law of the State of New York, or otherwise, entitling the entry of judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by the decision.

31.5    It is expressly agreed between the parties that the oath of the Arbitrator is hereby waived.

31.6.    In the event of default by any of the parties under this Agreement in appearing before the Arbitrator after ~~five~~ **fourteen** (14) working days days' written notice by ordinary mail, as hereinabove provided, the Arbitrator is hereby authorized and empowered to render an Award upon the testimony of the appearing party.

31.7    It is specially understood and agreed that any notice, papers, petition or other process necessary or proper on motion to confirm any award or for judgment on any award may be served either personally or by certified or registered mail directed to the last known address of the addressee or his attorney.

**31.8**   All awards rendered by the Arbitrator shall be complied with within ~~forty-eight (48) hours~~ thirty (30) days.

    **31.8.1**  Should the Employer fail or refuse to submit any complaint, grievance or dispute to arbitration when requested to do so by the Union or shall fail or refuse to comply with the award of the Arbitrator as hereinabove provided, it shall automatically lose all rights and privileges under this Agreement and the Union shall be free to take any action it deems necessary to enforce the rights of the Union, and of the **Associates** against the Employer, including striking and picketing.  Should the Union fail or refuse to submit any complaint, grievance or dispute to arbitration when requested to do so by the Employer or shall fail or refuse to comply with the award of the Arbitrator as provided above, the Employer shall be free to take any action which he deems necessary to enforce his rights against the Union and the Associates.

**31.9**   Any party who shall intentionally or deliberately violates any of the terms or provisions of this Agreement shall pay damages for such violation in a sum to be fixed by the Arbitrator; the proceeds of all damages collected hereunder shall be used towards defraying the expense incurred in maintaining the arbitration machinery.

**31.10**  In any arbitration in which an Associate has been disciplined or dismissed for violation of a Company policy, regulation or rule, the ~~Company~~ Employer shall have the burden of proving that the Associate was made aware of the policy, rule or regulation before the violation for which the Associate was disciplined or dismissed.

## ARTICLE 32

### UNION DECAL

**32.1**    The Union and the Employer shall establish a committee to jointly design an identifying Union decal.  The Union shall supply each establishment covered by this Agreement with such an identifying Union decal which the Employer shall display during the term of this Agreement.

~~B.        The decal shall be the property of the Union and may be removed by it, in which event the Union shall refund the amount of rental fee equal to the proportion of unused time still remaining and not used.~~

# ARTICLE 33

## SHIFTS AND SHIFT DIFFERENTIALS

**33.1**    **Associates** working on shifts on which their straight time ends after 12:00 midnight or begins prior to 6:00 A.M. shall receive a seventy-five cent (75¢) hourly night differential for those hours worked after 12:00 midnight and/or before 6:00 A.M.

**33.2**    **Shift Supervisors** must be available to answer alarm calls.  However, no Shift Supervisor shall be disciplined for failure to answer such a call unless the Shift Supervisor has intentionally refused to answer said calls.  Any **Shift Supervisor** who answers such calls shall be paid his or her hourly rate for any and all time spent addressing the problem.

# ARTICLE 34

## SECURITY SHOPPERS

**34.1**    Each Associate has the right to request representation by the Union during any disciplinary process, including security shopper interviews.

**34.2**    The Employer and Union recognize the need for adequate security to ensure the Associates' safety.  The Employer agrees to meet with the Union to discuss the need for security in high-risk situations.

**34.3**    No Shift Supervisor or Assistant Manager shall be required to make bank drops or bank deposits after dark.  Any Shift Supervisor or Assistant Manager making a bank drop or bank deposit shall be accompanied by a security guard or manager, if available.  If possible, the manager or co-manager should make bank deposits.

# ARTICLE 35

## MANAGEMENT RIGHTS

**35.1**    Except as otherwise provided in this Agreement, the Employer retains all of its inherent management rights, including but not limited to the exclusive right to hire, direct, and schedule the working force; to plan, direct, and control operations; to promulgate reasonable rules and regulations; to introduce new or improved methods or facilities; and in all respects to carry out the ordinary and customary functions of management.  It is understood that nothing contained herein will permit the Employer to violate any term or condition of this Agreement. The ~~Company~~ Employer will provide the Union with copies of all published policies, rules and regulations, will advise the Union of new or changed rules or regulations before their implementation, and will negotiate in good faith with the Union to the extent such new or changed rules and regulations constitute terms and conditions of employment.

## ARTICLE 36

### SUCCESSORS AND ASSIGNS

**36.1**    The Employer's obligations under this Agreement shall also be binding upon its successors, assigns, purchasers, lessees, transferees, administrators, and executors. In the event an entire active or inactive operation, or a portion thereof, is sold, assigned, leased, transferred or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. Corporate reorganization by the Employer, occurring during the term of this Agreement, shall not relieve the Employer of the obligation of this Agreement during its term.

**36.2**    The Employer agrees that in the event of any sale, assignment, lease, or transfer, or any combination thereof, of an entire active or inactive operation, or a portion thereof, assumption of the Employer's obligations under this Agreement by any purchaser, assignee, lessee, or transferee shall be made a condition of such sale, assignment, lease, transfer, or any combination thereof. Such assumption shall be in writing and in the form of the "Assumption Agreement" annexed hereto.

**36.3**    The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation, or a portion thereof, covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, prior to the time the seller, assignee, transferee, or lessee executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, including terms ensuring compliance with this Article, at a time and in a manner so as not to prejudice the Union's ability to determine and ensure compliance with this Article prior to the execution of any

covered transaction. In the event the Employer fails to require the purchaser, assignee, transferee, or lessee to assume the obligations of this Agreement, the Employer shall be liable to the Union and to the Associates covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement. Transactions covered by this Article also include stock sales or exchanges, mergers, consolidations, spin-offs or any other method by which a business is transferred.

36.4    This provision shall not apply to sales of store(s) pursuant to an order of divestiture by an appropriate governmental entity and shall not apply to the sale of only a single store.

## ARTICLE 37

### 1199 TRAINING AND UPGRADING FUND

37.1    Effective January 11, 2002, the contribution to the 1199 Training and Upgrading Fund shall be an amount equal to one-half percent (1/2%) of the gross payroll of the Associates for the preceding month exclusive of amounts earned by the Associates during the first four (4) months following the beginning of their employment.

37.2    Contributions so received by the Trustees shall be used to study Employer manpower needs, including shortages in entry level jobs, upgrading positions and credential jobs; to develop career ladders, and to subsidize Associates in training, and when necessary, the costs of training in areas of manpower shortages.

## ARTICLE 38

### 1199 CHILD CARE FUND

**38.1**    Effective October 12, 2003, the Employer shall commence contributions to the 1199-Employer Child Care Fund at a rate of four-tenths percent (4/10%) of gross payroll of the Associates excluding the payroll of the Associates during the first four (4) months of employment, to provide child care and youth programs for 1199 member's children.

## ARTICLE 39

### 1199 JOB SECURITY FUND

39.1    The Union and the Employer agree to start the 1199 Job Security Fund program in order to place Associates threatened with layoff in vacancies and retrain those who cannot immediately be placed.

39.2    Effective October 9, 2005, the Job Security Fund (JSF) will be financed by an Employer contribution equal to one-quarter percent (1/4%) of gross payroll of the Associates excluding the payroll of the Associates during the first four (4) months following the beginning of their employment.

## ARTICLE 40

### DURATION

**40.1**    This Agreement shall be in full force and effect and shall be and remain operative

and binding upon the parties hereto, and their successors and assigns from the ~~13th day of~~

~~October, 2003, up to and including the~~ 14th day of October, 2006 up to and including the 14th

day of October, 2010, and shall survive any change in name, reorganization or incorporation.

**40.2**    It is specifically understood and agreed to that should the Union, party to this

Agreement, which is now affiliated to a national and international labor organization, become

disaffiliated from the national and/or international labor organization at any time during the term

of this Agreement, or should said Union thereafter become again affiliated with a national and/or

international labor organization, then and in any such event or events this Agreement and the

terms and provisions thereof shall continue in full force and effect as between the Employer and

the Local Union as if no such affiliation or disaffiliation, as the case may be, had occurred.

AGREED and ACCEPTED:


RITE AID CORPORATION                     1199 NATIONAL HEALTH AND
                                        HUMAN SERVICES EMPLOYEES
                                        UNION, SEIU



_____             _____
Niels Hansen,                           Dennis Rivera, President
Director, Labor Relations               Date:
and Labor Counsel
Date:

AGREED and ACCEPTED:


RITE AID CORPORATION:                    1199 NATIONAL HEALTH AND
                                         HUMAN SERVICES EMPLOYEES
                                         UNION, SEIU


_____                  _____
Don Krupka                               Mike Rifkin, Executive Vice President
Human Resources Manager,                 Date:
Region 64
Date:

_____                  _____
Tony Ince                                Laurie Vallone, Vice President
Human Resources Manager,                 Date:
Region 63
Date:

                                         _____
_____                  Date:
Frank McCann
Human Resources Manager,
Region 65
Date:                                    _____
                                         Date:


                                         _____
                                         Date:


                                         _____
                                         Date:


                                         _____
                                         Date:


                                         _____
                                         Date:


                                         _____
                                         Date:

AGREED and ACCEPTED:

Date:1199 NATIONAL HEALTH          1199 NATIONAL HEALTH AND
AND HUMAN SERVICES                 HUMAN SERVICES EMPLOYEES
EMPLOYEES UNION, SEIU (cont.)      UNION, SEIU(cont.)

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

Date:                              Date:

A.10   Spouse Health Benefits: Associates' spouses shall be entitled to continued retiree health coverage when the retired associate dies.

A.11   Full Death Benefits for Older New-Hires: All associates hired after age 50 shall be entitled to full death benefits.

## SCHEDULE B

### PENSION FUND IMPROVEMENTS

B.1   COLA Increases for Current Retirees. All retirees shall receive a pension benefit increase of two percent (2%) on July 1, 1998; three percent (3%) on July 1, 1999; and two percent (2%) on July 1, 2000.

B.2   Early Retirement Benefit (62/20). Associates who leave covered employment at age sixty-two (62) or later with twenty (20) years of service shall be entitled to unreduced retirement benefits.

B.3   Pre-Retirement Joint and Survivor Option. If an associate dies before retirement, the associate's spouse shall be entitled to receive all benefits due to the deceased associate at the time of the associate's death. This option shall be provided at no additional cost to the associate or spouse.

B.4   Past Service Credit. All past service credits will be computed on 1980 earnings base.

B.5   Home Mortgage Program. Participants in the Pension Fund may borrow from the Pension Fund for housing mortgage purposes.

B.6   Voluntary Associate Buyout Incentive Program (VEBIP). The Pension Plan has been amended to provide for a voluntary Associate Buyout Incentive Program (VEBIP). The benefits, conditions, and requirements of the VEBIP are set forth in the June 20, 1998 Memorandum of

Agreement between 1199 and the League of Voluntary Hospitals and are incorporated herein by reference.

### SCHEDULE A
### ASSUMPTION AGREEMENT
Dated:

A.1    The undersigned Employer, having purchased a drug store covered by the collective bargaining agreement between 1199 NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION, SEIU, AFL-CIO, and RITE-AID CORPORATION, hereby agrees as follows:

A.2    To assume and adopt the aforementioned collective bargaining agreement and to abide by and carry out the said agreement in all of its terms and provisions for the balance of the contract term.

A.3    To pay any and all monies that may be due from the predecessor Employer to the National Benefit Fund, the 1199 Employment, Training and Job Security Fund, and/or the 1199 Child Care Fund under ARTICLE TWENTY-SIX of the aforementioned agreement or of any prior agreement, representing unpaid welfare contributions, and to the National Pension Fund under ARTICLE TWENTY-SEVEN of the aforementioned agreement or of any prior agreement, representing unpaid pension contributions, and any other indebtedness that may be due from said predecessor Employer arising out of the aforementioned agreement hereby assumed by the undersigned employer.

_____

_____ EMPLOYER

APPROVED AND ACCEPTED:

_____ 1199 NATIONAL HEALTH AND HUMAN

_____ SERVICE EMPLOYEES UNION, SEIU, AFL-CIO

BY:_____

LETTER OF UNDERSTANDING

BETWEEN RITE AID CORPORATION

AND 1199 SEIU

November 14, 2006

As part of the 2006 negotiations, Rite Aid and 1199 SIEU agreed the following:

1. Union and Rite Aid agree that the Union will designate a responsible party for the handling of Rite Aid benefit questions and associate questions concerning the SEIU 1199 Health and Welfare and Other Benefit Funds.

2. There shall be no "free" or "time-off-the-clock" work practices under this Agreement. Any associate found by the Employer or the Union to be engaging in such a practice shall be subject to discipline which may include termination. Associates are required to accurately record their own work hours indicating starting and ending times of their work shift and meal periods by logging in at a cash register. The Employer reserves the right to modify how employees record their time worked, but will give notice to the Union before any significant changes are made. The associates are required to accurately record their own work hours and sign store records indicating the starting and ending times of their work shift and meal period.

3. Existing associates whose current earnings are not on a step scale (and who are not above scale) will move to the next dollar amount/wage step above their current earnings—regardless of time in service. Each increase thereafter will be in six month increments until they reach the top of the scale in time or rate of pay and are eligible for across the board increases.

4.  Associates shall be subject to the Company's Drug and Alcohol Policy, as those standards may be modified or amended by the Company from time to time; provided, however, that prior to implementing any change in the Drug and Alcohol Policy, the Company will give the Union notice of the proposed change.  Any person failing a drug test must enroll in and complete the 1199 SEIU Members Assistance Drug Rehabilitation Program and will be given a last chance agreement which will include follow-up testing for an eighteen (18) month period.  Subsequent failure to successfully complete the 1199 SEIU Members Assistance Drug Rehabilitation Program or any positive drug test during the eighteen (18) month period will be considered a summary discharge and will not be subject to the grievance procedure under Article 31.

FOR THE EMPLOYER:                         FOR THE UNION:
RITE AID CORPORATION                      1199 SEIU


_____                   _____
NIELS HANSEN                              DENNIS RIVERA
Director, Labor Relations and             President
Labor Counsel


                                          _____
                                          MIKE RIFKIN
                                          Executive Vice President


                                          _____
                                          LAURIE VALLONE
                                          Vice President