**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

1199SEIU, UNITED HEALTHCARE       :
WORKERS EAST,       :
      :
                  Plaintiff,       :
      :       07 cv. 04816 (GBD)
           -against-       :
      :
RITE AID CORPORATION and       :
THE JEAN COUTU GROUP (PJC), INC.,       :
THE JEAN COUTU GROUP USA, INC.,       :
d/b/a BROOKS ECKERD DRUG STORES,       :
      :
                Defendants.       :
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## RITE AID CORPORATION'S MOTION TO DISMISS COMPLAINT

Scott B. Gilly (SG-6861)
THOMPSON WIGDOR & GILLY LLP
The Empire State Building
350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone:  (212) 239-9292
Facsimile:  (212) 239-9001

- and –

Stephen M. Silvestri (*Motion to Admit Pro Hac Vice Pending*)
Stefan J. Marculewicz (*Motion to Admit Pro Hac Vice Pending*)
Laura Pierson-Scheinberg (*Motion to Admit Pro Hac Vice Pending*)
MILES & STOCKBRIDGE, P.C.
10 Light Street
Baltimore, MD 21202
Telephone:  (410) 727-6464
Facsimile:  (410) 385-3700

Counsel for Defendants

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................... i

I. PRELIMINARY STATEMENT .........................................................................1

II. STATEMENT OF UNDISPUTED FACTS ........................................................1

III. ARGUMENT ....................................................................................................4

    A. The Union's Demand For Arbitration is Illegal.................................................4

        1. It is unlawful for an employer and a union to apply the terms of a
        collective bargaining agreement to employees that the union does not
        represent....................................................................................................4

        2. An arbitration award in the Union's favor will be unenforceable. ..........5

    B. To The Extent the Union Concedes It Needs Proof of Majority Status, its
    Claims Are Not Ripe.........................................................................................5

    C. This Court Must Decline § 301 Jurisdiction In This Case Because This Initial
    Representation Matter Is Appropriately Determined by the NLRB .....................6

        1. There is no valid contract governing the representation of Brooks and
        Eckerd employees that would give rise to § 301 jurisdiction...................6

        2. The Union's unlawful actions, including the pursuit of the arbitration
        through this suit are unfair labor practices, and Rite Aid's charge is
        pending before the NLRB........................................................................8

        3. The fact that the Union has also filed charges with the NLRB shows it
        too believes the dispute should be resolved in that forum in the first
        instance ...................................................................................................9

    D. The Union's Effort to Have an Arbitration Prevent Rite Aid From Engaging in
    an "Anti-Union Campaign" is Not an Arbitrable Matter....................................10

        1. The Contract has no neutrality clause, making the Union's demand for
        arbitration meritless ..............................................................................10

        2. There is no collective bargaining agreement covering conduct of Brooks
        and Eckerd, and therefore no § 301 jurisdiction ...................................13

IV. CONCLUSION...............................................................................................14

## I.    **PRELIMINARY STATEMENT**

In this lawsuit, 1199SEIU, United Healthcare Workers East ("1199SEIU" or "Union"), asks this Court to help it engineer an unlawful remedy—the automatic imposition of union representation and a collective bargaining agreement upon 3,500 people who have not chosen it.

The Union seeks an injunction to silence Rite Aid Corporation ("Rite Aid") from engaging in lawful communications with its newest employees. The Union brings its case under § 301 of the Labor Management Relations Act. It does not have a claim under that statute.

- There is nothing in the parties' collective bargaining agreement that requires Rite Aid to be neutral or refrain from communicating with its employees.

- The remedy the Union seeks through arbitration is illegal and unenforceable, and the entire matter should be resolved by the National Labor Relations Board ("NLRB") where it is presently pending.

There is no basis for the Union's claims to either form of relief under § 301, because the Union has failed to state a claim on which relief may be granted under Rule 12(b)(6), and failed to invoke this Court's subject matter jurisdiction under Rule 12(b)(1). Accordingly, the Union's claims must be dismissed.

## II.    **STATEMENT OF UNDISPUTED FACTS**

The Union and Rite Aid are parties to a collective bargaining agreement ("Contract") which contains an "after acquired stores clause." The clause, on its face, requires Rite Aid to recognize the Union as the collective bargaining representative for any stores it acquires within New York City, the Hudson Valley and Northern New Jersey. Affidavit of Laurieanne D. Vallone ("Vallone Aff.") at ¶ 11, Exh. 1-3.

On June 4, 2007, Rite Aid completed an acquisition, announced in late summer 2006, of

1,854 Brooks and Eckerd stores from the Jean Coutu Group (PJC) Inc. ("Coutu"). Declaration of

Niels Hansen ("Hansen Decl.") at ¶¶ 2, 12;  Complaint ¶ 17.  No employees of any Brooks or

Eckerd store have ever designated any union as their collective bargaining representative.

Declaration of Dale Dudik ("Dudik Decl.") at ¶¶ 5, 13.

In a May 25, 2007 email to other Union officials, including Union Vice President Laurie

Vallone, and President Dennis Rivera, 1199SEIU Executive Vice President, Michael Rifkin

wrote the following:

- o "Our CBA recognition language clearly requires company to roll any new stores, however acquired, into the union under the existing contract." Id. (emphasis added).

- o "[W]hen the Rite Aid sign goes up on newly opened stores, workers are in union and under CBA.
  ***Company position is that Eckerd-Brooks workers can have an election to determine union interest.***" Id. (emphasis in original).

The email was then forwarded on May 31, 2007 by Michael Rifkin to Susan Cameron, an

attorney in the law offices of Levy Ratner P.C. at 11:18 a.m. Id.

A few hours after Rifkin sent the email to Cameron, 1199SEIU General Counsel Dan

Ratner sent the American Arbitration Association an arbitration demand titled "Failing to apply

contract to newly acquired stores and enjoining anti-Union campaigns."  Vallone Aff. at ¶ 47,

Exh. 12 (emphasis added); Hansen Decl. at ¶ 10 (showing the fax transmission time).  Ratner

further wrote, "[t]he dispute involves violations of the CBA, by stating its [Rite Aid's] intent not

to apply the CBA to newly-acquired stores that would result from a pending merger…" Vallone

Aff. at ¶ 47, Exh. 12.

The same day, Ratner filed the Union's arbitration demand, Vallone also wrote to Rite

Aid's Director of Labor Relations and Labor Counsel, Niels Hansen, and demanded "arbitration

with Rite Aid…over its breach and threatened breach of the parties' collective bargaining

agreement… including 'Coverage,' as applied to Eckerd/Brooks stores that will be acquired by Rite Aid pursuant to the merger currently pending." Vallone Aff. at ¶ 48, Exh. 13.

Notwithstanding the Union's contention that the Contract should apply to Brooks and Eckerd stores, the Union has never demonstrated or offered to demonstrate to Rite Aid at any time that it represents a majority of any group of those employees. Hansen Decl. at ¶ 9; Dudik Decl. at ¶ 13.

On June 5, 2007, one day after the acquisition of Brooks and Eckerd was complete and one day prior to the Union's filing of the instant lawsuit, Rite Aid filed an unfair labor practice charge against the Union with the National Labor Relations Board ("NLRB"). Rite Aid alleges that the Union's efforts to automatically apply the parties' Contract to employees working in all of the Brooks and Eckerd stores in New York City, Hudson Valley and Northern New Jersey, without regard for the wishes of the employees in those stores, violates the National Labor Relations Act (NLRA), Sections 8(b)(1)(A) [29 U.S.C. § 158(b)(1)(A)], 8(b)(2) 29 U.S.C. § 158(b)(2)], and 8(b)(3) [29 U.S.C. § 158(b)(3)]. Hansen Decl. at ¶14, Exh. 7.

On June 7, 2007, Rite Aid filed a second unfair labor practice charge against the Union based on the instant lawsuit, alleging further violation of the NLRA, Sections 8(b)(1)(A) [29 U.S.C. § 158(b)(1)(A)], 8(b)(2) 29 U.S.C. § 158(b)(2)], and 8(b)(3) [29 U.S.C. § 158(b)(3)]. Hansen Decl. at ¶15, Exh. 8.

Region 2 of the NLRB, located in Manhattan, is presently investigating Rite Aid's unfair labor practice charges. Hansen Decl. at ¶16.

## III.    ARGUMENT

### A.    The Union's Demand For Arbitration is Illegal

#### 1.  It is unlawful for an employer and a union to apply the terms of a collective bargaining agreement to employees that the union does not represent.

At the core of the National Labor Relations Act is the right of employees to decide for themselves whether they want to be represented by a union. 29 U.S.C. § 157. An employer and a union can only apply the terms of an existing collective bargaining agreement to unrepresented employees in newly acquired stores when there is proof that a majority of those employees have designated the union as their exclusive bargaining representative. Kroger, 219 NLRB 388 (1975).[1] Proof of majority status is required as a matter of law. Raley's, 336 NLRB 374, 378 (2001).

The Union's actions violate the law because they further the Union's efforts to automatically apply the Contract to employees who have not designated the Union to be their representative. Welch Scientific Co. v. NLRB, 340 F.2d 199 (2d Cir. 1965). See also, Local One, Amalgamated Lithographers of America v. Stearns & Beale, Inc., 812 F.2d 763, 769 (2d Cir. 1987)(quoting Sperry Systems Management Division v. NLRB, 492 F.2d 63, 69 (2d Cir. 1974)); Cal-Fin, 217 NLRB 871, 874 (1975); NLRB v. Masters-Lake Success, Inc., 287 F.2d 35 (2d Cir. 1961)(finding an employer to have committed an unfair labor practice by applying an

---

[1] Small groups of employees can come into an existing unit through an "accretion." An accretion is a mechanism where the NLRB, for administrative convenience, permits a small number of unrepresented employees to be added into a larger preexisting unit of represented employees without the benefit of an election through which the employees would have the opportunity to choose for themselves. Staten Island Univ. Hosp. v. NLRB, 24 F.3d 450, 455 (2d Cir. 1994). Here, the group of employees the Union seeks to include under the contract is approximately 3,500. This group is far too large to constitute an accretion, particularly when the group has historically been unrepresented. Geo V. Hamilton, Inc., 289 NLRB 1335 (1988). Moreover, that these employees could also be configured into a multitude of different bargaining units, and have their own group identity, also precludes an accretion here. Save Mart of Modesto, Inc., 293 NLRB 1190 (1989). Consistent with that fact, the Union is not seeking a determination from the arbitrator of whether there is an accretion. It's demand makes no such reference, and it acknowledges that only "some" Brooks and Eckerd employees will be accreted into the unit, leaving employees out in "most cases." Union's Memorandum at 10.

existing collective bargaining agreement to a new store's employees without allowing them to make their own free choice of representative).

### 2. An arbitration award in the Union's favor will be unenforceable.

When an arbitrator's award is contrary to a "well-defined and dominant" public policy, it is unenforceable. Local One, Amalgamated Lithographers of America v. Stearns & Beale, Inc., 812 F.2d 763, 769 (2d Cir. 1987). The NLRA is such a public policy. Id. (citing Perma-Line Corp. of America v. Sign Pictorial and Display Union, Local 230, 639 F.2d 890, 894-95 (2d Cir. 1981)). See also, Bevona v. Field Bridge Associates, 1993 WL 498042, 90CV5191 (RJW) (S.D.N.Y. Dec. 1, 1993). The Union's arbitration demand is repugnant to the NLRA because it seeks to nullify the very essence of the statute, which is to permit employees to make their own decision as to whether or not to select a union as their representative. 29 U.S.C. § 157. This "'is so plainly unreasonable that… it can be seen in advance that no award to the Union could receive judicial sanction.'" Emery Air Freight Corp. v. Local Union 295, 786 F.2d 93, 99 (2d Cir. 1986)(citations omitted). No one should be obligated to incur the expense and spend the time to engage in such a pointless exercise, the result of which would be illegal.

### B. To The Extent the Union Concedes It Needs Proof of Majority Status, its Claims Are Not Ripe

The Union has conceded that it must demonstrate it represents a majority of employees before it can apply the Contract to any of the Brooks and Eckerd stores.[2] Union Memorandum at 10. Majority support may be proven through a secret ballot election

---

[2] The Union has done so only through counsel in its brief. Union counsel's acknowledgement of this obligation, buried in the legal papers, is in stark contrast to the overwhelming evidence of unlawful conduct. The Union has been unabashed and unguarded in expressing its view that Rite Aid should automatically apply the Contract to the Brooks and Eckerd employees upon completion of the merger. Given the context in which the facts arise, such a last minute "about face" in the legal pleadings calls into question the genuineness of the Union's commitment to live up to its counsel's representation. This is particularly true given that the Union has conceded "[i]t will be virtually impossible to win any kind of election at all of these locations." Vallone Aff. at ¶ 46, Exh. 11. The arbitration, and this suit to compel it, is nothing short of an attempt to have an arbitrator give the Union that which it knows it cannot obtain through lawful means.

conducted by the National Labor Relations Board.  29 U.S.C. § 159;  Shaw's Supermarkets,

343 NLRB 963 (2004).  To date, the Union has not offered to demonstrate that a majority of

any group of Brooks or Eckerd store employees wish to have it represent them, and no

NLRB petition has been filed.  Until those employees designate the Union as their collective

bargaining representative, and Rite Aid refuses to apply the Contract, there is no grievance

for an arbitrator to decide, and no arbitration for a court to compel.  The Union's claim is not

ripe.

### C. This Court Must Decline § 301 Jurisdiction In This Case Because This Initial Representation Matter Is Appropriately Determined by the NLRB

#### 1. There is no valid contract governing the representation of Brooks and Eckerd employees that would give rise to § 301 jurisdiction.

The NLRB deems "questions of representation, accretion, or unit appropriateness... [to

be] singularly within the Board's province."  Carr-Gottstein Foods Co., Inc., 307 NLRB 1318,

1319 (1992).  Parties can make enforceable private agreements governing representation, but

there are three key elements:

1.    "[W]hether the employees had a fair opportunity to decide to accept or reject the union;"

2.    whether "the contract forwards labor peace;" and

3.    whether the contract "governs the employer's relationship with its employees."

J.P. Morgan Hotel, 996 F.2d at 566.  The first, and most important element is not present here.

"**Critical** to the validity of such a private contract is the first question – whether the employees

were given an opportunity to decide whether to have a labor organization represent them."  Id.

(citing Hotel Employees, Rest. Employees Union, Local 2 v. Marriott Corp., 961 F.2d 1464,

1468 (9th Cir. 1992))(emphasis added).

A court will not enforce an agreement covering representational rights where the agreement is illegal, unenforceable and contrary to existing federal labor policy. Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp., 803 F.2d 69 (2d Cir. 1986)(refusing to confirm an arbitration award that would result in the application of a collective bargaining agreement to unrepresented employees alleged to be in violation of the NLRA). See also, Marriott, 961 F.2d at 1468 (cited with approval for this proposition in J.P. Morgan Hotel, 996 F.2d at 566). The Marriott court gave an example of an agreement that was illegal, unenforceable and contrary to existing federal labor policy as one that "deprived the employees at the employer's future sites of their right to choose their own bargaining representative." Id. That is the same type of agreement the Union seeks to compel Rite Aid to arbitrate, and that agreement is not valid under the test in J.P. Morgan Hotel.

This Court has also ceded its § 301 jurisdiction to the NLRB in similar cases when employee's initial representational rights are impacted. Local 812 GIPA v. Canada Dry Bottling Co. of New York, 1999 WL 301692, * 6, Case No. 98 CIV 3791 and 6774 LMM (S.D.N.Y. May 13, 1999)(staying litigation pending NLRB resolution of the case). In Canada Dry Bottling, this Court concluded that the representational issues raised by the § 301 case implicated the NLRB's expertise, because a finding in the § 301 case would directly implicate the representational rights of a separate group of employees who had exercised their Section 7 rights to select another union to represent them. Id. Similarly, in Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp., 2000 WL 1514593, Case No. 00 CV 0886(NRB)(S.D.N.Y. Oct. 11, 2000), this Court concluded that it would defer its jurisdiction to the NLRB because the issue the court was asked to consider was representational "which should be decided in the first instance by the NLRB." Id. at *4.

In both <u>Crystal Art Corp</u>. and <u>Canada Dry Bottling</u>, the Court stayed the § 301

proceedings pending resolution of the matter by the NLRB, and the court in <u>Crystal Art Corp</u>.

did so because it involved a claim under ERISA § 515 and there were certain remedies available

before the court not available before the NLRB. <u>Id</u>. at *5. That is not the case here. The remedy

sought by 1199SEIU here is a gag order, through which it seeks an illegal application of the

Contract. Given that the Union intends for the arbitration to produce an illegal award, there is no

reason to stay the arbitration to keep the Union's claims alive and dismissal is appropriate.

### 2. The Union's unlawful actions, including the pursuit of the arbitration through this suit are unfair labor practices, and Rite Aid's charge is pending before the NLRB.

Before the Union filed this lawsuit, Rite Aid filed unfair labor practice charges with the

NLRB based upon the Union's efforts to have Rite Aid automatically apply the Contract to the

Brooks and Eckerd employees. The existence of a prior pending NLRB proceeding is an

important consideration for the Court in deciding whether to cede jurisdiction to the NLRB.

<u>Woodlawn Cemetery v. Local 365, Cemetery Workers</u>, 1990 WL 150472, 90 CV 6071JMC

(S.D.N.Y. October 2, 1990); <u>See also</u>, <u>Trustees of the Eastern States Health and Welfare Fund v.</u>

<u>Crystal Art Corp.</u>, 2000 WL 1514593, 00 CV 0886(NRB)(S.D.N.Y. Oct. 11, 2000); <u>Mason</u>

<u>Tenders Dist. Council Welfare Fund v. ITRI Brick and Concrete Corp.</u>, 1997 WL 678164, *9,

96CV6754AJP (S.D.N.Y. Oct. 31, 1997).

Given the fundamental violation borne of the Union's actions, it is crucial for this Court

to permit the NLRB to decide the matter in the first instance. <u>See</u>, <u>e.g.</u> <u>Brown v. Sandimo</u>

<u>Materials</u>, 250 F.3d 120, 129 (2d Cir. 2001) ("an agency should be afforded the opportunity to

decide a factual issue before the issue is decided by an appellate court."); <u>Trinidad Corp.</u>, 803

F.2d at 73-74.

"In deciding whether to defer to an agency, courts generally identify four factors: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp., 2000 WL 1514593, Case No. 00 CV 0886(NRB)(S.D.N.Y. Oct. 11, 2000)(citing National Communications Ass'n, Inc. v. American Tel. & Tel. Co., 46 F.3d 220, 222-23 (2d Cir. 1995)).

Application of these four factors  militates in favor of deferral of this case to the NLRB. The NLRB is charged with interpreting and enforcing the nation's labor laws.  The core issue in this case falls squarely within the NLRB's field of expertise and discretion.  Any award by the arbitrator that applies the Contract will be inconsistent with longstanding NLRB law on the subject.

Finally, the fact that the very arbitration the Union seeks to compel in this case is alleged to be unlawful, should weigh heavily in favor of deferral to the NLRB for resolution of the dispute.  Arbitrations and lawsuits that have been filed with an objective deemed "unlawful under traditional NLRA principles" can be deemed an unfair labor practice and enjoined. Teamsters Local 776 (Rite Aid Corp.), 305 NLRB 832, 835 (1991)(citing Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983)(§ 301 lawsuit); Service Employees Local 32B32J v. NLRB, 68 F.3d 490, 495 (D.C.Cir. 1995)(arbitration).

### 3. The fact that the Union has also filed charges with the NLRB shows it too believes the dispute should be resolved in that forum in the first instance.

The dispute is presently pending before the NLRB at the request of both Rite Aid and the Union.  The Union filed unfair labor practice charges with the NLRB alleging that Rite Aid, and

9

Brooks and Eckerd have violated the law with respect to many of the very same actions it seeks to remedy through this suit. Vallone Aff. ¶ 40, Exh. 10. Certainly, any contention by the Union that this court not cede its § 301 jurisdiction to the NLRB contradicts its own conduct, having just asked the same agency for relief itself.

### D. The Union's Effort to Have an Arbitrator Prevent Rite Aid From Engaging in an "Anti-Union Campaign" is Not an Arbitrable Matter

The Union wants to enjoin Rite Aid from communicating with its employees pending the outcome of the arbitration. Because the Union seeks such extraordinary relief, the Court must go beyond merely deciding whether the Union's grievance is arbitrable. It must review the merits of the underlying grievance. Hoh v. Pepsico, Inc., 491 F.2d 556, 561 (2d Cir. 1974). In Hoh, a case heavily relied upon by the Union, the Second Circuit concluded:

> We think this must mean not simply some likelihood of success in compelling arbitration, but in obtaining the award in aid of which the injunction is sought.

Hoh v. Pepsico, 491 F.2d at 561. The court also noted that the Supreme Court's directive to be liberal in construing agreements to arbitrate does not extend to ancillary relief. Id., citing Steel Workers Triology, 363 U.S. 564, 574, 593 (1960):

> It would be inequitable in the last degree to grant an injunction pending arbitration which was costly to a defendant on the basis of a claim which although arguably arbitrable was plainly without merit.

Hoh v. Pepsico, 491 F.2d at 561 (emphasis added).

Examination of the Union's underlying claim shows it is meritless.

### 1. The Contract has no neutrality clause, making the Union's demand for arbitration meritless.

The claims the Union seeks to arbitrate "must on their face be governed by the terms of the collective bargaining agreement." Brink's, 744 F.2d at 286. The Union can point to nothing

in the Contract to show that Rite Aid agreed to be neutral. The Union's implicit acknowledgment that there is no neutrality clause is further illustrated by its effort to imply that one exists through the "covenant of good faith and fair dealing." Union's Memorandum of Law in Support of its Motion for a Preliminary Injunction at 9-10.

A neutrality agreement must be express. Our research reveals no case in which a court has forced an employer to arbitrate the terms of an implied neutrality agreement.[3] Moreover, to imply neutrality limits statutory rights under the National Labor Relations Act "to express views, argument or opinions… if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). There is no provision in the Contract in which Rite Aid has waived, or otherwise contractually limited that right. The after acquired stores clause says nothing about what Rite Aid can or cannot say.

Where nothing in the agreement can be construed to cover the dispute, it will not be deemed arbitrable. Local 807, Int'l Bhd. of Teamsters v. Brink's, Inc., 744 F.2d 283, 286-86 (2d Cir. 1984); *cited with approval in* Hotel & Rest. Employees Union, Local 217 v. J.P. Morgan Hotel, 996 F.2d 561, 565 (2d Cir. 1993); See also, Diamond Glass Corp. v. Glass Warehouse Workers, etc., 682 F.2d 301, 303-04 (2d Cir. 1982); Congreso de Uniones Industriales de Puerto

---

[3] Indeed, the absence of any neutrality language here distinguishes this case from other cases where arbitration was compelled, including those which the Union relies upon. In those other cases, there is no question that the labor contracts at issue contained specific neutrality obligations, some of which were quite detailed. For example, in Hotel Employees Restaurant Employees Union, Local 217 v. J.P. Morgan Hotel, 996 F.2d 561 (2d Cir. 1993), the neutrality agreement the Court permitted the parties to arbitrate was one where:

> "the parties **contracted** that Local 217 could solicit support from a designated bargaining unit of 90 hotel employees, not previously represented by any union. Local 217 undertook to forego the right to picket authorized under the Act… in turn the hotel promised the union access to its employees in non-public areas of the hotel. Local 217 pledged it would notify the hotel in advance of visits by its representatives and that during those it would not coerce or threaten hotel employees or interfere with hotel operations. The employer agreed not to interfere with the organizing effort or to mount a campaign with its employees opposing the union." Id. at 563. (emphasis added).

In Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc., 845 F.2d 1250 (4th Cir. 1988) the neutrality agreement read as follows: "[the employer] would 'be neutral in the election and let any selection be strictly up to its employees,' and would hire employees 'without regard to whether or not [they] joined the union or [were] in favor of it.'" Id. at 1251. "Attached to the election agreement was a collective bargaining agreement… which would be implemented in the event the employees selected the Union as their collective-bargaining representative." Id.

Rico v. V.C.S. National Packing Co., Inc., 756 F.Supp. 69, 73-74 (D.P.R. 1991). The Union can point to no provision in the Contract that even remotely references what Rite Aid can or cannot say to its employees, much less what Brooks or Eckerd were able to say to theirs. Vallone Aff. at ¶ 11, Exhs. 1-3.

It is antithetical to the principles of collective bargaining to permit a party to infer that the existence of one contract clause creates another, particularly when that second clause carries with it an entirely separate set of rights and obligations. To allow an interpretation doctrine such as the "implied covenant of good faith and fair dealing" to create an entirely distinct term of an agreement essentially renders the four corners of a CBA irrelevant, and permits a party to a collective bargaining agreement to arbitrate anything it wants. Taken to its logical conclusion, any dispute between an employer and a union will be arbitrable regardless of whether there is any contractual language the arbitrator can use.

Finally, the Union's approach here is very similar to that considered and rejected by the Court in Local 807 v. Brink's, 744 F.2d 283, 286 (S.D.N.Y. 1984). There, the union attempted to characterize its grievance as pertaining to threats to engage in the conduct that formed the underlying dispute. Id. at 286. The Court, recognizing that the core dispute was all the case was about, was not distracted by the union's efforts to boot-strap its claim into the contract. Id. The Court then found that it lacked § 301 jurisdiction on the core matter, and dismissed the entire case, including the grievances related to threats to engage in the conduct. Id. at 287. As described above, this dispute is really about the Union's desire to have Rite Aid apply the terms of the Contract to the Brooks and Eckerd stores.

The lack of any contract language to cover the dispute, coupled with the Union's clear and unabashed unlawful motives in pursuing this arbitration, demonstrate that the matter is not

12

arbitrable. Therefore, the demanded arbitration should not be compelled.

**2.    There is no collective bargaining agreement covering conduct of Brooks and Eckerd, and therefore no § 301 jurisdiction.**

Brooks and Eckerd stores did not become part of Rite Aid until June 5. Before then, when all of the alleged "union avoidance campaign" conduct occurred, there was no contractual privity with the Union to enable it to invoke § 301 jurisdiction of this Court. Until that date, the stores were owned by Coutu, which had no collective bargaining agreement with the Union.

"'[S]ection 301 does not extend to suits brought against defendants who are not parties to the contract whose breach is alleged'" Duane Reade v. Allied Trades Council, 2005 U.S.Dist. LEXIS 29690, 04CV3542(BSJ), *14 (S.D.N.Y. Oct. 7, 2005)(quoting Smith v. Hickey, 482 F.Supp. 644, 647 (S.D.N.Y. 1979)); See also, Cement and Concrete Workers Dist. Council Welfare Fund v. Atlas Concrete Corp., 2007 U.S.Dist. LEXIS 9817, 04CV0915(CPS), *15 (E.D.N.Y. Feb. 13, 2007). "In order to state a [LMRA § 301(a)] claim against [defendant] **the complaint must allege that [defendant], was a signatory to the collective bargaining agreement**." Id. (quoting Cruz v. Robert Abbey, Inc., 778 F.Supp. 605, 610 (E.D.N.Y. 1991)(emphasis added)); Tuvia Convalescent Center, Inc. v. National Union of Hospital and Healthcare Employees, 717 F.2d 726 (2d Cir. 1983). The Union has not, and cannot allege, that Coutu is, or ever has been, a party to the Contract it wants this Court to enforce under § 301. Moreover, the Union has proffered no evidence through allegation or affidavit in the preliminary injunction proceeding to connect Rite Aid to any of Coutu's alleged conduct.

Accordingly, there is no legal basis for the Union to seek to enjoin conduct or to compel arbitration over conduct related to any Brooks or Eckerd employees.

IV.    **CONCLUSION**

Based upon the foregoing, Rite Aid implores this Court to grant its Motion to Dismiss

and to permit this matter to proceed before the NLRB.


Dated: June 15, 2007
         New York, New York

                                    Respectfully submitted,

                                    THOMPSON WIGDOR & GILLY LLP

                                    By:    _____
                                           Scott B. Gilly (SG-0861)

                                    The Empire State Building
                                    350 Fifth Avenue, Suite 5720
                                    New York, New York 10118
                                    Telephone: (212) 239-9292
                                    Facsimile: (212) 239-9001
                                    E-mail: sgilly@twglawyers.com

                                    - and –

                                    Stephen M. Silvestri (*Motion to Admit Pro Hac
                                    Vice Pending*)
                                    Stefan J. Marculewicz (*Motion to Admit Pro Hac
                                    Vice Pending*)
                                    Laura Pierson-Scheinberg (*Motion to Admit Pro
                                    Hac Vice Pending*)
                                    MILES & STOCKBRIDGE, P.C.
                                    10 Light Street
                                    Baltimore, MD 21202
                                    Telephone:  (410) 727-6464
                                    Facsimile:  (410) 385-3700

                                    Counsel for Defendants