```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE            :
WORKERS EAST,                          :
                                       :        ECF CASE
                                       :        Electronically Filed
                       Plaintiff,      :
                                       :        07 Civ. 04816 (GBD)
                                       :
          -against-                    :
                                       :
RITE AID CORPORATION and               :
THE JEAN COUTU GROUP (PJC), INC.,      :
THE JEAN COUTU GROUP USA, INC.,        :
d/b/a BROOKS ECKERD DRUG STORES        :
                                       :
                       Defendants.     :
------------------------------------------------------------X
```

**PLAINTIFF 1199'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A
PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

**LEVY RATNER, P.C.**
Attorneys for Plaintiff 1199
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100

{Worldox Files\1199\123\04\07036792.DOC}                i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT:  THE COURT SHOULD ENJOIN DEFENDANTS' UNION
AVOIDANCE CAMPAIGN TO PRESERVE THE INTEGRITY
OF THE ARBITRAL PROCESS AND TO AVOID
IRREPARABLE HARM TO 1199 AND ITS MEMBERS ................................. 6

    I.    1199's Grievance is Arbitrable ............................................................................ 6

    II.    Unless Enjoined, 1199's Attempt to Vindicate Its Rights
and the Rights of Its Members Through Arbitration Will
be Futile, Resulting in Irreparable Harm. ........................................................... 8

    III.    1199 Is More Than Likely To Prevail On The Merits. ....................................... 9

    IV.    There Is No Other Basis For Denying The Union's Request
for a Preliminary Injunction In Aid of Arbitration. .......................................... 10

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999)..................................................................................................10

*Bressette v. International Talc Co., Inc.*,
   527 F.2d 211 (2d Cir. 1975)....................................................................................................7

*Dover Limited v. Watley, Inc.*,
   423 F. Supp. 2d 303 (S.D.N.Y. 2006)..................................................................................11

*Hoh v. Pepsico*,
   481 F.2d 556 (2d Cir. 1974)....................................................................................................6

*Hotel Employees, Restaurant Employees, Local 2 v. Marriott Corp.*,
   961 F.2d 1464 (9th Cir. 1992) ................................................................................................7

*Kroger Co.*,
   219 N.L.R.B. 388 (1975) ........................................................................................................7

*Niagara Hooker*,
   935 F.2d 1370 (2nd Cir. 1991)......................................................................................3, 6, 9

*Pall Corp. v. N.L.R.B.*,
   275 F.3d 116 (D.C. Cir. 2002) ................................................................................................7

*Steelworkers v. American Manufacturing Co.*,
   363 U.S. 564 (1960).................................................................................................................7

*Teachers Association of the Japanese Education Institute of NY v. Japanese Education
   Institute of NY, Inc.*,
   724 F. Supp. 188 (S.D.N.Y. 1989).........................................................................................9

*Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co, Inc.*,
   944 F.2d 1037 (2d Cir. 1991)..................................................................................................7

## FEDERAL STATUTES

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185........................1

## MISCELLANEOUS

John Logan, *The Union Avoidance Industry in the United States*, British Journal of Indus.
   Relations 44:4, 651-675 (2006) ..............................................................................................9

Chiraq Mehta, et al., *Undermining the Right to Organize: Employer Behavior During Union Representation Campaigns* 8, 12 (Dec 2005)..............................................................9

John Logan, *Consultants, lawyers, and the 'union free' movement in the USA since the 1970s*, Indus. Relations Journal 33:3, 197-214 (2002) ........................................................9

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE              :
WORKERS EAST,                            :      07 Civ. 04816 (GBD)
                                         :
                  Plaintiff,             :
                                         :
         -against-                       :
                                         :
RITE AID CORPORATION and                 :
THE JEAN COUTU GROUP (PJC), Inc.,        :
THE JEAN COUTU GROUP USA, INC.,          :
d/b/a BROOKS ECKERD DRUG STORES          :
                                         :
                  Defendants.            :
-----------------------------------------------------------X
```

**PLAINTIFF 1199'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A
<u>PRELIMINARY INJUNCTION IN AID OF ARBITRATION</u>**

### INTRODUCTION

1199SEIU, United Healthcare Workers East ("1199" or "Union") submits this reply memorandum of law in further support of its application, pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, for a preliminary injunction, *pendent lite*, enjoining Defendant Rite Aid Corporation ("Rite Aid") and Defendants The Jean Coutu Group (PJC), Inc. and The Jean Coutu Group USA, Inc., d/b/a Brooks Eckerd Drug Stores (collectively referred to as "Coutu") from engaging in a union avoidance campaign directed towards the employees at Brooks and Eckerd stores acquired by Rite Aid pursuant to a merger agreement between Rite Aid and Coutu until such time as an arbitrator determines whether that conduct violates the parties' collective bargaining agreement.

In its moving papers, 1199 demonstrated that a preliminary injunction should be granted because the underlying dispute is arbitrable, the continuation of the conduct at issue would

deprive the arbitrator of the ability to meaningfully restore the parties to the *status quo ante*, and the traditional equitable criteria for injunctions have otherwise been met. None of the defenses raised in Defendants' answering papers rebut the Union's demonstrated claim to the relief sought in this application.

Defendants' claim that the After-Acquired Clause of the parties' collective bargaining agreement is unlawful is not only incorrect as a matter of fact and law, but is insufficient to avoid a conclusion of arbitrability as it ignores the established principle that an arbitrator, and not the Court, must decide the merits of the underlying dispute. The only question before this Court is whether the dispute is arbitrable. As the collective bargaining agreement includes a broad grievance and arbitration provision, and as the Union's claims arise out of that agreement, the question must be answered in the affirmative.

Contrary to Defendants' assertions, 1199 and Rite Aid *are* parties to an agreement that requires Rite Aid to "remain entirely neutral with respect to unionization and 1199" when it acquires new stores ("Neutrality Agreement"). See Supplemental Affidavit of Laurianne D. Vallone ("Vallone Supp. Aff."), ¶.[1] Defendants' failure and refusal to remain neutral is clearly arbitrable under both the Neutrality Agreement itself and the broad grievance and arbitration provision of the parties collective bargaining agreement. Moreover, the parties' collective bargaining agreement, like all contracts, includes an implied covenant of good faith and fair dealing requiring each party to act consistently with the spirit of the bargain and the other party's justified expectations. The Union's claim that Defendants are acting in a manner that is not

---

[1] While 1199 representatives were aware of the neutrality agreement at the time its moving papers were submitted, it was unable to locate the agreement. Subsequently, counsel who represented 1199 at the negotiation of that agreement located it and provided it to the Union. See Vallone Supp. Aff. ¶ 9.

consistent with the spirit of the contract's After-Acquired Clause or the Union's justified expectations with respect to that clause is also undeniably arbitrable.

Defendants further misapply the standard for issuing an injunction in aid of arbitration by misreading the Second Circuit's requirements for establishing irreparable harm in a case of this nature. In Niagara Hooker, the Court held that to obtain a *status quo* injunction in aid of arbitration, the moving party demonstrates irreparable harm by showing that an arbitrator could not fashion an adequate remedy to return the parties to the *status quo ante*. 935 F.2d 1370 (2d Cir. 1991). Both Defendants' assertion that their contract violations can be remedied by an arbitrator, and their contention that something more most be shown to establish irreparable harm, are entirely without merit. As the Union demonstrated in its moving papers, and as discussed further below, the continuation of Defendants' union avoidance campaign for the many months it will take to conclude the arbitration process will undermine confidence in and support for the Union to such an extent that no arbitrator-fashioned remedy will be able to undo the damage. Having demonstrated that, the Union has established irreparable harm.

Accordingly, we respectfully request that the Court issue a preliminary injunction in this matter and grant such other relief as it deems warranted.

**STATEMENT OF FACTS**

In many respects, the facts in this care are undisputed. For example, based on the competing submissions, the parties do not dispute that:

- 1199 represents several thousand Rite Aid employees in New York and New Jersey. Affidavit of Laurianne D. Vallone submitted in support of Plaintiff's Order to Show Cause ("Vallone Aff.") ¶7.

- 1199 and Rite Aid have been parties to a number of successive collective bargaining agreements, the most recent of which was effective for the period October 11, 1998 through October 10, 2002 ("CBA"). Vallone Aff., Exhibit 1.

- The CBA was extended, with certain modifications, by two (2) subsequent Memoranda of Agreement ("MOAs"). Vallone Aff., Exhibits 2 and 3.

- Article 1 of the CBA, entitled Coverage, provides that the CBA shall apply to any existing store that Rite Aid acquires ("After-Acquired Clause"). Specifically, the After-Acquired Clause states that the CBA "shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by Rite Aid Corporation (including but not limited to those stores in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores) . . ." Vallone Aff., Exhibit 1, p. 2.

- In late summer 2006, Rite Aid and Coutu announced an agreement pursuant to which Rite Aid would acquire, in full, all Eckerd and Brooks drug stores ("Eckerd stores"). See Vallone Affidavit ¶17; Declaration of Neils Hansen submitted in response to Plaintiff's Order to Show Cause ("Hansen Decl.") ¶ 2.

- Rite Aid's acquisition of the Eckerd stores was completed on or about June 4, 2007. Hansen Decl. ¶12.

- Prior to the completion of the acquisition Rite Aid informed the Union that it intended to operate the to-be-acquired Eckerd stores pursuant to a "union free business model." Vallone Aff. ¶¶ 21, 44.

- In early May 2007, approximately one month before Rite Aid's acquisition of the Eckerd stores, a "10 Minute Huddle" was distributed and/or communicated to Eckerd employees stating that employees can vote against union representation, stressing that management "prefer[s] to work directly with [employees] to address questions and concerns versus dealing with a third party," and asserting that under a union contract everyone normally receives the same pay regardless of performance. Vallone Aff., Exhibits 5 and 6; Declaration of Dale Dudik submitted in response to Plaintiff's Order to Show Cause ("Dudik Decl.") ¶11.

- In a telephone conversation with Rite Aid Chief Executive Officer Mary Sammons on or about May 10, 2007, 1199 President Dennis Rivera protested Rite Aid's stated refusal to apply the CBA to the Eckerd stores it acquires pursuant to the Merger Agreement, and stated that the union avoidance campaign Rite Aid was conducting along with Eckerd management violates the CBA. See Vallone Aff. ¶¶ 41, 42.

- In a meeting with 1199 Executive Vice President Michael Rifkin on or about May 24, 2007 Rite Aid Senior Vice President of Human Resources Todd McCarty reiterated Rite Aid's intention to operate the to-be-acquired Eckerd stores pursuant to a "union free business model" and confirmed that Rite Aid and Eckerd management had jointly undertaken and would continue a union avoidance campaign targeting the workers in those stores. See Vallone Aff. ¶¶ 44, 45, Exhibit 11.

- On or about May 31, 2007, 1199 filed a demand for arbitration seeking a declaratory ruling from an arbitrator that Rite Aid's intention to keep the acquired Eckerd stores

"union-free" is a violation of the CBA and further seeking a ruling that the Union Avoidance Campaign violates the CBA.   Vallone Aff., Exhibit 2.

- On or about May 31, 2007, 1199 wrote to Rite Aid, enclosing a copy of its demand for arbitration, and requested that Rite Aid consent to expedited arbitration of this matter. Vallone Aff., Exhibit 13.

- Rite Aid has not agreed to expedited arbitration.  Vallone Affidavit ¶ 49; Hansen Decl. ¶ 13.

- On or about June 5, 2007 and June 7, 2007,  Rite Aid filed ULP charges with the NLRB against the Union alleging certain violations of the NLRA and requesting an injunction pursuant to §10(j) of the NLRA.  Hansen Decl. ¶¶ 14, 15.

- Region 2 of the NLRB is currently investigating the ULP charges and Rite Aid's request for injunctive relief. Hansen Decl. ¶16.

In addition to the above undisputed facts, subsequent to submitting its moving papers, the Union located the Neutrality Agreement, an agreement it entered into with Rite Aid dated June 1998 concerning, among other things, the procedures to be followed in the event Rite Aid acquires a new store.  Vallone Supp. Aff., Exhibit A.  The Neutrality Agreement, which is currently in effect, provides that if 1199 obtains the support of a majority of employees in a newly acquired store, Rite Aid will recognize 1199 as the collective bargaining representative of the employees in that store and apply the terms and conditions of the CBA to those employees. Id. at ¶10.  Rite Aid also agreed in the Neutrality Agreement "that it and its managers and supervisors *shall remain entirely neutral* with respect to unionization and 1199 as the union seeking to represent its employees."  Id. at ¶8 (emphasis added).

# ARGUMENT
## THE COURT SHOULD ENJOIN DEFENDANTS' UNION AVOIDANCE CAMPAIGN TO PRESERVE THE INTEGRITY OF THE ARBITRAL PROCESS AND TO AVOID IRREPARABLE HARM TO 1199 AND ITS MEMBERS

Defendants do not and cannot dispute that a union may obtain a *status quo* injunction against an employer pending arbitration if (a) the grievance is arbitrable, (b) the injunction is necessary to "prevent arbitration from being rendered a meaningless ritual," and (c) it satisfies the traditional requirements for equitable relief by showing that there is "some likelihood" of success on the merits of the arbitration.  See Niagara Hooker, 935 F.2d 1370 (2nd Cir. 1991); Hoh v. Pepsico, 481 F.2d 556, 561 (2d Cir. 1974).  Where Defendants go astray is that they misapply this standard.

**I.    1199's Grievance is Arbitrable**

The underlying dispute involves the Union's claim that by conducting the Union Avoidance Campaign in conjunction with Coutu, Rite Aid is violating the express language of the Neutrality Agreement as well as the CBA's implied covenant of good faith and fair dealing in connection with the After-Acquired Clause.  As the CBA allows for arbitration of any unsettled grievance, and broadly defines "grievance" as "[a]ll complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement" (Vallone Aff., Exhibit 1, p. 54), the dispute is clearly arbitrable.

Defendants efforts to avoid that conclusion are both factually inaccurate and legally insufficient.  A large portion of Defendants' answering papers is devoted to the argument that the dispute is not arbitrable because the CBA does not include a neutrality provision.  As it is clear that the parties *have* entered into a Neutrality Agreement prohibiting Defendants from engaging

in any non-neutral speech or conduct with respect to the Union, Defendants' core defense fails. Defendants also claim that the dispute cannot be arbitrated because a provision the Union seeks to enforce -- the After-Acquired Clause (Vallone Aff., Exhibit 1, p. 2) -- is unlawful. To the contrary, it is well settled that clauses like the After-Acquired Clause are valid and require the employer to recognize the union in a new store upon a showing of majority status. Kroger Co., 219 NLRB 388, 389 (1975). Furthermore, federal courts have upheld that validity of such clauses. *See e.g.* Pall Corp. v. N.L.R.B., 275 F.3d 116, 118 (D.C. Cir. 2002); Hotel Employees, Restaurant Employees, Local 2 v. Marriott Corp., 961 F.2d 1464, 1468 (9th Cir. 1992) (Court upheld agreement whereby the employer agreed to waive its statutory right to demand NLRB certified election). As 1199 is seeking no more and no less than the lawful enforcement of this valid clause,[2] Defendants' claim is entirely without merit.

Moreover, both of these arguments go towards the merits of the Union's claim, not to whether the dispute is arbitrable and, accordingly, should be made before the arbitrator and not this Court.[3] It is well established that in determining whether a particular dispute is arbitrable, the role of the court is "very limited" and "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is covered by the contract." Bressette v. Int'l Talc Co., Inc., 527 F.2d 211 (2d Cir. 1975), quoting Steelworkers v. American Mfg. Co., 363 U.S 564, 567-68 (1960). See also Truck Drivers Local Union No. 807 v. Regional Import & Export

---

[2] 1199 has not yet made a demand for recognition in *any* former Eckerd store, no less a store in which it does not have majority support.

[3] Defendants claim that the After-Acquired Clause is unlawful can also be, and in fact has been, raised before the National Labor Relations Board. Indeed, Rite Aid has included that allegation in the two unfair labor practice charges it filed against the Union at the National Labor Relations Board ("NLRB"). While Rite Aid requested that the NLRB seek an injunction against the Union pursuant to §10(j) of the National Labor Relations Act, thus far -- approximately two weeks into its investigation -- the NLRB has not determined that an injunction is warranted.

Trucking Co, Inc., 944 F.2d 1037 (2d Cir. 1991). As the Union's claim that Defendants violated both the Neutrality Agreement and the After-Acquired Clause is plainly covered by the contract, and all disputes arising under or out of the contract are subject to the contract's arbitration procedure, the underlying dispute is arbitrable and the Court need not consider Defendants' arguments with respect to the merits of the dispute.

## II. Unless Enjoined, 1199's Attempt to Vindicate Its Rights and the Rights of Its Members Through Arbitration Will be Futile, Resulting in Irreparable Harm.

The repeated conveyance of a one-sided, anti-union message, with express or implied threats that unionization will negatively effect employees' pay, benefits, work schedule, job flexibility, and relationships with management has created and continues to foster an environment in the former Eckerd stores that undermines employee confidence in and support for the Union. Allowing the union avoidance campaign to continue until the arbitration process is concluded will have a devastating impact on workers' freedom to choose union representation. While the Union requested that Rite Aid agree to expedited arbitration of this dispute, Rite Aid refused, leaving the Union with no choice but to pursue its grievance through the standard arbitration process. Pursuant to that standard process, it is likely to take at least six (6) to nine (9) months before an arbitrator's decision is issued, perhaps giving Defendants eleven full months -- from April 2007 through March 2008 -- to communicate their anti-union message to employees. The atmosphere created by eleven months of one-sided communications in which Defendants will chip away at any support the Union has managed to build cannot be reversed by a cease and desist order or even affirmative disavowals. After so many months of the Defendants' persistent and sustained anti-union rhetoric designed to influence employee opinion about the union and limit, if not eliminate entirely, any pro-union activities, an arbitrator will be entirely unable to fashion a remedy that reverses the chilling effects of that rhetoric on

employees.  Accordingly, an injunction is necessary to prevent the arbitral process from being rendered a "hollow formality."  Niagara Hooker, 935 F.2d at 1378 (quoting Lever Bros., 554 F.2d at 123).

Having demonstrated that, in the absence of an injunction, the arbitrator will be unable to award an adequate remedy, the Union has established irreparable harm.  Niagara Hooker, 935 F.2d at 1378; see also Teachers Ass'n of the Japanese Educ. Inst. of NY v. Japanese Educ. Inst. of NY, Inc., 724 F.Supp. 188, 192 (S.D.N.Y. 1989) ("The traditional irreparable harm requirement for an injunction focuses on the nature of the harm, not the nature of the action.  The test is whether an arbitrator can fashion an adequate remedy to return the parties to status quo ante and thus a minor or nondrastic change, as well as a reversible action, can both produce an irreparable harm").  Studies have consistently demonstrated that employer anti-union campaigns, like the one at issue here, effectively and irreversibly erode a union's ability to gain majority support among workers.  *See generally*, John Logan, *The Union Avoidance Industry in the United States*, British Journal of Indus. Relations 44:4, 651-675 (2006); Chiraq Mehta, et al., *Undermining the Right to Organize: Employer Behavior During Union Representation Campaigns* 8, 12 (Dec 2005) (http://araw.org/docUploads/UROCUEDcompressedfullreport.pdf); John Logan, *Consultants, lawyers, and the 'union free' movement in the USA since the 1970s*, Indus. Relations Journal 33:3, 197-214 (2002); all attached as Exh. A.  In this case, Defendants will have irreparably harmed both the former Eckerd employees by depriving them of the right to union representation and contractual benefits, and the Union's current Rite Aid members by diluting their strength viz a viz their employer.

**III.    1199 Is More Than Likely To Prevail On The Merits.**

Contrary to Defendants' claim, it is more than likely that 1199 will prevail at arbitration and obtain the relief it seeks.  The parties' Neutrality Agreement provides that upon the Union's

showing of majority support, employees at newly acquired stores will become represented by the Union and covered by the CBA. It also governs the parties' conduct during the period between Rite Aid's acquisition of a new store and the Union's demonstration of majority support and expressly prohibits Rite Aid from engaging in any non-neutral communications or conduct during that period. Given the clear language of the Neutrality Agreement, as well as the After-Acquired Clause's implied covenant of good faith and fair dealing, it is very likely that the Union will ultimately succeed on the merits and obtain the relief it seeks at arbitration.

**IV.   There Is No Other Basis For Denying The Union's Request for a Preliminary Injunction In Aid of Arbitration.**

Perhaps because it is so evident that Plaintiff satisfied the standard for issuing a *status quo* injunction in aid of arbitration, Defendants seek to avoid the injunction by playing a game of smoke and mirrors: they argue that while Rite Aid is a party to the CBA, it has not engaged in the union avoidance campaign and that while Coutu engaged in a union avoidance campaign, it is not a party to the CBA. Notwithstanding its efforts at such misdirection, common sense must prevail. That is, it is simply not believable that Coutu would -- on its own, without direction from or consultation with Rite Aid -- invest time and resources to keep the Union from representing employees that, in a month's time, would be employed by another entity. Both the facts[4] and basic logic require the conclusion that Rite Aid and Coutu jointly engaged in the Union Avoidance Campaign, with Coutu acting as Rite Aid's agent. As such, not only is Rite Aid bound by the acts of Coutu,[5] but Coutu, by virtue of this joint endeavor and its merger

---

[4] Both Rite Aid Labor Relations Director Neils Hansen and Senior Vice President for Human Resources Todd McCarty confirmed to the Union that it was working with Eckerd management in connection with the union avoidance campaign. See Vallone Aff. ¶¶ 21, 44, 45.

[5] It is axiomatic that parties are bound by the acts of their agents. *See e.g.* American Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) (Court held both

agreement with Rite Aid, is bound by the requirements of the Neutrality Agreement and the After-Acquired Clause.[6]

In a last gasp effort to wriggle out from under a certain injunction, Defendants point their finger at the Union and attempt to use the Union's alleged conduct to deprive it of relief to which it is otherwise entitled. Of course, the Union strongly disputes that it engaged in any improper or unlawful conduct in connection with the former Eckerd employees.[7] However, that determination will be made by the NLRB and is entirely irrelevant to these proceedings. Notably, Defendants have not made a cross-motion to this Court to enjoin the Union's conduct or communications. Instead, after the Union filed this motion and ULP charges against Defendants at the NLRB, Rite Aid filed its own NLRB charges against the Union and requested that the NLRB seek an injunction pursuant to §10(j) of the NLRA. The NLRB's investigation of the charges, and Rite Aid's request for injunctive relief, are currently pending. It is Defendants' conduct, not the Union's, that is at issue in this proceeding. Accordingly, the claim that an injunction should be denied based on the Union's alleged actions is nothing more than a red herring meant to distract the court from the undeniable truth: that Defendants breached the CBA, that such breach is arbitrable, that the Union is likely to succeed at the arbitration, and that without an injunction the arbitrator will not be able to award any meaningful remedy resulting in irreparable harm to the Union, its members, and the former Eckerd employees.

---

principal and agent bound by arbitration clause entered into to agent.); Dover Limited v. Watley, Inc., 423 F.Supp.2d 303, 318 (S.D.N.Y. 2006).

[6] Of course, whether Coutu is bound by the Neutrality Agreement and the After Acquired Clause by virtue of its actions on behalf of Rite Aid and or its merger mgreement with Rite Aid, is a question for the arbitrator, not this Court.

[7] Indeed, the Union's conduct is entirely consistent with the Neutrality Agreement which provides the Union with access to newly acquired stores for the purpose of communicating to employees the benefits of Union representation. See Vallone Supp. Aff. ¶6.§

## **CONCLUSION**

For the reasons set forth above, and as demonstrated in its moving papers, the Union has met all the requirements for a *status quo* injunction in aid of arbitration. Accordingly, 1199 respectfully requests that the Court grant a preliminary injunction, *pendent lite*, enjoining Defendants from engaging in the Union Avoidance Campaign directed at the employees at the former Eckerd stores acquired by Rite Aid until the arbitration of 1199's grievance is concluded.

Dated: New York, New York
June 18, 2007

Respectfully submitted,
LEVY RATNER, P.C.

By: /s/
Allyson L. Belovin (AB 3702)
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100 (phone)
(212) 627-8182 (fax)
abelovin@lrbpc.com