UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE
WORKERS EAST,

      07 Civ. 04816 (GBD)

               Plaintiff,

            -against-

RITE AID CORPORATION and
THE JEAN COUTU GROUP (PJC), Inc.,
THE JEAN COUTU GROUP USA, INC.,
d/b/a BROOKS ECKERD DRUG STORES

               Defendants.
------------------------------------------------------------X

## SUPPLEMENTAL AFFIDAVIT OF
## LAURIANNE D. VALLONE IN SUPPORT OF
## PLAINTIFF 1199's MOTION FOR AN INJUNCTION

STATE OF NEW YORK   )
                              ) ss:
COUNTY OF NEW YORK  )

      LAURIANNE D. VALLONE, being duly sworn, deposes and says:

      1.     I submit this supplemental affidavit in support of Plaintiff 1199's motion for a preliminary injunction in the above-captioned matter because subsequent to my initial affidavit dated June 6, 2007, I located an agreement between 1199 and Defendant Rite Aid Corporation ("Rite Aid") which is relevant to this matter (see, *supra*, ¶4, 9). The following is based upon my personal knowledge, except where otherwise noted or clear from the context.

      2.     I am a Vice President of 1199's Pharmacy/Drug Division and have held that position since 1999. Prior to that, I was employed as an 1199 Organizer from 1989 through 1999.

{Worldox Files\1199\123\04\07036803.DOC}      1

3. As both a Vice President and an Organizer I have participated in numerous collective bargaining negotiations between 1199 and various employers, including Defendant Rite Aid.

4. In June 1998, I participated in negotiations resulting in certain recognition and neutrality agreements (hereafter referred to as the "Neutrality Agreement") with Rite Aid covering, *inter alia*, Rite Aid's conduct concerning the representation of workers when Rite Aid opened or acquired new stores. A copy of the Neutrality Agreement is attached as Exhibit A.

5. The Neutrality Agreement between 1199 and Rite Aid was reported in the media. See *New York Times* article, attached as Exhibit B.

6. The Neutrality Agreement includes a provision prohibiting Rite Aid from campaigning in opposition to 1199 representation. The Neutrality Agreement supplemented the "After-Acquired Clause" in the basic 1199-Rite Aid collective bargaining agreement ("CBA") which provides that the CBA shall apply to any stores acquired by Rite Aid.

7. The Neutrality Agreement was reduced to writing as an addendum to the CBA, and has been renewed and extended, without modification, with each successive memorandum of agreement. As the Court will note, the document was signed by 1199 Executive Vice President Michael Rifkin and Bob Souder, then Rite Aid's Executive Vice President, the Rite Aid management representative who negotiated both the Neutrality Agreement and a number of the 1199-Rite Aid collective bargaining agreements.

8. Since entering into the Neutrality Agreement, up to the current administration of Rite Aid, Rite Aid has abided by the Neutrality Agreement and the After Acquired clause, and hundreds of workers in newly acquired Rite Aid stores have been added to the 1199 bargaining unit without Rite Aid's objection or any anti-union campaign. Indeed, such recognition occurred

routinely and with no contention. The parties understood that this was an integral part of their relationship. In fact, it was so consistently applied that we did not even have to refer to the Neutrality Agreement because there were never any disputes.

9. When preparing this lawsuit, I advised 1199 counsel that we had a Neutrality Agreement and that it had been historically honored by Rite Aid, but we could not find a copy of the document in the 1199 contract file. On Thursday, June 14th, Eugene Eisner, Esq., an 1199 attorney who had participated in Rite Aid negotiations, checked his files and found the copy of the Neutrality Agreement attached as Exhibit A.

10. The Neutrality Agreement, and the After Acquired Clause, were two provisions which were the result of explicit and extensive bargaining. Economic concessions were made by 1199 to obtain them and, as mentioned above, the parties have routinely applied them without contention or rancor until the dispute now before this Court.

                                                             _____
                                                                 Laurianne D. Vallone

Sworn to before me this
15th day of June, 2007

_____
        Notary Public

DAVID M. SLUTSKY
Notary Public, State of New York
No. 02SL6046167
Qualified in New York County
Commission Expires 09/18/20__

**EXHIBIT A**

# AGREEMENT

Rite Aid Corporation ("Rite Aid") and 1199 NHHSEU, SEIU, AFL-CIO enter into this Agreement regarding neutrality and union access to those Rite Aid stores which are currently non-union ("the Non-union Stores"), and the process by which 1199 may obtain status as collective bargaining representative of the employees in the Non-union stores.

## PURPOSE

1. The parties hereby establish the following procedure for the purpose of ensuring an orderly environment for the exercise by the Employer's employees of their rights under Section 7 of the National Labor Relations Act, and to avoid picketing or other economic action directed at the Employer for organizational reasons.

2. The parties mutually recognize that the national labor law guarantees employees the right to form or select labor organizations to act as the employees' exclusive representatives for the purpose of collective bargaining with Employers, or to refrain from such activity.

## REPRESENTATION (REGIONAL BARGAINING UNIT)

3. Rite Aid will recognize the Union as the collective bargaining representative for its employees in the following counties and cities:

   A. New York State:
      Putnam County, Orange County, Dutchess County, Ulster County, Sullivan County, and the city of Albany.

   B. New Jersey:
      the counties of Passaic, Bergen, Essex, Union, Hudson, and the cities of Edison, PerthAmboy, Carteret, and Woodbridge in Middlesex County.

4. All new stores Rite Aid opens in the above counties and areas shall be part of the bargaining unit.

## BARGAINING UNITS POSITIONS

5. The New York bargaining unit shall consist of all non-supervisory professional and non-professional employees. The New Jersey bargaining unit shall consist of all non-professional employees.

## RECOGNITION

6. Rite Aid agrees that at all unorganized stores, representatives of 1199 shall be permitted to meet with employees (in job classifications covered by the collective bargaining agreements between Rite Aid and 1199) on store premises for the purpose of allowing 1199 to explain to employees the potential benefits of union representation. Each such meeting shall last no longer than sixty (60) minutes. Upon request, Rite Aid will furnish to the Union the names, addresses, telephone numbers, dates of hire and classifications of all employees in the store. The information will be provided within 72 hours of the request.

7. At such meetings, representatives of 1199 will be introduced by a Rite Aid representative, who will read a statement which has been mutually agreed upon by Rite Aid and the Union. Such Rite Aid representative will then leave the room and allow representatives of 1199 to meet with the employees and solicit authorization cards. No Rite Aid management employee will be present during such meetings. 1199 agrees that any solicitation of authorization cards will not be coercive or involve threats of any kind, and will comply in all respects with the limitations of the National Labor Relations Act.

8. Rite Aid further agrees that it and its managers and supervisors shall remain entirely neutral with respect to unionization and 1199 as the union seeking to represent its employees. 1199 will not disparage Rite Aid or its management in the course of these efforts.

9. Rite Aid and 1199 agree that any authorization cards obtained by 1199 from employees in the Non-union Stores shall be checked against a list of employees in the Non-union Stores as of the last payroll period prior to the scheduled store visit (#9 - #10 above) by an arbitrator mutually agreed upon by the parties. Rite Aid will provide the arbitrator with such list. The arbitrator will have the authority to decide any disputed matters between the parties with respect to the vote count or the application of this agreement, and to fashion appropriate remedies. His decisions shall be final and binding and the parties agree that they will not use the NLRB to resolve issues delegated herein to the arbitrator.

10. Subject to the other conditions described in this Letter of Understanding, if the arbitrator certifies in writing that 1199 has obtained cards from a majority of the employees in a Non-union Stores, Rite Aid agrees to recognize 1199 as the collective bargaining representatives of the employees in the Non-union Stores as part of the regional bargaining unit for that region and to apply the terms and conditions of the collective bargaining agreements which have been negotiated between Rite Aid and 1199 in that region.

11. Provided the above terms are complied with, 1199 will not strike, picket or boycott for recognition at any Rite Aid location in connection with its organizing efforts.

JUN-14-2007 THU 04:34 PM Law offices FAX NO. 2124738705 P. 05
Case 1:07-cv-04816-GBD   Document 23   Filed 06/18/2007   Page 7 of 12

JUL-01-98 WED 01:17 PM    RITE AID HR DEPT         FAX NO. 717 731 3860           P. 05

## REGIONAL BARGAINING

12. The contracts between Rite Aid and 1199 covering each of the various regional bargaining units will take into account other Collective Bargaining Agreements and Rite Aid contracts within the region, as well as local economic standards.

## INTRA-UNIT TRANSFERS

13. a. Based upon seniority in the regional bargaining unit, employees at stores within a regional shall have the right to transfer into vacant positions in other stores within their region. They shall also have the right to apply for promotions to vacant positions in other stores, where there is not a qualified employee within the store where the promotional vacancy exists. In the case of employees bidding for promotion, seniority and the ability to do the work shall prevail, if all other qualifications are equal. Said transfer will not be unreasonably withheld by Rite Aid.

b. In the event Rite Aid opens a new stores, it shall give thirty days advance notice to 1199 of such planning opening. It shall also advise the Union of the classifications to be filled in the new store. These openings will be posted in all other stores in that Region and employees in the Regional Bargaining Unit shall be entitled to transfer to positions in their classifications in the newly opened stores. Where more than one unit employee applies for a position the employee with the ability to do the work and the greatest seniority shall be transferred. The employees of the newly opened store will be included in that Regional Bargaining Unit and covered by the collective bargaining agreement between Rite Aid and 1199 in effect in that region. Such transfer will not be unreasonably withheld by Rite Aid.

Dated: June 29, 1998

_____         _____
1199 NHHSEU, SEIU, AFL-CIO               RITE AID CORPORATION

_____

**EXHIBIT B**

Case 1:07-cv-04816-GBD   Document 23   Filed 06/18/2007   Page 8 of 12

**EXHIBIT B**

PAGE    2
                    35TH STORY of Level 1 printed in FULL format.

                    Copyright 1998 The New York Times Company
                                The New York Times


              September 16, 1998, Wednesday, Late Edition - Final

SECTION: Section B; Page 3; Column 1; Metropolitan Desk

LENGTH: 570 words

HEADLINE: Union Will Steer Members to Rite Aid in Return for Promise Not to
Fight Organizing Drives

BYLINE:  By STEVEN GREENHOUSE

BODY:
   New York City's largest union will announce an unusual agreement today with
the Rite Aid pharmacy chain in which the union's health-care plan will steer
tens of millions of dollars in business to Rite Aid and other unionized drug
stores.

   In return, Rite Aid Corporation has promised not to fight organizing drives
by the union, 1199, the National Health and Human Service Employees Union, as
1199 sets out to unionize dozens more Rite Aid stores in the New York area.

    Officials of 1199, which represents 150,000 health-care workers, have
wrestled with the question of whether the union was undermining unionized
pharmacies by having the union's health plan pay for purchases at nonunion
pharmacies.

   The agreement calls for 1199's health plan to pay for pharmaceutical
purchases only at unionized stores, including not just Rite Aid, but also
Pathmark Stores' pharmaceutical departments, Rock Bottom and 250 independent
drug stores.

   Dennis Rivera, 1199's president, said the agreement would be a boon for
unionized pharmacies because 1199's health plan covers 400,000 people
and spends
close to $60 million a year on prescription drugs.

   Mr. Rivera said, "The bottom line is we expect to get 4,000 new members in
the next six months through this arrangement, and Rite Aid will get
close to $40
to $50 million worth of pharmaceutical business."

   Under the plan, Rite Aid would recognize 1199 as the collective bargaining
agent at additional pharmacies once more than half of a drug store's employees
signed cards showing they wanted to join 1199. In recent years, unions have
increasingly sought recognition through such card checks rather than through
bitter, prolonged and expensive election battles.

   To put labor's financial muscle behind unionized pharmacies, Mr. Rivera
said
he planned to start a nationwide campaign to urge other unions and union health
plans to steer all their drug purchases to unionized stores.

{Worldox Files\1199\001\01\07036808.DOC}

PAGE    3
                    The New York Times, September 16, 1998

   The arrangement calls for a Rite Aid subsidiary, Eagle Managed Care, to run the drug reimbursement program for 1199's health plan.

   Martin L. Grass, Rite Aid's chief executive, said in an interview: "The benefit is we expect to get more value because currently 1199 members can go to any drug store in the New York metropolitan area. It didn't seem to make sense to Dennis or to us to let union members go to any store when they're patronizing
nonunion stores."

   Rite Aid, with 3,900 stores nationwide, is opening 10 new stores each week, and Mr. Rivera said he hoped to capitalize on this expansion by organizing all the new stores in the New York area. The union already represents about 2,500 workers at the nearly 200 Rite Aid stores in New York City, Nassau and Suffolk Counties and the Hudson Valley.

   Officials at 1199 said that over the next year, they hoped to unionize at least 100 more Rite Aid stores upstate and in New Jersey. Mr. Rivera said 1199 might urge its parent union, the Service Employees International
Union, to reach
similar agreements with Rite Aid in other states.

   One goal of the agreement is to encourage nonunion drug stores to put up less
resistance to unionization.

   Under the arrangement, the drug purchasing card provided by 1199's health plan will be coded in such a way that it will not pay for purchases at nonunion drug stores. Union officials said exceptions would be made for union members who
do not live near a unionized pharmacy.

LANGUAGE: ENGLISH

LOAD-DATE: September 16, 1998

```
****------------------------------------------------------------------
****
*     4 PAGES                64 LINES                JOB  20606
103G6X           *
*   1:06 P.M. STARTED    1:06 P.M. ENDED                 03/28/00
*
****------------------------------------------------------------------
****
****------------------------------------------------------------------
****
*                         EEEEE      N   N      DDDD
*
*                         E          N   N      D   D
*
*                         E          NN  N      D   D
*
*                         EEE        N N N      D   D
*
*                         E          N  NN      D   D
*
*                         E          N   N      D   D
*
*                         EEEEE      N   N      DDDD
*

****------------------------------------------------------------------
****

****------------------------------------------------------------------
****
```

```
SEND TO: RUDOLPH, JEANNINE
         LABOR RESEARCH ASSOC.
         145 W 28TH ST FL 6R
         NEW YORK, NEW YORK 10001-6114
```

{Worldox Files\1199\001\01\07036808.DOC}