UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

1199SEIU, UNITED HEALTHCARE
WORKERS EAST,

                Plaintiff,

v.                                                                 07-Civ.-4816

RITE AID CORPORATION, *et al.*,

                Defendants.

------------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF DEFENDANT RITE AID CORPORATION'S MOTION TO STAY ARBITRATION PROCEEDINGS

**I.    INTRODUCTION**

In spite of the fact that there are two Motions to Dismiss the Complaint in this case pending before the Court (D.I. 11-13 & D.I. 14-16), and the basis for its claims have been called into question by this very Court, 1199SEIU, United Healthcare Workers East ("Union") continues to press forward with the arbitration proceedings before the American Arbitration Association ("AAA"). If the Union is permitted to proceed with its arbitration, Defendant Rite Aid Corporation ("Rite Aid") and its 3,500 new associates upon whom the Union seeks to impose membership will suffer substantial prejudice.

Rite Aid respectfully requests that this Court stay all AAA proceedings until it rules upon the pending Motions to Dismiss Complaint and the underlying claims of the lawsuit (D.I. 11-13 & D.I. 14-16).

The Union's claims are not arbitrable. Rite Aid not only contends the Union's efforts to

pursue arbitration are illegal, it has filed with the National Labor Relations Board ("NLRB") Unfair Labor Practice Charges against the Union related to its arbitration demand. The NRLB should have the first opportunity to decide whether the arbitration is permissible, and a stay will enable that to occur.

Further, as this Court has already noted, the Union's claims are not covered by any existing collective bargaining agreement. Therefore, there is no basis upon which an arbitrator can assume jurisdiction over the Union's claims.

## II.     STATEMENT OF FACTS

Rite Aid incorporates its Statement of Undisputed Facts from the Memorandum of Law in Support of its Motion to Dismiss Complaint into this pleading.[1]

Key relevant facts are the following:

- On May 31, 2007, the Union filed a demand for arbitration with the AAA titled "Failing to apply contract to newly acquired stores and enjoining anti-Union campaigns." D.I. 15, Rite Aid Memo ¶ 2.

- In that demand, the Union referenced the "Coverage" provision of the current collective bargaining agreement between the parties and sought a declaratory award interpreting that clause. D.I. 1, Affidavit of Laurianne D. Vallone ¶¶ 11, 47, Exs. 1-3, 12;[2] D.I. 15, Rite Aid Memo, Ex. A.

- On June 1, 2007, AAA issued a letter to the parties confirming the Union initiation of the arbitration, enclosing a list of arbitrators, and seeking a response. Third Declaration of Hansen ¶ 3, Ex. 1 attached hereto as Ex. A.

---

[1] References to Rite Aid's Memorandum of Law in Support of its Motion to Dismiss Complaint are herein referred to as "D.I. 15, Rite Aid Memo at ¶ ___."
[2] The Union also submitted a Demand for Arbitration to Rite Aid on the same day, in which it asserted that the "dispute is clearly encompassed under the Grievance and Arbitration provision [of the CBA]." D.I. 1, Affidavit of Laurianne D. Vallone ¶ 48, Ex. 13.

2

- On June 5, 2007, Rite Aid responded to the Union that its demand for arbitration was illegal and inappropriate, and it also filed charges with the NLRB in which it alleged that the arbitration demand was illegal. The NLRB is presently investigating the allegations. D.I. 7, Ex. B, Declaration of Niels Hansen ¶¶ 13, 14 and 16.

- On June 6, 2007, the Union filed the instant two count lawsuit in which it sought (1) a declaration that the dispute is arbitrable; and (2) an order that Rite Aid cease and desist "from its Union Avoidance Campaign and other conduct which serves to frustrate 1199's ability to enforce Article I of the CBA as it applies to newly acquired stores." D.I. 1, Complaint ¶¶ 26-30.

- On June 11, 2007, Rite Aid advised AAA, "…that Rite Aid believes that the Union demand to arbitrate this case is not proper and not arbitrable," and reserved its rights by striking the panel of potential arbitrators. Ex. A, Third Declaration of Hansen ¶ 4, Ex. 2.

- On June 15, 2007, Rite Aid filed a Motion to Dismiss all counts of the instant lawsuit. D.I. 14-16.

- On June 18, 2007, the Union submitted the Supplemental Affidavit of Laurianne D. Vallone in Support of Plaintiff 1199's Motion for an Injunction, asserting for the first time that in June 1998 the Union had negotiated a neutrality agreement with Rite Aid. The Union included an agreement dated June 29, 1998, which the Union claims is a current neutrality agreement and forms a basis for part of its demand for arbitration. D.I. 23, Supplemental Affidavit of Laurianne D. Vallone in Support of Plaintiff 1199's Motion for an Injunction ¶ 4, Ex. A.

- On June 19, 2007, Rite Aid submitted the Second Declaration of Niels Hansen which contained correspondence from the Union enclosing a series of documents, including (1)

3

the June 29, 1998 agreement submitted to the Court by the Union; (2) a cover sheet to that document evidencing a completion date of October 31, 1998, which was omitted by the Union; and (3) other documents, including an arbitrator's certification that the employees subject to the June 29, 1998 agreement were represented by the Union. D.I. 25, Second Declaration of Hansen ¶ 4-5, Ex. A.

- By letter dated June 21, 2007, AAA invited comments from the Union with respect to Rite Aid's June 11, 2007 correspondence. Ex. A, Third Declaration of Hansen ¶ 5, Ex. 3.

- The Union, through counsel, responded to AAA by letter dated June 21, 2007, and claimed that Rite Aid's assertion that the matter was not arbitrable was "incorrect," and sought that an arbitrator "be immediately designated and a hearing scheduled." Ex. A, Third Declaration of Hansen ¶ 6, Ex. 4.

- The next day, June 22, 2007, AAA notified the parties that it had "carefully reviewed the contentions and positions of the parties…," and that "…in the absence of an agreement by the parties or a court order staying this matter… [AAA] will proceed with its further administration." Ex. A, Third Declaration of Hansen ¶ 7, Ex. 5.

- The same day, AAA sent the parties an "Administrative Appointment List" of five (5) names, requesting that the parties rank the names by June 29, 2007. Attached hereto as Ex. B.

- On June 28, 2007, the Union filed a Stipulation and Order seeking an additional two (2) weeks (July 13, 2007) to respond to Rite Aid's Motion to Dismiss, and allowing Rite Aid two (2) weeks (July 27, 2007) thereafter to reply.

- On June 29, 2007, Rite Aid notified the AAA that it was filing the instant Motion

4

to Stay Arbitration Proceedings, reasserting its arguments that the Union's demand to arbitrate the case is not proper and not arbitrable. In reservation of its rights, and to ensure that the Union did not seek an *ex parte* arbitration, Rite Aid ranked the arbitrators. Ex. A, Third Declaration of Hansen ¶ 9, Ex. 7.

## III. ARGUMENT

### A. Absent a stay of the arbitration, Rite Aid will suffer irreparable harm because it will be forced to process an arbitration that is illegal.

The goal of the Union's arbitration claim is to require Rite Aid to automatically apply the terms of the CBA to the former Brooks and Eckerd store associates, forcing union membership upon them, and in furtherance of that end, to stop Rite Aid from communicating with its employees about the Union. That is illegal. For that reason, Rite Aid filed charges with the NLRB, and moved to dismiss the Union's suit. It has set forth in detail its legal position in the Rite Aid Memo. The fundamental issue before the Court has not yet been fully briefed for decision, and has not been resolved at this point by the NLRB.[3]

To allow the arbitration to proceed at this point will deny Rite Aid and its associates basic rights and protections of the law. Moreover, it will cause them to suffer irreparable harm through the expenditure of time and resources to arbitrate something that is illegal, and that they never intended to arbitrate. To force a party to arbitrate a matter not properly subject to arbitration constitutes "per se irreparable harm." Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365, 975 F.Supp. 445, 446-47 (E.D.N.Y. 1997)(citing Spear, Leeds & Kellogg v. Central Life Assurance Co., 879 F.Supp. 403, 404 (S.D.N.Y. 1995),

---

[3] The Union's Opposition to Defendants' Motion to Dismiss was originally due on June 29, but Union counsel sought a stipulation to extend time for the Union to file its Opposition until July 13. Surely if the Union felt that this matter required an expedited resolution, it would not have sought a stipulation for additional time. Thus, any claim that the Union may make that it would be prejudiced by a stay of AAA's proceeding pending the Court's decision is undermined by the Union's very actions to delay that decision.

5

*rev'd on other grounds*, 85 F.3d 21 (2d Cir. 1996)). "'[T]he time and resources [a party] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages.'" Tellium, Inc. v. Corning Inc., 2004 WL 307238, at *3, (S.D.N.Y. Feb. 13, 2004)(No. 03 CIV. 8487(NRB))(quoting Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985 (2d Cir. 1997)). A stay pending resolution of the underlying issues in this lawsuit will prevent such harm to both Rite Aid and the associates at the former Brooks and Eckerd stores.

  **B. AAA requires an order of the Court to stay the proceeding before it will suspend further administration of the case.**

AAA continues to process the case over Rite Aid's objections because, in its view, "[t]he Union has met the filing requirements of the rules by filing of a demand for arbitration." Ex. A, Third Declaration of Hansen ¶ 10, Ex. 5. AAA has indicated it will cease further processing if stayed by order of the Court, or agreement of the parties. Id. The Union has already told AAA it wants to proceed. Rite Aid will be irreparably harmed if it is required to arbitrate the matter pending resolution of the dispute before the Court. A stay is the only available remedy to Rite Aid pending disposition of the instant suit.

  **C. A stay of the AAA proceedings is necessary because there is no current agreement that requires Rite Aid to maintain neutrality with respect to the Union's organizational efforts.**

In addition to the illegal nature of the arbitration, the Union also contends there is an ongoing neutrality agreement that applies to the former Brooks and Eckerd stores. As described in prior pleadings filed by Rite Aid, there is nothing in the "Coverage" language of the CBA, or anywhere else in that document, that imposes a neutrality obligation on Rite Aid with respect to new stores. See D.I. 15, Rite Aid Memo. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" Mount

6

Ararat Cemetery, 975 F.Supp. at 446 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). In exercising its duty to determine whether the parties agreed to arbitrate a dispute, a court cannot refuse to interpret a provision of a collective bargaining agreement. See, Litton Fin. Printing Div. v. NLRB, 501 U.S. 190 (1991); See also, Stevens Const. Corp. v. Chicago Reg. Council of Carpenters, 464 F.3d 682, 686-87 (7th Cir. 2006).

It is the Court that decides whether an issue is arbitrable, not the arbitrator, and where nothing in the agreement can be construed to cover the dispute, it will not be deemed arbitrable. Local 807, Int'l Broth. of Teamsters v. Brink's Inc. *et. al.*, 744 F.2d 283, 286-87 (2d Cir. 1984); *cited with approval in* Hotel & Rest. Employees Union, Local 217 v. J.P. Morgan Hotel, 996 F.2d 561, 565 (2d Cir. 1993); See also, Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206, 682 F.2d 301, 303-04 (2d Cir. 1982); Congreso de Uniones Industriales de Puerto Rico v. V.C.S. National Packing Co., Inc., 756 F.Supp. 69, 73-74 (D.P.R. 1991). There is no language in the CBA which expresses or implies the existence of an agreement by Rite Aid to remain neutral with respect to Union efforts to organize employees in newly acquired stores.

    1.    **A stay is appropriate because the Union's proffer of the 1998 agreement as proof of an ongoing neutrality obligation is not supported by the agreement's terms or related Union documents.**

The last minute "discovery" of an expired 1998 agreement does not render the dispute arbitrable.[4] Even assuming, *arguendo*, that the expired agreement was part of the CBA, it is well-settled law that grievances that arise after the expiration of a collective bargaining agreement are not arbitrable unless they involve facts or occurrences that arose before expiration,

---

[4] A partial copy of this document appears in the D.I. 23, Supplemental Affidavit of Laurianne D. Vallone in Support of Plaintiff 1199's Motion for an Injunction ¶ 4, Ex. A ("1998 agreement").

7

where an action taken after expiration infringes on a vested or accrued right, or where the disputed right survives expiration under the normal principles of contract interpretation. Mount Ararat Cemetery, 975 F.Supp. at 447 (citing Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205-06 (1991)). See also, Nolde Bros., Inc. v. Local 358, Bakery & Confectionary Workers Union, 430 U.S. 243, 253-55 (1977); Williamsbridge Manor Nursing Home v. Local 144 Division of 1199, National Health and Human Services Employers Union, 107 F.Supp.2d 222, 225 (S.D.N.Y. 2000). None of those situations exist here.

The 1998 agreement expired October 31, 1998. D.I. 25, Second Declaration of Hansen ¶ 3, Ex. A.[5] The cover sheet was signed on the same day by the same individuals as the 1998 agreement. It required that (1) the recognition process; and (2) the terms and conditions of the collective bargaining agreement to be negotiated "shall be completed by October 31, 1998." Id.

The 1998 agreement by its expired terms covered only stores that existed and were non-union at the time the agreement was signed. The operative language covers only "those Rite Aid stores which are currently non-union ("the Non-union Stores") and the process by which 1199 may obtain status as collective bargaining representative of the employees in the Non-union stores." D.I. 25, Second Declaration of Hansen ¶ 3, Ex. A. (*emphasis added*). There is no reference to stores Rite Aid would acquire in the future, and the unambiguous use of the term "currently" precludes such an expansion.

The narrow limitations of the 1998 agreement are further evidenced by the fact that it outlined a comprehensive recognition process – not just neutrality. Id. While the process included neutrality, it was not so limited. The 1998 agreement also referenced other key rights

---

[5] It is important to note that Hansen received the 1998 agreement by letter dated April 5, 2007 from Union Executive Vice President, Michael Rifkin in an unrelated effort by the Union to obtain recognition for pharmacists in New Jersey. Not only does the existence of this recent correspondence from the Union demonstrate that the 1998 agreement does not reflect what the Union says it does, but it calls into question the timing of the Union's "discovery" of that document.

8

including access, card check procedure, and recognitional picketing among other things. Id.

The terms of the 1998 agreement were completely fulfilled by October 13, 1998. By that date, the Union had everything it wanted. It got a Certification of Representative from Arbitrator Hezekiah Brown designating the Union as the exclusive bargaining representative for <u>all of the new Rite Aid stores that existed in the counties and cities specified by the 1998 agreement</u>.[6] D.I. 25, Second Declaration of Hansen ¶ 3, Ex. A. Two days earlier, on October 11, 1998, the Union also got its collective bargaining agreement. D.I. 1, Affidavit of Laurianne D. Vallone ¶ 11, Ex. 1. In short, there was nothing more for the Union to achieve from the Rite Aid stores that were "currently non-union" because they became union on October 13.

Finally, the CBA involved stores outside the geographic coverage of the 1998 contract. A comparison of the geographic jurisdictions of the two agreements is telling and confirms that the scope of the 1998 agreement was discrete and finite in terms of time and geography. Compare Figure 1 (the CBA geographic coverage) with Figure 2 (the 1998 agreement coverage), attached hereto as Exhibit C. Once that time period passed, and those people became represented by the Union, the agreement ended because it was fully performed.

The Union did not need more time to organize "currently Non-union" stores after October 31, 1998, because it achieved its goal of securing recognition in all of them <u>and</u> it had a contract. Not only did the agreement expire on October 31, 1998, but it concluded as the result of complete performance.

### 2. A stay is justified by the Union's shifting theories of liability which belie its contention that there is a valid basis for the arbitration.

To date, the Union has taken three separate, distinct, and, on their face, inconsistent

---

[6] The counties and cities contained in the 1998 agreement and the arbitrator's Certification of Representative are identical. Those in New York included Putnam, Orange, Dutchess, Ulster, Sullivan and the City of Albany. Those in New Jersey included Passiac, Bergen, Essex, Union, Hudson, and the cities of Edison, Perth Amboy, Carteret, and Woodbridge in Middlesex County. D.I. 25, Second Declaration of Hansen ¶ 3, Ex. A.

9

positions with respect to the 2007 Rite Aid acquisition of Brooks and Eckerd stores. The inconsistency of the Union's arguments is significant.

First, the Union asserted that Rite Aid was to automatically apply the contract to the Brooks and Eckerd stores irrespective of the associates' wishes. D.I. 1, Affidavit of Laurianne D. Vallone ¶ 46, Ex. 11. Then, the Union claimed that the origin of the neutrality provision was derived from the "Coverage" clause of the CBA through the covenant of good faith and fair dealing. D.I. 1, Plaintiff 1199's Memorandum of Law In Support of its Motion Preliminary Injunction in Aid of Arbitration pp. 9-10. Finally, the Union "discovered" and produced part of a document it sent to Rite Aid a mere 2 months earlier, claiming that it contained the required neutrality clause. D.I. 23, Supplemental Affidavit of Laurianne D. Vallone in Support of Plaintiff 1199's Motion for an Injunction at ¶ 4, Ex. A. The Union's shifting theories raise questions about the strength and sincerity of its legal position. A stay pending resolution of the instant suit is appropriate to enable the Court to sort through these inconsistencies and dispose of the case before anyone is required to arbitrate.

> 3. **A stay is appropriate because the Union is using an arbitration clause in one agreement as the basis to arbitrate a dispute arising under another which has expired.**

The Union's lawsuit, and its demand for arbitration pending before AAA, are predicated upon Article 31 of the CBA. D.I. 1, Affidavit of Laurianne D. Vallone ¶ 48, Ex. 13. That article cannot apply to the 1998 agreement, or any portion thereof, because the 1998 agreement had its own arbitration clause to cover disputes that arose thereunder. Paragraph 9 of the 1998 agreement stated, "[t]he arbitrator will have the authority to decide any disputed matters between the parties with respect to the vote count or the application of this agreement, and to fashion appropriate remedies." D.I. 25, Second Declaration of Hansen ¶ 3, Ex. A.

10

As described above, the 1998 agreement is no longer in effect and its arbitration language is no longer available to resolve a dispute arising almost 10 years later. The Union can point to nothing in the 1998 agreement to evidence that any of the benefits under that agreement survive its expiration including a right to arbitrate. This failure is fatal to the Union's claim because it cannot invoke an arbitration clause in a contract that is no longer in effect either in fact or by implication. <u>Williamsbridge Manor Nursing Home v. Local 144 Division of 1199, National Health and Human Services Employers Union</u>, 107 F.Supp.2d 222, 225 (S.D.N.Y. 2000).

## IV. Conclusion

Based upon the foregoing, Rite Aid has asserted a sufficient basis to warrant a stay of the underlying arbitration proceedings until such time as this Court disposes of the instant suit. Rite Aid therefore asks that this Court grant its Motion to Stay Arbitration Proceeding pending resolution of the underlying lawsuit.

Dated: June 29, 2007
New York, New York

Respectfully submitted,

MILES & STOCKBRIDGE P.C.

By: _____
Stephen M. Silvestri (Admitted *Pro Hac Vice*)
Stefan J. Marculewicz (Admitted *Pro Hac Vice*)
Laura Pierson-Scheinberg (Admitted *Pro Hac Vice*)
10 Light Street
Baltimore, MD 21202
Telephone: (410) 727-6464
Facsimile: (410) 385-3700

- and -

Scott Gilly
THOMPSON WIGDOR & GILLY LLP
The Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001
E-mail: sgilly@twglawyers.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendants' Memorandum in Support of Defendant Rite Aid Corporation's Motion to Stay Arbitration Proceedings, and Third Declaration of Niels Hansen, were electronically filed and served on this 29th day of June 2007, upon the following counsel for Plaintiff:

Allyson L. Belovin, Esq.
Levy Ratner, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011

_____
Laura A. Pierson-Scheinberg, Esq.

12