# EXHIBIT A
# Part 2

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

1199SEIU, UNITED HEALTHCARE                :
WORKERS EAST,                              :        07 Civ. _____
                                           :
                        Plaintiff,         :        VERIFIED COMPLAINT
                                           :
            -against-                      :
                                           :
RITE AID CORPORATION and                   :
THE JEAN COUTU GROUP (PJC), INC.,          :
THE JEAN COUTU GROUP USA, INC.,            :
d/b/a BROOKS ECKERD DRUG STORES            :
                                           :
                        Defendants.        :

----------------------------------------------------------------X

        Plaintiff 1199SEIU United Healthcare Workers East, affiliated with the Service

Employees International Union ("1199" or "Union"), by its undersigned attorneys, Levy

Ratner, P.C. for its Complaint against Rite Aid Corporation and Eckerd/Brooks

(collectively referred to as "Defendants") alleges:

## NATURE OF THE ACTION

        1.      This is an action to for a preliminary injunction in aid of arbitration under

the collective bargaining agreement between 1199 and Defendant Rite Aid Corporation

("Rite Aid") of an arbitrable dispute. The dispute involves Rite Aid's threatened refusal

to apply the terms of the parties' collective bargaining agreement to drug stores acquired

by Rite Aid pursuant to an anticipated merger between Rite Aid and Defendant The Jean

Coutu Group (PJC), Inc. ("Coutu Inc."), and Defendants' union avoidance campaign

directed towards employees at those stores. 1199 asks the Court in this proceeding to

enjoin Defendants from engaging in their union avoidance campaign until such time as

the arbitration procedure is concluded and it is determined whether Defendant Rite Aid's

{Worldox Files\1199\123\04\07035137.DOC}

threatened refusal apply the collective bargaining agreement to newly acquired stores, and Defendants' union avoidance campaign, violates the parties' collective bargaining agreement. Injunctive relief to preserve the status quo is necessary to preserve the integrity of the arbitration process and prevent that process from becoming a futile and hollow formality.

### JURISDICTION AND VENUE

2.     This Court has federal question jurisdiction based upon Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. This action is properly before this Court pursuant to LMRA §301(c), which permits lawsuits by a labor organization in the district of its principal place of business.

### PARTIES

3.     Plaintiff 1199 is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §152(5), with its principal place of business at 310 West 43rd Street, New York, New York 10036. It is the collective bargaining representative for approximately 250,000 employees in New York and throughout the east coast of the United States, including approximately 6,500 pharmacists, pharmacy technicians, pharmacy interns, clerks, stock persons, shift supervisors, assistant managers and other employees employed by Defendant Rite Aid.

4.     Defendant Rite Aid is an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business at 30 Hunter Lane, Camp Hill, Pennsylvania.

5.     Defendant Rite Aid operates retail drug stores and pharmacies.

{Worldox Files\1199\123\04\07035137.DOC}                    2

7.    Defendant Coutu Inc. is an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business in Longueuil, Quebec, Canada.

8.    Defendant The Jean Coutu Group USA, Inc. d/b/a Brooks and Eckerd Drug Stores ("Coutu USA") is a subsidiary of Defendant Coutu Inc. and is an an employer within the meaning of NLRA §2(2), 29 U.S.C. §152(2), in an industry affecting commerce within the meaning of NLRA §2(7), 29 U.S.C. §152(7), with a principal place of business at 50 Service Avenue, Warwick RI 02886-1021.

9.    Defendant Coutu USA owns and operates approximately 1,850 Brooks Eckerd retail pharmacy stores ("Eckerd stores") in the Northeast and Mid-Atlantic regions of the United States.

### THE COLLECTIVE BARGAINING AGREEMENT

7.    Plaintiff and Defendant Rite Aid have been parties to a series of collective bargaining agreements, the most recent of which was effective for the period October 11, 1998 through October 10, 2002 ("CBA").

8.    The CBA has been extended, with certain modifications, by two (2) subsequent Memoranda of Agreement, the first effective for the period October 13, 2002 through October 14, 2006 ("2002 MOA") and the second effective for the period October 14, 2006 through October 14, 2010 ("2006 MOA").

9.    The CBA, as modified by the 2002 MOA and 2006 MOA sets forth the terms and conditions of employment for covered employees.

10.  Article 2 of the CBA provides that 1199 is the sole and exclusive representative of all professional and nonprofessional employees in the drug stores in the geographical area set forth in Article 1 ("Bargaining Unit").

11.  The CBA sets forth the negotiated terms and conditions of employment in the Bargaining unit, including, *inter* alia, wages (Article 5), negotiated hours of work (Article 7), vacations and holidays (Articles 8 and 9, respectively), seniority protection (Article 12), and health insurance and pension benefits (Articles 26 and 27, respectively). These terms and conditions have been extended, with certain modifications, by the 2002 MOA and 2006 MOA.

12.  CBA Article 1, Coverage, provides that

This Agreement shall be binding upon the Union, the Employer and its successors and assigns, but shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by Rite Aid Corporation (including, but not limited to those in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores), in the City of New York, and the New York Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and Rockland, and the City of Albany, and the New Jersey Counties of Passaic, Bergen, Essex, Hudson, and Union and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in Middlesex County, New Jersey, regardless of the name or whether the drug store is operated individually or as a partnership or corporation.

\*     \*     \*

The words "Employer" or Employers," as whenever used in this Agreement, and the pronouns, "he" and "his," used in connection therewith, are intended to apply to the Employer, Rite Aid Corporation, and to each drug store covered hereunder, whether operated by an individual, copartnership or corporation.

13.  CBA Article 1 was not modified by the 2002 MOA or the 2006 MOA.

14.    Article 31 of the CBA contains a broad grievance and arbitration procedure for the resolution of all disputes between 1199 and Defendant Rite Aid. It provides:

> All complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement (herein referred to as a "grievance" shall be adjusted pursuant to the terms and conditions of this grievance and arbitration procedure.

15.    Article 31's definition of "grievance" was not modified by the 2002 MOA or the 2006 MOA.

16.    The arbitration provision of Article 31, as modified by the 2006 MOA, permits the Union to refer unsettled grievances to arbitration before an Arbitrator designated by the American Arbitration Association.

## THE UNDERLYING ARBITRABLE DISPUTE

17.    Upon information and belief, Rite Aid and Coutu Inc. entered into a merger agreement pursuant to which Rite Aid will acquire, in full, all Eckerd stores, including those stores within the geographical area set forth in Article 1 of the CBA ("Merger Agreement").

18.    Upon information and belief, the Federal Trade Commission's approval of the Merger Agreement is currently pending.

19.    In or around April 2007, Rite Aid, in conjunction with the management of the to-be-acquired Eckerd and Brooks stores, launched a union avoidance campaign though which Defendants are evidencing open hostility towards the Union and are discouraging employees at the those stores from speaking with Union representatives, signing union authorization cards, communicating with their co-workers about theUnion

or otherwise demonstrating support for the Union ("Union Avoidance Campaign").

Defendants have also threatened reprisals against employees who support the Union.

Defendants' Union Avoidance Campaign is currently ongoing.

20.    On or about May 24, 2007, Defendant Rite Aid informed the Union that it

intends to apply a "union-free business model" to the Brooks stores it acquires pursuant

to the Merger Agreement.

21.    On or about May 31, 2007 the Union filed a demand for arbitration

seeking, *inter alia,* a declaratory ruling from an arbitrator that Defendant Rite Aid's

stated intention to keep the acquired Eckerd stores "union free" is a violation of Article 1

of the CBA and a ruling that Defendants' concerted Union Avoidance Campaign violates

the implied covenant of good faith and fair dealing in the CBA because it frustrates the

Union's ability to enforce Article 1 as to those newly acquired stores.

22.    On or about May 31, 2007, the Union sent a letter to Defendant Ride Aid

enclosing a copy of its demand for arbitration and requesting that Rite Aid consent to

expedited arbitration of this dispute.

23.    To date, Rite Aid has not agreed to expedited arbitration.

24.    1199 has filed this action for relief in aid of the duly demanded arbitration

to preserve the *status quo* and the arbitrator's power to remedy the claimed breach by

directing that Defendants cease engaging in the Union Avoidance Campaign.

25.    If Defendants' Union Avoidance Campaign continues pending an

arbitrator's award, 1199 will be irreparably harmed by its inability to enforce Article 1 of

the CBA ("Coverage") with respect to the to-be-acquired Eckerd stores and the

employees at those stores will be irreparably harmed by being denied Union representation and contractual benefits to which they are entitled.

## AS AND FOR A FIRST CAUSE OF ACTION

26.    1199 repeats and realleges each and every allegation contained in paragraphs numbered 1 though 25 hereof with the same force and effect as if again set froth herein at length.

27.    The dispute between 1199 and Rite Aid is arbitrable under their Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION

28.    1199 repeats and realleges each and every allegation contained in paragraphs numbered 1 though 27 hereof with the same force and effect as if again set forth herein at length.

29.    The arbitration remedy which 1199 seeks would include an Award requiring Defendants to cease and desist from its Union Avoidance Campaign and other conduct which serves to frustrate 1199's ability to enforce Article 1 of the CBA as it applies to newly acquired stores

30.    As the continuation of Defendants' Union Avoidance Campaign pending the conclusion of the arbitration process will irreparably harm the Union, its Bargaining Unit, and the employees at the Eckerd stores, such that an arbitrator will not be able to issue an adequate remedy, the Court should enjoin Defendants' Union Avoidance Campaign pending the completion of the underlying arbitration to preserve the integrity of Article 31, Grievance and Arbitration, and protect against an unremediable breach of Article 1, Coverage.

{Worldox Files\1199\123\04\07035137.DOC}                7

## PRAYER FOR RELIF

WHEREFORE, Plaintiff requests that this Court (1) enter an order prohibiting Defendants from continuing their Union Avoidance Campaign and further prohibiting Defendants from engaging in other conduct which would frustrate the Union's ability to enforce the CBA, including the After-Acquired Clause of Article 1, as applied to the to-be-acquired Eckerd stores within the geographical area set froth in Article 1 pending an arbitrator's decision that doing so is permissible under the CBA and (2) granting such other and further relief as this Court deems necessary and proper.


Dated: New York, New York
       June 6, 2007

Respectfully submitted,

Allyson D. Belovin (AB 3702)
LEVY RATNER, P.C.
Attorneys for Plaintiff
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100 (phone)
(212) 627-8182 (fax)
abelovin@lrbpc.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

1199SEIU, UNITED HEALTHCARE : 
WORKERS EAST,                                    :          07 Civ. _____
                                                          :
                                      Plaintiff,          :          VERIFICATION
                                                          :
                          -against-                       :
                                                          :
RITE AID CORPORATION and                  :
THE JEAN COTU GROUP (PJC), INC.,       :
THE JEAN COUTU GROUP USA, INC.,      :
d/b/a BROOKS ECKERD DRUG STORES     :
                                                          :
                                      Defendants.      :

-----------------------------------------------------------------X

STATE OF NEW YORK          )
                                            )  ss.:
COUNTY OF NEW YORK   )

        LAURIE VALLONE, being duly sworn, deposes and says that she has read the

foregoing Complaint and knows the contents thereof and that the same are true of her own

knowledge except as to those matters therein stated to be alleged on information and belief and

as to those matters she believes them to be true.


                                      _____
                                         Laurie Vallone

Sworn to before me this
_____day of June, 2007

_____
     Notary Public

                         ALLYSON L. BELOVIN
               Notary Public, State Of New York
                    No. 02BE6023223
               Qualified In New York County
           Commission Expires April 19, 20 11

{Worldox Files\1199\123\04\07035126.DOC}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

1199SEIU, UNITED HEALTHCARE
WORKERS EAST,,

                                                    Plaintiff,

                        -against-

RITE AID CORPORATION AND
THE JEAN COUTU GROUP (PJC), INC.,
THE JEAN COUTU GROUP USA, INC.,
D/B/A BROOKS ECKERD DRUG STORES,

                                                    Defendant.

## VERIFIED COMPLAINT

**LEVY RATNER, P.C.**
*Attorneys for Plaintiff*
*80 Eighth Avenue, 8th Floor*
*New York, N.Y. 10011-5126*
*(212) 627-8100*

*Due and timely service is hereby admitted.*

*New York, N.Y. ........................................, 20. . .*

*.......................................................................Esq.*

*Attorney for ........................................................*

# EXHIBIT 2

# LEVY RATNER, P.C.
### Attorneys at Law
### 80 Eighth Avenue
### New York, New York 10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein ◦
Gwynne A. Wilcox ▪
Pamela Jeffrey
Owen M. Rumelt ▪
Kevin Flanegan
Carl J. Levine
David Slutsky ▵
Allyson L. Belovin
Jennifer J. Middleton ◦

Suzanne Hepner ▪
Eugkiel D. Carder ◦
César F. Rosado ▵

Senior Counsel:
Richard Dorn
Paul Schachter ◦
Denise Reinhardt ▪

Counsel:
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz †

June 28, 2007

## BY FACSIMILE

Hon. George B. Daniels
United States District Court for the
    Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:    **1199SEIU United Healthcare Workers East v. Rite Aid Corp., et al.**
       **07 cv. 04816 (GBD)**

Dear Judge Daniels:

This firm represents 1199SEIU United Healthcare Workers East in the above captioned matter. We write to provide you a courtesy copy of a Stipulation and Order executed by the parties extending plaintiff's time to submit its Opposition to Defendants' Motion to Dismiss from June 29, 2007 to July 13, 2007, and extending Defendants' time to submit its Reply to Plaintiff's Opposition from July 13, 2007 to July 27, 2007. There have been no previous requests for adjournments or extensions in this matter. This joint Stipulation and Order has been electronically filed.

Please do not hesitate to contact me if you have any concerns regarding this matter.

Respectfully,

Allyson L. Belovin

Enclosure
cc:    Stephen M. Silvestri, Esq.
       Scott Browning Gilly, Esq.

{Worldox Files\1199\123\04\07038375.DOC}

◦ Admitted in NY, MA and DC   ▪ Admitted in NY, NJ and PA   ▪ Admitted in NY and DC   ▵ Admitted in NY and NJ   ◦ Admitted in NY and CA
▪ Admitted in NY and CT   ▵ Admitted in PR only   ▪ Admitted in NY, NJ and PR   ▪ Admitted in NJ only   † Admitted in NY and MA

Allyson L. Belovin (AB 3702)
LEVY RATNER, P.C.
Attorneys for Plaintiff
80 Eighth Avenue - 8th Floor
New York, New York 10011
(212) 627-8100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
1199SEIU, UNITED HEALTCHARE WORKERS
EAST,

                             Plaintiff,                    07 cv. 04816 (GBD)

         - against -                               STIPULATION AND ORDER
                                                   EXTENDING TIME TO SUBMIT
RITE AID CORPORATION and                           OPPOSITION AND REPLY TO
THE JEAN COUTU GROUP (PJC), INC.,                  DEFENDANTS' MOTION TO
THE JEAN COUTU GROUP USA, INC.,                    DISMISS
d/b/a BROOKS ECKERD DRUG STORES,

                             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## STIPULATION AND ORDER

         IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned

attorneys for plaintiff and defendants, that the plaintiff's time to submit its Opposition to

Defendants' Motion to Dismiss will be extended to July 13, 2007. Defendants' Reply to

Plaintiff's Opposition submission will be submitted by July 27, 2007.

///

///

///

///

///

{Worldox Files\1199\123\04\07037379.DOC}

Dated: New York, New York
        June 25, 2007

LEVY RATNER, P.C.

By: _Allyson L. Belovin_ (☞)
Allyson L. Belovin (AB 3702)
80 Eighth Avenue – 8ᵗʰ Floor
New York, New York 10011
(212) 627-8100
Attorneys for Plaintiff

MILES & STOCKBRIDGE, P.C.

By: _Stephen M. Silvestri_
Stephen M. Silvestri
10 Light Street
Baltimore, MD 21202
(410) 727-6464
Attorneys for Defendants, Rite Aid
Corporation, The Jean Coutu Group (PJC),
Inc., The Jean Coutu Group USA, Inc., d/b/a
Brooks Eckerd Drug Stores

SO ORDERED:

_____
        U.S.D.J.

{Worldox.Files\1199\123\04\07037379.DOC}          2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE                      :
WORKERS EAST,                                     :
                                                  :
                                  Plaintiff,      :
                                                  :     07 cv. 04816 (GBD)
             -against-                            :
                                                  :     <u>**NOTICE OF MOTION**</u>
RITE AID CORPORATION and                          :     <u>**AND PROPOSED ORDER**</u>
THE JEAN COUTU GROUP (PJC), INC.,                 :
THE JEAN COUTU GROUP USA, INC.,                   :
d/b/a BROOKS ECKERD DRUG STORES,                  :
                                                  :
                                  Defendants.     :
------------------------------------------------------------X

          PLEASE TAKE NOTICE that upon the accompanying Memorandum of

Law in Support of Defendant Rite Aid Corporation's Motion to Dismiss the Complaint,

dated June 15, 2007, Defendant Rite Aid Corporation will move this Court before the

Honorable George B. Daniels on a date to be set by the Court, in the United States

Courthouse, Southern District of New York, 500 Pearl Street, New York, New York, for

an Order pursuant to Rules 12(b) (1) and (6) of the Federal Rules of Civil Procedure

dismissing the Complaint in its entirety with prejudice and for such further relief as the

Court may deem just and proper.

Dated: June 15, 2007
     New York, New York

                      Respectfully submitted,

                      THOMPSON WIGDOR & GILLY LLP

                      By: _____
                             Scott B. Gilly (SG 6861)

                      The Empire State Building
                      350 Fifth Avenue, Suite 5720
                      New York, New York 10118
                      Telephone: (212) 239-9292
                      Facsimile: (212) 239-9001
                      E-mail: sgilly@twglawyers.com

                      - and –

                      Stephen M. Silvestri (*Motion to Admit Pro Hac Vice Pending*)
                      Stefan J. Marculewicz (*Motion to Admit Pro Hac Vice Pending*)
                      Laura Pierson-Scheinberg (*Motion to Admit Pro Hac Vice Pending*)
                      MILES & STOCKBRIDGE, P.C.
                      10 Light Street
                      Baltimore, MD 21202
                      Telephone: (410) 727-6464
                      Facsimile: (410) 385-3700

                      Counsel for Defendants

TO:    Allyson L. Belovin, Esq.
        Levy Ratner, P.C.
        80 Eighth Avenue, 8th Floor
        New York, NY 10011
        Counsel for Plaintiff

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE                  :
WORKERS EAST,                                :
                                             :
                              Plaintiff,     :
                                             :         07 cv. 04816 (GBD)
             -against-                       :
                                             :         **ORDER**
RITE AID CORPORATION and                     :
THE JEAN COUTU GROUP (PJC), INC.,            :
THE JEAN COUTU GROUP USA, INC.,              :
d/b/a BROOKS ECKERD DRUG STORES,             :
                                             :
                              Defendants.    :
-------------------------------------------------------------X

       Upon Consideration of Defendant Rite Aid's Motion to Dismiss Complaint and

any Opposition thereto, it is this _____ day of _____, 2007,

       **HEREBY ORDERED** that the Motion to Dismiss Complaint be and hereby is,

**GRANTED**.


Dated:  June ___, 2007
New York, New York


                                          _____
                                          United States District Judge

# EXHIBIT 3

08/05/07  TUE 10:30 FAX 4103633700      MILES&STOCKBRIDGE

INTERNET
FORM NLRB-508
(5-00)

FORM EXEMPT UNDER 44 U.S.C. 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST LABOR ORGANIZATION**
**OR ITS AGENTS**

| DO NOT WRITE IN THIS SPACE | |
| --- | --- |
| Case | Date Filed |
| 2–CB–21172 | 6/5/07 |

**INSTRUCTIONS:** File an original and 4 copies of this charge and an additional copy for each organization, each local, and each individual named in item 1 with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

### 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

| a. Name | b Union Representative to contact |
| --- | --- |
| 1199SEIU, United Healthcare Workers East | Dennis Rivera, President |

| c. Telephone No. | d. Address (street, city, state and ZIP code) |
| --- | --- |
| (212) 582-1890 | 310 West 43rd Street, New York, New York 10036 |

e. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (list subsections) (1)(A); (2); and (3) _____ of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

**2. Basis of the Charge** (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Please see attached sheet.

| 3. Name of Employer | 4. Telephone No. |
| --- | --- |
| The Rite Aid Corporation | (717) 761-2633 |

| 5. Location of plant involved (street, city, state and ZIP code) | 6. Employer representative to contact |
| --- | --- |
| 30 Hunter Lane, Camp Hill, Pennsylvania 17011 | Niels Hanson, Director, Labor Rel. |

| 7. Type of establishment (factory, mine, wholesaler, etc.) Retail Store | 8 Identify principal product or service Pharmacy | 9. Number of workers employed Approx. 116,000 |
| --- | --- | --- |

| 10. Full name of party filing charge |
| --- |
| The Rite Aid Corporation |

| 11. Address of party filing charge (street, city, state and ZIP code) | 12. Telephone No. |
| --- | --- |
| 30 Hunter Lane, Camp Hill, Pennsylvania 17011 | (717) 761-2633 |

### 13. DECLARATION

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

Stefan Jan Marculewicz, Attorney

By _____
(signature of representative or person making charge)

(title or office, if any)  June 5, 2007

Address  Miles & Stockbridge, P.C., 10 Light Street, Baltimore, MD 21202     (410) 727-6464

(Telephone No.)     (date)

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U. S. CODE, TITLE 18, SECTION 1001)**

*U.S. GPO: 2000-464-640/29074

SEIU1199, United Healthcare Workers East

Charge Allegations

I.    Since on or about a date six (6) months prior to the filing of this charge, and
      continuously thereafter, SEIU1199, a labor organization, by its officers,
      agents and representatives (collectively "SEIU1199"), has restrained and
      coerced, and is restraining and coercing Rite Aid employees who were
      formerly employees of Brooks and Eckerd pharmacies (collectively
      "Brooks/Eckerd employees") in the exercise of their rights under Section 7 of
      the Act by engaging in a campaign and taking other unlawful action to gain
      status as the exclusive bargaining representative of said employees without
      permitting them to choose for themselves whether they wish to have
      SEIU1199 as their exclusive representative for purposes of collective
      bargaining. SEIU1199 has not claimed that Brooks/Eckerd employees have
      lawfully designated SEIU1199 as their representative. Examples of coercive
      conduct engaged in by SEIU1199 in furtherance of its efforts to achieve such
      unlawful ends include, but are not limited to, the following:

      a.  Maintaining a web site on which SEIU1199 states that upon the merger of
          Brooks/Eckerd and Rite Aid Corporation, Brooks/Eckerd employees will
          automatically become members of SEIU1199 irrespective of whether a
          majority of employees in an appropriate unit designate SEIU1199 as their
          exclusive bargaining representative.

      b.  Conducting a two-day campaign on April 30 and May 1, 2007 during
          which it stated to several hundred Brooks/Eckerd employees in 14 NJ and
          NY counties, throughout New York City, Long Island, and north through
          the Hudson Valley and Albany area, that it would gain exclusive
          representative status over them because the current collective bargaining
          agreement between SEIU1199 and Rite Aid would apply to such
          employees automatically upon approval of the merger of the Brooks and
          Eckerd pharmacies into the Rite Aid Corporation by the US Federal Trade
          Commission.

      c.  Soliciting and obtaining signed authorization cards from Brooks/Eckerd
          employees under the pretense that the collective bargaining agreement
          between Rite Aid and SEIU1199 requires them to become members in
          SEIU1199 as a condition of continued employment, and that such
          employees have no choice but to sign the cards or they will lose their jobs.

      d.  Engaging in a communications campaign to Brooks/Eckerd employees,
          which, among other things, informed and continues to inform such
          employees that they are automatically going to become members of
          SEIU1199 through an after acquired stores clause in a collective
          bargaining agreement between Rite Aid and SEIU1199. Such clause, and

SEIU1199's attempts to enforce it are unlawful, the clause does not require any proof that a majority of Rite Aid employees who are formerly Brooks/Eckerd employees in one or more appropriate units wish to have the SEIU1199 be their exclusive bargaining representative.

e. Demanding application of the terms of a collective bargaining agreement to the Brooks/Eckerd employees through an after acquired stores clause and without any proof that a majority of Brooks/Eckerd employees in one or more appropriate units wish to have the SEIU1199 be their exclusive bargaining representative. One of the terms of said collective bargaining agreement, if applicable, would require Rite Aid to terminate the employment of any former Brooks/Eckerd employee who after the merger, ceases to be or does not become a member in good standing of SEIU1199 by reason of his failure to pay the initiation fee and periodic dues uniformly required as a condition of acquiring or retaining membership.

f. Initiating an arbitration proceeding against Rite Aid on or about May 31, 2007 in which SEIU1199 demanded that Rite Aid apply the terms of its current contract to the Brooks/Eckerd employees without proving that it represents a majority of them in an appropriate unit.

g. Other like and related conduct designed to restrain and coerce Brooks/Eckerd employees and Rite Aid employees in the exercise of their rights under Section 7 of the Act.

II.    Since on or about a date six (6) months prior to the filing of this charge, and continuously thereafter SEIU 1199 has attempted to cause Rite Aid to terminate the employment of and/or discriminate against Brooks/Eckerd employees by seeking to apply the terms of the collective bargaining agreement between Rite Aid and SEIU1199, containing union security provisions that require all employees to maintain their membership in good standing in SEIU1199 and pay periodic dues and initiation fees as a condition of continued employment, to all Brooks/Eckerd employees, notwithstanding the fact that SEIU1199 does not have majority support in any appropriate unit of Brooks/Eckerd employees.

III.   Since on or about a date six (6) months prior to the filing of this charge, and continuously thereafter, SEIU1199 has failed and refused to bargain in good faith with the Rite Aid Corporation, in respect to rates of pay, wages, and hours of employment and other terms and conditions of employment of the employees of said Employer, by engaging in the following conduct:

a. Seeking to apply an after acquired stores clause to Brooks/Eckerd employees notwithstanding the fact that SEIU1199 does not have majority support in any appropriate unit of Brooks/Eckerd employees.

08/05/07  TUE 10:31 FAX 4103853700    MILES&STOCKBRIDGE

    b. Initiation of arbitration proceedings against Rite Aid on or about May 31, 2007 to secure a remedy that violates the Section 7 rights of Brooks/Eckerd employees to choose for them whether they wish to have SEIU1199 as their exclusive representative for purposes of collective bargaining.

Rite Aid respectfully requests that the Board exercise its authority under Section 10(j) of the Act to initiate injunction proceedings to prevent the unfair labor practices being committed by SEIU1199.

# EXHIBIT 4

06/07/07    THU 15:50 FAX 4103853700    MILES&STOCKBRIDGE    @005

INTERNET
FORM NLRB-508
(8-90)

FORM EXEMPT UNDER 44 U.S.C 3512

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST LABOR ORGANIZATION
OR ITS AGENTS**

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 2–CB–21180 | 6/7/07 |

**INSTRUCTIONS:** File an original and 4 copies of this charge and an additional copy for each organization, each local, and each individual named in item 1 with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.

**1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT**

| a. Name | b. Union Representative to contact |
|---|---|
| 1199SEIU, United Healthcare Workers East | Dennis Rivers, President |

| c. Telephone No. | d. Address (street, city, state and ZIP code) |
|---|---|
| (212) 582-1890 | 310 West 43rd Street, New York, New York 10036 |

e. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b). subsection(s) (list subsections) _(1)(A); (2); and (3)_ of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Since on or about June 6, 2007, and continuously thereafter, SEIU1199 United Healthcare Workers East, by and through its officers, agents and representatives has interfered with and restrained, and is interfering with and restraining employees of Rite Aid Corporation and its subsidiaries, in the exercise of their rights guaranteed in Section 7 of the Act by filing and pursuing a lawsuit in the United States District Court for the Southern District of New York to compel an arbitration with the Rite Aid Corporation, through which SEIU1199 seeks to obtain a remedy that is unlawful under the Act, namely, the application of a contract to employees of stores acquired by Rite Aid through its acquisition of the parent of Brooks and Eckerd drug stores without first having proof that it represents a majority of employees in an appropriate unit.

Since on or about June 6, 2007, and continuously thereafter, SEIU1199, has attempted to cause Rite Aid Corporation and its subsidiaries to terminate the employment of employees, by filing a lawsuit to compel an arbitration through which it seeks the application of a contract containing a clause that requires Rite Aid to terminate employees who do not become members of SEIU1199 even though SEIU1199 does not represent a majority of employees in any appropriate unit of employees in Brooks and Eckerd drug stores, in violation of Section 8(a)(3) of the Act.

Since on or about June 6, 2007, and continuously thereafter, SEIU1199, by and through its officers, agents and representatives, has failed and refused to bargain with Rite Aid Corporation and its subsidiaries with respect rates of pay, wages, hours of employment and other terms and conditions of employment by filing a lawsuit to compel an arbitration through which it seeks to secure a remedy that violates the Section 7 rights of Brooks/Eckerd employees to choose for themselves whether they wish to have SEIU1199 as their exclusive representative for purposes of collective bargaining.

| 3. Name of Employer | 4. Telephone No. |
|---|---|
| Rite Aid Corporation, Rite Aid of New York, Inc. and Rite Aid of New Jersey, Inc. | (717) 761-2633 |

| 5. Location of plant (street, city, state and ZIP code) | 6. Employer representative to contact |
|---|---|
| 30 Hunter Lane, Camp Hill, Pennsylvania 17011 | Niels Hanson, Director, Labor Rel. |

| 7. Type of establishment (factory, mine, wholesaler, etc.) | 8. Identify principal product or service | 9. Number of workers employed |
|---|---|---|
| Retail Store | Pharmacy | Approx. 116,000 |

| 10. Full name of party filing charge |
|---|
| The Rite Aid Corporation |

| 11. Address of party filing charge (street, city, state and ZIP code) | 12. Telephone No. |
|---|---|
| 30 Hunter Lane, Camp Hill, Pennsylvania 17011 | (717) 761-2633 |

**13. DECLARATION**

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

By _(signature of representative or person making charge)_          Stefan Jan Marculewicz, Attorney

| | (title or office, if any) |
|---|---|
| Address Miles & Stockbridge, P.C., 10 Light Street, Baltimore, MD 21202    (410) 727-6464 | June 7, 2007 |
| (Telephone No.) | (date) |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U. S. CODE, TITLE 18, SECTION 1001)**

*U.S. GPO: 2000-464-640/29074

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

1199SEIU, UNITED HEALTHCARE    :
WORKERS EAST,          :    07 Civ. _____
                :
         Plaintiff,    :
                :
     -against-       :
                :
RITE AID CORPORATION and     :
THE JEAN COUTU GROUP (PJC), INC.,  :
THE JEAN COUTU GROUP USA, INC.,   :
d/b/a BROOKS ECKERD DRUG STORES  :
                :
        Defendants.   :
------------------------------------------------------------X

## PLAINTIFF 1199'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR
## <u>AN INJUNCTION IN AID OF ARBITRATION</u>

**LEVY RATNER, P.C.**
Attorneys for Plaintiff 1199
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100

{Worldox Files\1199\123\04\07035141.DOC}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE       :
WORKERS EAST,                      :       07 Civ. _____
                                        :
              Plaintiff,        :
                                        :
        -against-           :
                                        :
RITE AID CORPORATION and        :
THE JEAN COUTU GROUP (PJC), Inc.,  :
THE JEAN COUTU GROUP USA, INC.,   :
d/b/a BROOKS ECKERD DRUG STORES  :
                                        :
            Defendants.     :
-----------------------------------------------------------------X

## PLAINTIFF 1199'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR A
## <u>PRELIMINARY INJUNCTION IN AID OF ARBITRATION</u>

### <u>INTRODUCTION</u>

    1199SEIU, United Healthcare Workers East ("1199" or "Union") submits this Memorandum of Law in support of its application pursuant to Section 301 of the Labor Management Relations Act ("LRMA"), 29 U.S.C. §185, for a preliminary injunction, *pendente lite*, enjoining Defendants Rite Aid Corporation ("Rite Aid"), The Jean Coutu Group (PJC), Inc. ("Coutu Inc.") and The Jean Coutu Group USA, Inc. ("Coutu USA"), d/b/a Brooks Eckerd Drug Stores from engaging in a union avoidance campaign directed towards the employees at Brooks Eckerd stores that will be acquired by Rite Aid pursuant to a merger agreement between Rite Aid and Coutu Inc. ("Merger Agreement").

    Plaintiff 1199 and Defendant Rite Aid are parties to a collective bargaining agreement which provides that the terms of the agreement shall apply to newly acquired Rite Aid stores,

including existing stores in which Rite Aid acquires an interest of 50% or more. Despite the clear language of the agreement, Rite Aid has informed the Union that it will apply a "union free business model" to the Brooks Eckerd drug stores it acquires pursuant to the Merger Agreement ("Eckerd stores"). Further, Rite Aid has, in conjunction with management at the Eckerd stores, launched a campaign designed to discourage and undermine the employees' support for the Union ("Union Avoidance Campaign").

As demonstrated below, a preliminary injunction in aid of arbitration to preserve the *status quo* is appropriate where, as here, the contractual arbitration procedure will otherwise be rendered futile. In this case, Defendants' continued Union Avoidance Campaign will make it impossible for the Union to secure the support of the Eckerd employees necessary for it to enforce the agreement and for those employees to obtain Union representation and contractual benefits. Accordingly, an injunction pending arbitration should be issued.   ·

## STATEMENT OF FACTS

The Affidavit of 1199 Vice President Laurianne Vallone in Support of Plaintiff's Motion for a Preliminary Injunction ("Vallone Affidavit") sets forth the material facts in this matter and we respectfully refer the Court to that Affidavit. However, for the Court's convenience, a brief summary of the facts follows.

1199 represents approximately 6,500 pharmacists, pharmacy technicians, pharmacy interns, clerks, stock persons, shift supervisors, assistant managers and other employees employed by Rite Aid in various counties and cities in New York and New Jersey ("Bargaining Unit"). Vallone Affidavit ¶7. 1199 and Rite Aid have been parties to several successive collective bargaining agreements, the most recent of which was effective for the period October

11, 1998 through October 10, 2002 ("CBA"). Exhibit 1.[1]  The CBA was extended, with certain

modifications, by two (2) subsequent Memoranda of Agreement, the first effective for the period

October 13, 2002 through October 14, 2006 ("2002 MOA") and the second effective for the

period October 14, 2006 through October 13, 2010 ("2006 MOA"). Exhibits 2 and 3.

Article 1 of the CBA, entitled Coverage, provides that the CBA shall apply any existing

stores that Rite Aid acquires within the geographical area covered by the agreement ("After-

Acquired Clause").[2]  Specifically, the After-Acquired Clause of Article 1 states that the CBA

"shall apply only to those drug stores operated by said Employer, and to drug stores hereafter

opened by Rite Aid Corporation (including but not limited to those stores in which the Employer

directly or indirectly acquires an interest of 50% or more in existing stores) . . ." Exhibit 1, p. 2.

In or around August 2006, Rite Aid advised the Union that it had entered into the Merger

Agreement with Coutu Inc., pursuant to which Rite Aid will acquire, in full, all Eckerd stores,

including those stores within the geographical area covered by the CBA. See Vallone Affidavit

¶17. The Federal Trade Commission's approval of the Merger Agreement is currently pending.

Vallone Affidavit ¶18. In direct contravention of the language of CBA Article 1 (Exhibit 1, p.

2), Rite Aid informed the Union that it intended to operate the to-be-acquired Eckerd stores

pursuant to a "union free business model." Vallone Affidavit ¶¶ 21, 44.

---

[1] Exhibits referred to herein are those attached to the Affidavit of Laurianne D. Vallone in
Support of Plaintiff's Motion for a Preliminary Injunction.

[2] The geographical area set forth in Article 1 is "the City of New York, and the New York
Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and
Rockland, and the City of Albany, and the New Jersey Counties of Passaic, Bergen, Essex,
Hudson, and Union and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in
Middlesex County, New Jersey." Exhibit 1, p. 2.

In the early Spring of 2007, Rite Aid confirmed to the Union that it had, in conjunction

with management at the to-be-acquired Eckerd stores, launched a campaign directed at the

Eckerd employees within the geographical area covered by the CBA designed to discourage and

undermine the employees' support for the Union ("Union Avoidance Campaign").    Vallone

Affidavit ¶21.  As part of the Union Avoidance Campaign, Defendants have

- conducted a "10 Minute Huddle" with store employees at which they told the employees that they can vote against union representation, stressed that management "prefer[s] to work directly with [employees] to address questions and concerns versus dealing with a third party," stated that under a union contract everyone normally receives the same pay regardless of performance, and warned that the Union would undermine the success of the stores.  See Exhibits 5 and 6.

- held mandatory in-store meetings at which they advised employees that the Union will take away their money and other benefits, that employees should not speak with Union representatives who enter the stores, that employees should not sign any document given to them by the Union.  See Vallone Affidavit ¶¶ 27, 30, 33.

- required employees to attend off-site meetings at which managers told them not to support 1199.  See Vallone Affidavit ¶¶ 28, 34.

- forced employees to read and sign literature disavowing support for the Union.  See Vallone Affidavit ¶¶ 37, 38.

Employees who have demonstrated any support for the Union have been subject to

management threats, both express and implied.  An employee who distributed Union literature to

a co-worker was told to "keep his opinions to himself," to "be careful what he says," and that he

might "get into trouble."  See Vallone Affidavit ¶35.  Another employee was threatened with

discharge if she discussed the Union at work.  See Vallone Affidavit ¶31. [3]

---

[3] The Union has filed charges with the National Labor Relations Board against Rite Aid and Eckerd in connection with these and other unfair labor practices.  See Exhibit 10.

On or about May 10, 2007, 1199 President Dennis Rivera initiated a telephone conversation with Rite Aid Chief Executive Officer Mary Sammon. See Vallone Affidavit ¶41. Rivera protested Rite Aid's stated refusal to apply the CBA to the Eckerd stores it acquires pursuant to the Merger Agreement, and stated that the Union Avoidance Campaign Rite Aid was conducting along with Eckerd management violates Article 1 of the CBA. See Vallone Affidavit ¶¶ 41, 42. Subsequently, on or about May 24, 2007, 1199 Executive Vice President Michael Rifkin met with Rite Aid Senior Vice President of Human Resources Todd McCarty. See Vallone Affidavit ¶44, Exhibit 11. At that meeting, McCarty reiterated Rite Aid's intention to operate the to-be-acquired Eckerd stores pursuant to a "union free business model" and confirmed that Rite Aid and Eckerd management had jointly undertaken and would continue a Union Avoidance Campaign targeting the workers in those stores. See Vallone Affidavit ¶¶ 44, 45, Exhibit 11.

On May 31, 2007, 1199 filed a demand for arbitration seeking a declaratory ruling from an arbitrator that Rite Aid's intention to keep the acquired Eckerd stores "union-free" is a violation of the CBA's After-Acquired Clause and further seeking a ruling that the Union Avoidance Campaign violates the CBA because it frustrates the Union's ability to enforce the After-Acquired Clause. Exhibit 2. On May 31, 2007, 1199 wrote to Rite Aid, enclosing a copy of its demand for arbitration and requesting that Rite Aid consent to expedited arbitration of this matter. Exhibit 13. To date, Rite Aid has not agreed to expedited arbitration. Vallone Affidavit ¶ 49.

**ARGUMENT**

**THE COURT SHOULD RESTRAIN AND ENJOIN DEFENDANTS' UNION
AVOIDANCE CAMPAIGN TO PRESERVE THE INTEGRITY OF THE ARBITRAL
PROCESS AND TO AVOID IRREPARABLE HARM TO 1199 AND ITS MEMBERS**

Few principles of federal labor law are so well-settled as the requirement that parties to a collective bargaining agreement providing for compulsory arbitration submit all disputes arguably arising from the agreement to arbitration. This principle was set forth by the Supreme Court in three decisions known as the <u>Steelworkers Triology</u>: <u>Steelworkers v. American Manufacturing Co.</u>, 363 U.S. 564 (1960), <u>Steelworkers v. Warrior and Gulf Navigation Co.</u>, 363 U.S. 574 (1960), and <u>Steelworkers v. Enterprise Wheel Car Corp.</u>, 363 U.S. 593 (1960). These decisions reflect a national labor policy favoring resolution of labor disputes through arbitration rather than through strikes and litigation.

An equally well-settled corollary of that policy is the court's power to exercise its injunctive powers in aid of arbitration. In <u>Boys Market Inc. v. Retail Clerks Local 770</u>, 398 U.S. 235 (1970), the Supreme Court reinforced that policy and explained that the purpose of the court's power is to ensure meaningful compliance with the arbitral process which the parties have negotiated as the method for resolving disputes arising under the collective bargaining agreement. Thus, when a union eschews the arbitration process in favor of a strike to pressure an employer to resolve a dispute, the courts will enjoin that strike activity to preserve the arbitration process if the dispute is one covered by the arbitration clause. Those injunctions have been referred to as "<u>Boys Market</u>" injunctions, following the name of the lead case.

Similarly, if an employer takes or threatens to take unilateral action which will preclude a meaningful remedy in arbitration, the courts will intervene. Those so-called "Reverse <u>Boys Market</u>" injunctions have been issued to preserve the *status quo* by enjoining employer conduct

{Worldox Files\1199\123\04\07035141.DOC}          7

pending resolution of the Union's challenge in arbitration. See, e.g., Niagara Hooker Employees Union v. Accidental Chemical Corp., 935 F.2d 1370 (2nd Cir. 1991); Postal Workers Union v. United States Postal Service, 766 F.2d 715 (2nd Cir. 1985), cert. denied, 475 U.S. 1046 (1986); Independent Oil & Chemical Workers v. Proctor & Gamble Mfg. Co., 864 F.2d 927 (1st Cir. 1988); Nursing Home and Hospital Union v. Sky Vue Terrace, 759 F.2d 1094(3rd Cir. 1985); Lever Bros. Co. v. Chemical Workers Local 217, 554 F.2d 115 (4th Cir. 1976); Panoramic Corp., 668 F.2d 276 (7th Cir. 1981).

Accordingly, a "Reverse Boys Market" injunction is warranted here to ensure that the arbitration process is not transformed into a "meaningless ritual." Panoramic Corp., 668 F.2d at 283.

### A.    The Standard For Issuing A *Status Quo* Injunction

In Niagara Hooker, the Second Circuit articulated the requirements for a "Reverse Boys Market" injunction to preserve the *status quo* pending arbitration. A Union may obtain a *status quo* injunction against an employer if (a) the grievance is arbitrable and (b) the injunction is necessary to "prevent arbitration from being rendered a meaningless ritual." Niagara Hooker, 935 F.2d at 1377 (quoting Panoramic Corp., 668 F.2d at 283). In addition, a union must also satisfy the traditional requirements for equitable relief by showing that there is "some likelihood" of success on the merits of the arbitration. See Niagara Hooker, 935 F.2d at 1377-78; Hoh v. Pepsico, 481 F.2d 556, 561 (2d Cir. 1974).

### B.    1199's Grievance is Arbitrable

That the underlying dispute is arbitrable cannot be reasonably contested. The arbitration provision of the CBA, Article 31, provides that either party may demand arbitration of any grievance and broadly defines "grievance" as "[a]ll complaints or disputes arising between the

Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement." Exhibit 1, p. 54. 1199's dispute with Rite Aid falls well within the scope of the arbitration clause in Article 31. By conducting the Union Avoidance Campaign in conjunction with Eckerd management, Rite Aid is frustrating the Union's ability to enforce the After-Acquired Clause of Article 1 in breach of the CBA's implied covenant of good faith and fair dealing (See Section C.1 below). Therefore, 1199's dispute with Rite Aid is clearly appropriate for and amenable to arbitral determination.

**C.    Unless Enjoined, 1199's Attempt to Vindicate Its Rights
and the Rights of Its Members Through Arbitration
Will Be Rendered A Meaningless Ritual.**

As the Second Circuit explained in Niagara Hooker, a union may obtain a *status quo* injunction against an employer when the employer's action has the effect of frustrating the arbitral process, or rendering it a "hollow formality." 935 F.2d at 1378 (quoting Lever Bros., 554 F.2d at 123). The integrity of the arbitral process is irreparably compromised if, as a result of the employer's actions, the arbitrator's award cannot "undo the harm." Id. at 1378. The question is whether the arbitrator can, without an injunction, fashion an adequate remedy to return the parties to the *status quo ante*. In the instant matter, that question must be answered in the negative.

The After-Acquired Clause of Article 1 in the CBA provides that the contract's terms shall apply to new drug stores opened by Rite Aid, including existing stores in which Rite Aid acquires an interest of 50% or more, within the geographical area described in that article. Exhibit 1, p. 2. .In addition to its plain language, the CBA, like all collective bargaining agreements, includes an implied covenant of good faith and fair dealing which requires the parties to act with "faithfulness to an agreed common purpose," consistent with the "justified

expectations of the other party" and the "spirit of the bargain." <u>Aeronautical Indus. Dist. Lodge</u>
<u>91 of the Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. United Technologies</u>
<u>Corp.</u>, 87 F.Supp.2d 116, 127 (D.Conn. 2000); aff'd 230 F.3d 569 (2d Cir. 2000). <u>See also</u>,
<u>Allis-Chalmbers Corp. v. Lueck</u>, 471 U.S. 202, 220 (1985) (recognizing claim for breach of
covenant of good faith under §301 of the LMRDA).[4]  The Defendants' Union Avoidance
Campaign breaches the implied covenant of good faith and fair dealing in the CBA as it is
inconsistent with both the sprit of the After-Acquired Clause and the Union's justified
expectations with respect to that provision.

Under federal labor law, in order for the After-Acquired clause have effect, the
employees in the newly acquired Eckerd stores must either be deemed an accretion to the
Union's existing bargaining unit,[5] or must demonstrate majority support for the Union. <u>See</u>
<u>Kroger Co.</u>, 219 NLRB 388, 389 (1975). While the Union is confident that employees in some
of the stores will be accreted to the bargaining unit, in most cases it is likely that the former
Eckerd employees will have to demonstrate majority support for the Union in order to obtain
coverage under the CBA.

---

[4] The implied covenant of good faith and fair dealing in collective bargaining agreements has
also been recognized by arbitrators. <u>See</u> <u>e.g.</u>, <u>Chevron Oronite Chemical Co. and PACE, Local</u>
<u>4-447</u>, 04-1 Lab. Arb. Awards (CCH) P 3748 (January 6, 2004, Nicholas); <u>Int'l Assoc. of</u>
<u>Machinists, Local 2061 and United Space Alliance</u>, 04-1 Lab. Arb. Awards (CCH) P 3754
(November 17, 2003, Yancy) (neither party may do anything which will have the effect of
destroying or injuring the other party's right to receive the fruits of the contract). A copy of
these arbitration decisions are attached hereto as Exhibit A.

[5] Employees in any newly acquired Eckerd stores will accrete to the bargaining unit, and the
Union will represent them as a matter of law, if they share with the employees in the existing
bargaining unit (a) geographic proximity; (b) similarity of skills and functions, (c) similarity of
employment conditions, (d) centralization of administration, (e) managerial and supervisory
control, (f) employee interchange, (g) functional integration of the employer and (h) bargaining
history. <u>See</u> <u>Staten Island Univ. Hosp. v. NLRB</u>, 24 F.3d 450, 454-55 (2d. Cir. 1994), <u>citing</u>
<u>NLRB v. Stevens Ford, Inc.</u>, 773 F.2d 468, 473 (2d Cir. 1985).

It is clear that without a preliminary injunction, Defendants will proceed with the Union Avoidance Campaign, making it virtually impossible for the Union to secure the necessary majority support among the former Eckerd employees, thereby depriving those employees of their right to Union representation and contractual benefits, and depriving the Union of the benefit of its bargain. This is particularly true given that the Union has been denied access to Eckerd stores and, therefore, cannot communicate with the workers about the Union itself. See Vallone Affidavit ¶22. That Defendants' purpose in launching the Union Avoidance Campaign is to frustrate the Union's ability to enforce the After-Acquired Clause is clear and is consistent with its stated "new business model" which includes remaining "union free" at the those stores. The campaign is specifically designed to influence employees' ideas about the Union and thereby discourage their support for the Union. As the Union is unable to counter the messages sent through the Union Avoidance Campaign, only the Court, and ultimately the arbitrator, have the ability to stop the harm.

It is equally clear that if the Union Avoidance Campaign continues for the many months it will certainly take to conclude the normal arbitration process, the arbitrator will not be able to meaningfully remedy the changed opinions resulting from Defendants' communications, both oral and written, about the Union. If the Arbitrator finds that the Union Avoidance Campaign violates the CBA the only remedy s/he can order is that Defendants cease and desist from engaging in that campaign. However, the arbitrator will not be able to undo the effects of months and months of that campaign on the minds of the workers, and the Union's ability to enforce the After-Acquired Clause of Article 1 will be rendered meaningless and the employees' right to Union representation and contract coverage will be a nullity.

This case is analogous to <u>Teachers Association of the Japanese Educational Institute of New York v. Japanese Educational Institute of New York, Inc.</u>, 724 F.Supp. 188 (S.D.N.Y. 1989). In that case, the Union sought to enjoin the Employer's proposed changes to the format and structure of certain monthly meetings held between the parties pending arbitration of its dispute as to whether those proposed changes violate the parties' collective bargaining agreement. In granting the injunction, the Court equated its analysis of whether the arbitrator could award an adequate remedy with the concept of irreparable harm. The Court stated,

> Irreparable harm must be viewed in the context of the nature of the dispute. The present underlying dispute centers around the format of a meeting designed to promote communication and the exchange of ideas between the [Employer] and the [Union]. The harm alleged from the change in format concerns the dynamics of the meeting, the range of the freedom of expression, and the channeling of that expression to the [Employer]. . . The traditional irreparable harm requirement for an injunction focuses on the nature of the harm, not the nature of the action. The test is whether an arbitrator can fashion an adequate remedy to return the parties to status quo ante and thus a minor or nondrastic change, as well as a reversible action, can both produce an irreparable harm.

> Without a preliminary injunction, the [Employer] will proceed with the implementation of the format change . . .To the extent that the dynamics of these monthly discourses differ in the multiple for a from the discussions that would have been held in the traditional forum, the [Union] is irreparably harmed. . . A meeting already held, just like a plant already moved, presents an arbitrator with a deed already done. *The inability to recreate the discussion that would or should have been constitutes irreparable harm.*

724 F.Supp. at 192-94 (citations omitted)(emphasis added).

In the instant matter, the underlying dispute centers around the After-Acquired Clause of Article 1 which was designed to provide Union representation and contract coverage to employees in newly acquired stores. The harm alleged from Defendants' Union Avoidance Campaign is Union's inability to enforce that clause and secure the benefit of its bargain and the employees' loss of Union representation and contractual benefits. As the Court recognized in

Japanese Educational Institute, it is not the nature of the Defendants' actions, but the nature of the harm caused by those actions that is relevant. Therefore, the Defendants cannot escape a finding of irreparable harm here, any more than they could in Japanese Educational Institute, by arguing they are simply exercising their right under federal labor law to inform employees about the Union. Even if the Defendants' communications about the Union were otherwise lawful, those communications arguably breach the CBA and the harm they cause cannot be undone by the arbitration process. That is, by the time the dispute reached an arbitrator, the Union Avoidance Campaign would be "a deed already done" as an arbitrator would be unable to restore the atmosphere, free of anti-union rhetoric, that would or should have existed. As such, the Union Avoidance Campaign constitutes irreparable harm which would render an arbitrator's decision hollow and the arbitral process a meaningless ritual.

**D.     1199 Is Likely To Prevail On The Merits.**

Because the merits of the underlying grievance are to be determined in the contract arbitration, a union seeking a "Reverse Boys Market injunction must demonstrate only "some likelihood" that it will prevail on the merits at arbitration. See Hoh, 491 F.2d at 561. Plaintiff has more than met that threshold. As discussed above, both the Courts and arbitrators recognize the implied covenant of good faith and fair dealing in collective bargaining agreements pursuant to which parties are required to refrain from engaging in conduct which undermines the sprit of the bargain. See United Technologies, 87 F.Supp.2d at 127. Rather, parties are required to act in a manner that is consistent with the "justified expectations of the other party." Certainly, with the existence of the After-Acquired Clause in Article 1 of the CBA, the Union is justified in expecting that when Rite Aid acquires a new store, it will not interfere with the Union's opportunity to secure the support of employees in that store necessary to give effect to that

{Worldox Files\1199\123\04\07035141.DOC}                    13

contractual provision.    Any such interference violates the spirit of the bargain and it is,
accordingly, more than likely that the Union will ultimately succeed on the merits and obtain the
relief it seeks at arbitration. *See* Id.

## CONCLUSION

Having met all the requirements for a *status quo* injunction in aid of arbitration, 1199
respectfully requests that the Court grant a preliminary injunction, *pendente lite*, enjoining
Defendants from engaging in the Union Avoidance Campaign directed at the employees at
Eckerd stores which will be acquired by Rite Aid pursuant to the Merger Agreement until the
arbitration of 1199's grievance is concluded.


Dated: New York, New York
        June 6, 2007


                        Respectfully submitted,

                        LEVY RATNER, P.C.


                By:     _____
                        Allyson L. Belovin (AB 3702)
                        80 Eighth Avenue, 8th Floor
                        New York, New York 10011
                        (212) 627-8100 (phone)
                        (212) 627-8182 (fax)
                        abelovin@lrbpc.com


{Worldox Files\1199\123\0F\07035141.DOC}            14