Exhibit C

# 1199 NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION, SEIU, AFL-CIO

## AND

## RITE AID CORPORATION

### COLLECTIVE BARGAINING AGREEMENT

**EFFECTIVE**
OCTOBER 11, 1998 through OCTOBER 10, 2002

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

# TABLE OF CONTENTS

ARTICLE 1    COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2

ARTICLE 2    RECOGNITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

ARTICLE 3    UNION SHOP AND CHECK OFF . . . . . . . . . . . . . . . . . . . . Page 5

ARTICLE 4    HIRING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

ARTICLE 5    WAGE INCREASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

ARTICLE 6    MINIMUM WAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10

ARTICLE 7    HOURS OF WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

ARTICLE 8    VACATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 15

ARTICLE 9    HOLIDAYS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 18

ARTICLE 10   DISCHARGE OR LAY-OFF . . . . . . . . . . . . . . . . . . . . . Page 21

ARTICLE 11   ANTI-DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . Page 25

ARTICLE 12   SENIORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 26

ARTICLE 13   PROMOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 27

ARTICLE 14   CONSCRIPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 28

ARTICLE 15   CONCESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 29

ARTICLE 16   CLASSIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 30

ARTICLE 17   NO STRIKE OR LOCKOUT . . . . . . . . . . . . . . . . . . . . . Page 31

ARTICLE 18   NO INDIVIDUAL AGREEMENTS . . . . . . . . . . . . . . . . . Page 32

ARTICLE 19   UNION ACCESS TO PREMISES . . . . . . . . . . . . . . . . . Page 33

ARTICLE 20   TRIAL PERIOD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 34

ARTICLE 21   UNION LEAVE OF ABSENCE . . . . . . . . . . . . . . . . . . . Page 35

ARTICLE 22   TRANSFERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 36

ARTICLE 23   CHILD LABOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 37

: Hubbard, P.C.
iversity Place
rk, NY 10003
l.473.8700

ARTICLE 24   SEVERABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 38

ARTICLE 25   PRIOR BENEFITS AND PRIVILEGES . . . . . . . . . . . . . . . . . . Page 39

ARTICLE 26   NATIONAL BENEFIT FUND . . . . . . . . . . . . . . . . . . . . . . . . Page 40

ARTICLE 27   PENSION FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 44

ARTICLE 28   ENFORCEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 47

ARTICLE 29   SICK LEAVE AND OTHER LEAVES . . . . . . . . . . . . . . . . . . Page 50

ARTICLE 30   THE PROFESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 52

ARTICLE 31   GRIEVANCE AND ARBITRATION . . . . . . . . . . . . . . . . . . . . Page 54

ARTICLE 32   UNION DECAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 58

ARTICLE 33   SHIFTS AND SHIFT DIFFERENTIALS . . . . . . . . . . . . . . . . . Page 59

ARTICLE 34   SECURITY SHOPPERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 60

ARTICLE 35   MANAGEMENT RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 61

ARTICLE 36   SUCCESSORS AND ASSIGNS . . . . . . . . . . . . . . . . . . . . . . . . Page 62

ARTICLE 37   DURATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 64

SCHEDULE A   BENEFIT FUND IMPROVEMENTS . . . . . . . . . . . . . . . . . . . Page 67

SCHEDULE B   PENSION FUND IMPROVEMENTS . . . . . . . . . . . . . . . . . . . Page 69

ASSUMPTION AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 71

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

AGREEMENT made as of this _____ day of _____, 199__, by and between

1199 NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION, SEIU,

AFL-CIO, with its offices at 310 West 43rd Street, Borough of Manhattan, City of New

York, (hereinafter the "Union"), and RITE AID CORPORATION, with its offices at

30 Hunter Lane, Camp Hill , Pennsylvania (hereinafter the "Employer").

WITNESSETH:

WHEREAS, the Employer is engaged in the retail drug business; and

WHEREAS, the Union is a labor organization composed in pertinent part of

employees employed in the retail drug business and in other types of establishments from

time to time organized by the Union and has demonstrated to the Employer that it

represents a majority of its employees in the unit described herein; and

WHEREAS, the parties hereto desire to cooperate in establishing uniform

conditions of employment which will tend to secure to the employees a living wage and

eliminate unfair conditions of labor and to provide methods for a fair and peaceful

adjustment of all disputes that may arise between the parties hereto or between the

Employer and its employees;

NOW, THEREFORE, in consideration of the premises and the promises herein

contained, the Union and the Employer, each on its own behalf, agree as follows:

P.C.
icr
03

**ARTICLE 1**

**COVERAGE**

This Agreement shall be binding upon the Union, the Employer and its successors and assigns, but shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by Rite Aid Corporation (including, but not limited to those in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores), in the City of New York, and the New York Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and Rockland, and the City of Albany, and the New Jersey Counties of Passaic, Bergen, Essex, Hudson, and Union, and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in Middlesex County, New Jersey, regardless of the name or whether the drug store is operated individually or as a partnership or corporation.

All provisions of this Agreement shall apply to the previously listed New York counties of Orange, Putnam, Ulster, Dutchess, and Sullivan and the City of Albany, except that modifications to this Agreement affecting those counties shall be set forth in a written addendum attached to this Agreement as Schedule C by no later than December 31, 1998.

All provisions of this Agreement shall apply to the previously listed New Jersey counties, except staff pharmacists and supervising pharmacists shall be excluded from the bargaining unit in those counties. Other modifications to this Agreement affecting those counties shall be negotiated separately and shall be set forth in a written addendum attach to this Agreement as Schedule D by no later than December 31, 1998.

The Employer obligates itself to live up to the terms and provisions of this Agreement, and warrants that it will comply with the provisions of this Agreement

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

requiring contributions to the National Benefit Fund for Hospital and Health Care Employees and the National Pension Fund for Hospital and Health Care Employees, and the Union obligates itself in good faith for all of its members that it will live up to the provisions of this Agreement.

The words, "Employer" or "Employers," as and whenever used in this Agreement, and the pronouns, "he" and "his," used in connection therewith, are intended to and apply to the Employer, Rite Aid Corporation, and to each drug store covered hereunder, whether operated by an individual, copartnership or corporation.

The words. "employee" or "employees," as and whenever used in this Agreement, and the pronouns. "he" or "his," used in connection therewith, are intended to apply to each employee covered by this Agreement whether male or female, full-time or part-time.

The term, "drug store," as and whenever used in this Agreement, also includes and shall mean "retail drug store" and/or "pharmacy."

The term "retail drug business," as and whenever used in this Agreement, shall be interpreted to mean the business of operating drug stores and health and beauty aid stores as defined herein.

The term "health and beauty aid store," as and whenever used in this Agreement, shall be interpreted to mean a retail drug store without a pharmacy.

P.C.
ice
03

## ARTICLE 2

## RECOGNITION

The Employer hereby recognizes the Union as the sole and exclusive representative of all of the professional and nonprofessional employees of the Employer in the drug stores set forth in Article 1 hereof, but excluding guards, store managers, co-managers, pharmacy department managers, and supervisors as defined by the National Labor Relations Act, as amended, in respect to rates of pay, wages, hours and other conditions of employment. No provision included in this Agreement shall be applicable to an employee who is not in the aforesaid bargaining unit.

# ARTICLE 3

## UNION SHOP AND CHECK OFF

A.    All present employees of the Employer who are members of the Union shall maintain their membership in good standing in the Union as a condition of continued employment.

B.    All present employees who are not members of the Union shall become members of the Union thirty (30) days after the effective date of this Agreement, or after the execution of this Agreement, whichever is later, and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

C.    All employees hired after the effective date of this Agreement, shall become members of the Union no later than the 30th day following the beginning of such employment and shall thereafter maintain their membership in the Union in good standing as a condition of continued employment.

During each employee's 30-day orientation period, a management representative shall inform each such employee of his or her rights and obligations under this Article, and shall provide him or her with applicable Union, Benefit and Pension Fund forms for completion simultaneously with all other applicable employment forms.

D.    Upon written notice from the Union, the Employer will deduct all Union membership dues as set forth in the standard Local 1199 authorization form.  The Employer will be provided with a copy of said form executed by the employee.

E.    The Employer agrees to discharge from its employ, immediately, anyone of its employees upon notice from the Union that such employee has ceased to be a member in good standing of the Union by reason of his failure to pay the initiation fee and periodic

& Hubbard, P.C.
hniversity Place
York, NY 10003
12.471.8700

dues uniformly required as a condition of acquiring or retaining membership. The Employer agrees that the mailing of a certified notice to it at its address herein given shall be deemed sufficient notice under this Article.

F.    It is specifically agreed that the Employer assumes no obligation, financial or otherwise, arising out of the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions, or proceedings by any Employee arising from deductions made by the Employer hereunder for regular dues, initiation fees, or other amounts required by the Union to satisfy Union shop provisions of this Agreement.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

## ARTICLE 4

## HIRING

The Union has established an Employment Service to be administered and financed by the Union. Neither the Service in referring, nor the Employer in hiring, shall discriminate against an applicant because of membership or non-membership in the Union or any ground prohibited under this Agreement.

Within ninety (90) days of the execution of this Agreement, the parties agree to establish a joint committee for the purpose of strengthening the Employment Service to make it more effective.

& Hubbard, P.C.
University Place
York, NY 10003
12.473.8 00

**ARTICLE 5**

WAGE INCREASES

A.    For purposes of wage increases, minimum wages, bonuses and progressions, any part-time employee who works thirty-five (35) or more hours per week for eight (8) consecutive weeks shall thereafter be considered a full-time employee.  If such employee works less than thirty-five (35) hours per week for eight (8) consecutive weeks, he/she shall revert to part-time status.

B.    All nonprobationary employees who are on the payroll at ratification will receive the minimum wage set forth in Article 6 or the general wage increase listed below for October 11, 1998, whichever is greater.  Thereafter, the following percentage increases shall apply only to those employees who are paid more than the Minimum Wage schedule set forth in Article 6 due to either their seniority or their wage rate.  Said increases shall be calculated on the employee's rate in effect on the day before each general wage increase listed below:

| 10/11/98 | 12/10/99 | 12/10/00 | 5/1/02 |
|----------|----------|----------|--------|
| 5% | 5% | 4% | 5% |

The following are examples of the application of the foregoing:

(1)    A Pharmacy Technician who has been employed by the Employer for twelve (12) months and who is receiving $7.00 per hour immediately prior to the ratification date of this Agreement will, upon ratification, receive a five-percent (5%) increase to $7.35 per hour effective October 10, 1998. Thereafter, for the duration of this Agreement, this Pharmacy Technician would receive all scheduled progression increases but would not receive a general wage

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212-475-5700

**Page 8**

increase until May 1, 2002, when he or she would be above the progressions because of seniority.

      (2)    A Pharmacy Technician who has been employed for twelve (12) months and who is making only $6.00 per hour immediately prior to ratification will receive an increase to $7.00 per hour effective October 10, 1998, as the scheduled progression for an employee of that classification and experience. Thereafter, that Pharmacy Technician would receive the same increases as the Pharmacy Technician referred to in example (1) above.

C.    In addition, each employee employed on the ratification date of this Agreement and still employed as of December 31, 2000, shall receive a cash bonus of 1% of his or her year 2000 W-2 gross compensation, to be paid by January 31, 2001.

D.    In addition, the following bonuses shall be paid on or before April 1, 2000:

      1.    Each employee employed on the ratification date of this Agreement and on March 1, 2000, shall receive the following minimum bonus:

            a. Full-time: $500;

            b. Part-time: $250.

      2.    Each employee employed for at least one (1) year on March 1, 2000, shall receive the following minimum bonus:

            a. Full-time: $250;

            b. Part-time: $125.

E.    Part-time employees are guaranteed a minimum of four (4) hours of work per scheduled work day.

: Hubbard, P.C.
iiversity Place
ork, NY 10003
2.473.8700

## ARTICLE 6

### MINIMUM WAGES

A.     The following minimum salary wage is hereby established for the categories hereinbelow listed.

| CATEGORY | MINIMUM WAGE | | |
|---|---|---|---|
| | Effective 10/11/98 | | Effective 10/10/00 |
| Supervising Pharmacist: | $29/hr | | $30/hr |
| Registered Pharmacist: | $28/hr | | $29/hr |
| Graduate Pharmacist*: | $11/hr | | |
| Pharmacy Intern 4th Yr*: | $9/hr | | |
| Pharmacy Intern 5th Yr*: | $8/hr | | |
| Assistant Manager: | | | |
|    Less than 10 years | $8.75/hr | | |
|    10-15 years | $10.50/hr | | |
|    15 or more years | $11.75/hr | | |
| Pharmacy Technicians: | Effective 10/10/98 | Effective 12/26/99 | Effective 3/25/01 |
| At hire | $6.00/hr | $6.25/hr | $6.50/hr |
| After 6 months | $6.50/hr | $6.75/hr | $7.00/hr |
| After 12 months | $7.00/hr | $7.25/hr | $7.50/hr |
| After 18 months | $7.50/hr | $7.75/hr | $8.00/hr |
| After 24 months | $7.75/hr | $8.00/hr | $8.25/hr |
| After 30 months | $8.00/hr | $8.25/hr | $8.50/hr |
| After 36 months | $8.50/hr | $8.75/hr | $9.00/hr |
| After 5 years | $9.50/hr | $10.00/hr | $10.50/hr |
| After 10 years | $10.50/hr | $11.00/hr | $11.50/hr |
| After 15 years | $12.00/hr | $12.50/hr | $13.00/hr |

* Pharmacy students will be considered 4th, 5th years and graduate pharmacists upon receipt of letter from the college of attendance. Their appropriate rate increase will occur the first of the months following receipt of this letter.

Page 10

Stone & Hubbard, P.C.
23 University Place
New York, NY 10003
212 475 8700

| CATEGORY | MINIMUM WAGE | | |
|---|---|---|---|
| **Part-Time Clerks, Cashiers, and Any Other Classification Not Listed:** | Effective 10/10/98 | Effective 12/26/99 | Effective 3/25/01 |
| At hire | $5.65/hr | $5.80/hr | $6.00/hr |
| After 6 months | $6.00/hr | $6.20/hr | $6.40/hr |
| After 12 months | $6.25/hr | $6.45/hr | $6.65/hr |
| After 18 months | $6.50/hr | $6.70/hr | $6.90/hr |
| After 24 months | $6.75/hr | $7.00/hr | $7.20/hr |
| After 30 months | $7.00/hr | $7.25/hr | $7.45/hr |
| After 36 months | $7.50/hr | $7.75/hr | $8.00/hr |
| **Full-Time Clerks, Cashiers, and Any Other Classification Not Listed:** | Effective 10/10/98 | Effective 12/26/99 | Effective 3/25/01 |
| At hire | $6.00/hr | $6.00wk | $6.25/hr |
| After 6 months | $6.25/hr | $6.50/hr | $6.60/hr |
| After 12 months | $6.50/hr | $6.75/hr | $6.85/hr |
| After 18 months | $7.00/hr | $7.25/hr | $7.35/hr |
| After 24 months | $7.50/hr | $7.75/hr | $8.00/hr |

B.      In each of the aforestated periods, employees receiving salaries or wages less than the minimum provided for in Paragraph A hereof, shall be increased to said minimum. Employees receiving salaries or wages equal to or in excess of the minimum provided for in Paragraph A hereof, shall continue to receive their weekly salary or wages without reduction.

C.      The Employer shall pay to his employees the commission on merchandise which he receives from the manufacturers or distributors of such merchandise. The commission shall be paid to such employees only on such merchandise which the employees actually sell.

D.      Salaries or wages including overtime, if any, shall be paid at the end of each week. All monies due an employee shall be itemized on the pay check. Commissions and/or bonuses, whenever earned and whenever payable, to which an employee may be

: Hubbard, P.C.
iversity Place
rk, NY 10003
1.473.8700

entitled, shall not be deemed part of the weekly salaries or wages but shall be paid to said employees in addition to their weekly salaries or wages. Neither salaries or wages nor commissions and/or fixed bonuses shall be reduced except as provided in Article 14.

The employer shall make a good faith effort to break down accrued holiday, sick time and vacation time to which employees are entitled on pay checks.

E.    Pharmacists who are promoted to Supervising Pharmacist shall receive a $50.00 per week increase in their then present weekly wages, notwithstanding the amount of the Pharmacist weekly wages at the time of his/her promotion.

F.    The term "Key Person" is to be applied to those persons who are entrusted with the keys to a store for the purpose of normal openings and closings when the store manager is not available. A Key Person shall receive a $.50 per hour premium over the minimum hourly rate applicable on the rate at promotion or $7.00, whichever is greater, in addition to his base hourly rate during the time he serves as a Key Person.

G.    The Employer shall employ one (1) full-time (40-hour minimum) Bargaining Unit Supervising Pharmacist (or a Pharmacist paid at the rate of a Supervising Pharmacist) in each drug store where the Employer assigns a Prescription Department Manager.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

# ARTICLE 7

## HOURS OF WORK

A.    The work week for all full-time employees shall be forty (40) hours per week, spread over five eight hour days, subject to Article 5(A) hereof.

B.    All work by an employee, including a part-time employee, over and above eight (8) hours in any day and forty (40) hours in any week and all work by an employee, including a part-time employee, on the sixth work day in any week, shall be deemed overtime and shall be paid for at time and one-half the regular rate of pay.  However, for pharmacists hired after the ratification date of this Agreement, only work over and above forty (40) hours in any week and on the sixth work day in a week shall be deemed overtime and shall be paid for at time and one-half the regular rate of pay.

C.    For the purpose of computing overtime pay, in any week, a holiday to which an employee is entitled shall be deemed the equivalent of eight (8) hours work performed.

D.    Regular full-time employees shall receive not less than two (2) days off each week, such days off to include at least one (1) Sunday every two (2) weeks.  Further, each employee, shall in addition receive not less than one (1) evening off every week.

The Employer agrees that it is desirable to provide employees with two (2) consecutive days off each week and that he will endeavor to carry out this principle to the extent practical and possible in his sole discretion, it being understood that this particular provision shall not be subject to the arbitration machinery of this Agreement.

E.    Where an Employer employs only one Registered Pharmacist in a store which operates and is open for business on a full seven-day week basis, said employee may

Hubbard, P.C.
ersity Place
k, NY 10003
173.8700

Page 13

be required to work one full day during any one week, but not for more than thirteen (13) consecutive hours.

F.     The Employer shall adjust the work schedule of a Union Delegate, as necessary, to enable him to attend Union Delegate Assembly Meetings not to exceed thirteen (13) evenings a year.

G.     Should any dispute with respect to unpaid overtime arise and should the same be submitted to arbitration, the Impartial Arbitrator shall have the right to take into consideration whether or not the claimed overtime was authorized.

H.     All split shifts are hereby forbidden.

I.     Any claim for unpaid overtime compensation to which an employee may be entitled under the terms and provisions of this Agreement shall be deemed waived unless such claim is made within ninety (90) days from the date when such unpaid overtime compensation became due and payable.

J.     All breaks and lunch time shall be scheduled by the Manager no later than one hour after the beginning of each shift, except under unforeseen circumstances (e.g., a cashier calls in sick).

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

## ARTICLE 8

## VACATIONS

A.    All employees employed on the effective date of this Agreement shall receive a vacation with full pay during each calendar year as follows:  If at the time such vacation is taken an employee has been employed by the Employer and/or its predecessors one (1) year but less than four (4) years, two (2) weeks vacation; four (4) years but less than seven (7) years, three (3) weeks vacation; seven (7) years but less than twenty (20) years, four (4) weeks vacation; twenty (20) years or more, five (5) weeks vacation.  The improvements for employees with seven (7) years and twenty (20) or more years shall take effect March 1, 1999.

Employees employed after the effective date of this Agreement shall also receive the foregoing vacation pay, except that any such employee employed one (1) year but less than two (2) years shall receive one (1) week vacation, and any such employee employed two (2) years but less than four (4) years shall receive two (2) weeks vacation.

Part-time employees shall be entitled to vacation on the same basis as set forth above, but prorated in the proportion that their work hours bear to the full work-week in the category in which employed.

The Employer and the employees shall by mutual consent work out the vacation schedules for the ensuing calendar years in the December immediately preceding the respective calendar year.  The schedule shall be posted in the store no later than December 31 for the ensuing calendar year.

B.    Absence due to sickness or any other involuntary absence shall not affect an employee's entitlement to full vacation with pay if such absence does not exceed one (1)

week in case of employees with one year's employment; one (1) month in the case of

employees with two (2) years employment; two (2) months in the case of employees with

three (3) years employment; three (3) months in the case of employees with five (5) years

employment; four (4) months in the case of employees with seven (7) years employment;

and six (6) months in the case of employees with nine (9) years or more of service.

Any absence in excess of the allowance above provided for may be

deducted from vacation pay entitlement on a pro rata basis.

C.     Vacations may be taken at any time during the calendar year.  Vacation

pay shall be given to the employees at the time of their vacation.  Choice of time as to an

employee's vacation shall be on the basis of seniority, and the mutual consent of the

Employer and the employees. which shall not be unreasonably denied by the Employer.

However, in scheduling a third (3rd) or fourth (4th) week of vacation for those entitled

thereto, the Employer may make such third (3rd) or fourth (4th ) weeks discontinuous from

the first two (2) weeks. but no later than the end of the year in which the vacation accrues.

D.     Any employee who resigns or who is laid off prior to the vacation period

shall be entitled to pro rata vacation pay which shall be paid to such employee at the time of

resignation or lay-off.  Solely for the purpose of computing pro rata vacation pay under this

paragraph, the employees' anniversary date of hire shall be deemed the commencement of

the vacation year for all employees who have already received one or more vacations.  For

those employees who have not for any reason received theretofore a vacation, the date of

hiring shall be deemed the commencement of the vacation year.  Any employee who

resigns shall give his/her Employer one (1) week notice to entitle him/her to pro rata

vacation pay.  Employees who resign without notice or who are discharged for cause shall

not be entitled to pro rata vacation pay.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

E.       An employee who has not completed his qualifying period of employment for maximum vacation under the vacation schedule of this Agreement, and takes his vacation prior to such completion of the qualifying period of employment, shall be paid his earned vacation pay up to the start of his vacation and the balance upon completion of the qualifying period of employment.

F.       All regularly scheduled or regularly earned premium pay shall be included in the computation of vacation pay entitlement.

Hubbard, P.C.
iversity Place
rk, NY 10003
-F:3.8700

## ARTICLE 9

### HOLIDAYS

A.      Each employee on the payroll as of the effective date of this Agreement who has completed six (6) months of service shall be off with full pay on all holidays that the store is closed and in no event shall an employee be off on less than ten (10) holidays per year with full pay.

Employees on the payroll as of the effective date of this Agreement with less than six (6) months of service shall be scheduled off on holidays when the store is closed and provided with another day's work during the holiday week. Holidays should be observed at approximately equal intervals during the course of the calendar year.

Employees hired after the effective date of this Agreement shall be off with pay on the following number of holidays: three (3) months to one (1) year of service, six (6) holidays; second (2nd year) of employment, eight (8) holidays plus Birthday; third (3rd) year of employment and thereafter, ten (10) holidays plus Birthday.

All unused holidays in any one year shall be paid not later than January 15th of the next succeeding year, at time and one-half (1-1/2) at the then current rate. If the failure to take a holiday was at the employee's request, payment for such holiday shall be made at straight time.

In the month of October of each year, the Employer and the employees shall by mutual consent work out a holiday schedule for the ensuing one-year period. This schedule shall be posted in the shop no later than October 31st of each year.

B.      The holidays to which the employee shall be entitled hereunder shall be selected from among the following: Martin Luther King's Birthday (1/15), Lincoln's

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Birthday, Washington's Birthday, Easter Sunday, Decoration Day, Independence Day, Labor Day, Columbus Day, Election Day, Veteran's Day, Thanksgiving Day, Christmas Day, New Year's Day, the Employee's Anniversary Date of Employment and Personal Days. The employee may substitute Election Day for any of the holidays entered above. Choice of holidays from among those listed by an employee shall be on the basis of seniority and the mutual consent of the Employer and the employee. Once a holiday is designated, employees shall be required to work the regularly scheduled day before and after the holiday in order to be eligible for holiday pay, unless the employee has a justifiable excuse. The holiday schedule shall be so arranged that an employee shall receive not less than one-half (1/2) of his or her full allotment of the afore enumerated holidays with pay within each six (6) month period of each year.

C.      Should any of the enumerated holidays to which an employee is entitled, fall on his day off or during his vacation, such employee shall, in addition to his regular pay, be paid for such holiday. Should any employee be called in to work on any holiday to which he is entitled, he shall, in addition to this regular day's pay, be paid for such holiday at the rate of time and one-half his regular rate.

D.      Should a store be closed for Rosh Hashonna, Yom Kippur and/or Good Friday, the Employer may substitute these holidays, or any of them, in place of an equivalent number of the holidays hereinabove enumerated. Where a store is not closed on Rosh Hashonna, Yom Kippur and /or Good Friday, an employee shall have the right to substitute these holidays or any of them in place of an equivalent number of the afore-enumerated holidays.

Hubbard, P.C.
*iversity Place*
*rk, NY 10003*
*4˜3.8˜'00*

E.    Part-time employees shall be entitled to holidays with pay on the same basis as hereinabove set forth, but prorated in the proportion that their work hours bear to the full work-week under the category in which employed.

F.    All employees employed on the effective date of this Agreement shall receive their birthday off with their regular day's pay after one (1) year of service. Should an employee's birthday fall on their day off or during their vacations, they shall, in addition to regular pay, be paid for their birthday. Should an employee be called in to work on their birthday, they shall be given another day off with their regular pay within seven (7) days from their birthday.

## ARTICLE 10

### DISCHARGE OR LAY-OFF

A. No employee, including part-time employees, shall be discharged or laid-off, nor shall the working hours of any employee be reduced, except upon good and sufficient cause and only with the consent of the Union, which consent shall not be unreasonably withheld. However, the Employer may summarily discharge an employee for criminal or civil negligence, dishonesty, or sabotage, deliberate destruction of company property, unauthorized punching of a time card, falsification of a document, being under the influence of alcohol after one (1) warning, use or possession of illegal drugs (except in the performance of duties), or the possession of a weapon, which is hereafter referred to as "summary discharge." Should the Employer deem himself aggrieved because of the Union's refusal to consent to any discharge, lay-off, or reduction of working hours, of any employee, or should the Union deem itself aggrieved because of any summary discharge as hereinabove set forth, the dispute shall be submitted to arbitration as in hereinafter provided. Pending arbitration and rendition of a decision by the Impartial Arbitrator in all cases except where a "summary discharge" is involved, the employee(s) involved shall remain on their jobs. Should the Impartial Arbitrator find against the Employer on such "summary discharge," the employee(s) involved shall be reinstated in their positions with full back pay. In all cases except "summary discharge," or discharge or lay-offs under Paragraph B and/or C of this Article should the Union consent to a discharge, lay-off or reduction of working hours, or should the Impartial Arbitrator sustain the Employer in any such discharge or lay-off, the employee involved shall be entitled to one (1) week's notice or its monetary equivalent.

B.    If the employment of any employee is terminated by lay-off or discharge because of adverse business conditions or because of the discontinuance of business, closing or liquidation of the store, such employees shall be entitled to severance pay in accordance with the following length of service schedule (including service with the Employer's predecessors).

| Length of Service | Severance Pay |
| --- | --- |
| More than six (6) months and less than one (1) year | One (1) week's pay |
| One (1) year or more but less than two (2) years | Two (2) week's pay |
| Two (2) years or more but less than three (3) years | Three (3) week's pay |
| Three (3) years or more | Four (4) week's pay |

Such severance pay shall be deemed deferred earnings of the employees involved and, further, shall in all legal proceedings be deemed preferred claims.

Should the Union, in any of the situations referred to in the within Paragraph B, refuse to consent to a layoff or discharge of any employee or employees, the matter shall be submitted to arbitration in the manner hereinafter provided, and, if the Impartial Arbitrator sustains the Employer, the laid off or discharged employee or employees shall be entitled to severance pay as aforementioned. Such severance pay shall also be paid, of course, to any employee or employees to whose discharge or layoff the Union consents.

It is specifically understood and agreed that, where an employee's lay-off or discharge is due to the Employer's bonafide closing of his store, the Employer shall have

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Page 22

the right in any arbitration proceeding to interpose his financial inability to pay severance pay claims as a defense, which issue shall be determined by the Impartial Arbitrator.

If the employment of any employee is terminated by voluntary or involuntary bankruptcy or as a result of an assignment for the benefit of creditors, there shall accrue to such employee upon termination entitlement to severance pay in accordance with the above length of service schedule.

In the event of layoff or termination of employment, temporary or permanent, due to fire or other like disaster in a store, or because of the removal to a new location or remodeling of the store, the Employer shall pay severance pay to such affected employees in accordance with the above schedule in the following manner: for the first week a full week's pay; for the second and subsequent weeks in an amount equal to a full week's pay minus any amount received by the employee as unemployment insurance or wages on a new job.  Such payments shall be made until the total amount of severance pay entitlement has been received by the employee or until he returns to work, whichever occurs sooner.

C.    If an employee is discharged or laid off as the result of a bona fide sale of a business, the employee affected shall be entitled to the following severance pay:

| Length of Service | Severance Pay |
| --- | --- |
| Less than one (1) year | One (1) week's pay |
| One (1) year but less than two (2) years | Three (3) week's pay |
| Two (2) years or more but less than three (3) years | Four (4) week's pay |
| Three (3) years but less than eight (8) years | Six (6) week's pay |

Iubhard, P.C.
ersity Place
t, NY 10003
¯3.8¯00

For each additional two (2) years after six (6) years of employment with the Employer and/or his predecessors, the employee involved shall be entitled to an additional one (1) week's severance pay.

In the case of sale of store, Seller and Buyer shall be jointly and severally liable for severance pay.

D.    The rule of seniority shall apply to all discharges or layoffs under Paragraph B and/or C of this Article within the classification or category in which the employee is employed.

E.    Where an employee is discharged or laid off under Paragraph B and/or C of this Article, he shall, in addition to the severance pay provided above, be placed on a preferential list for a period of one (1) year from which vacancies or new positions in his classification or category may be filled by the employer.  Employees on such preferential list shall be rehired in the inverse order of their discharge or layoff so that the last one discharged or laid off shall be the first one rehired.  An employee so rehired shall be deemed restored to his seniority standing as of the time of his discharge or layoff, and his salary shall be the higher of (1) the minimum rate for the position at the time of reinstatement or (2) the salary received at the time he was discharged or laid off.

No worker shall be terminated due to bad inventory without just cause.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

## ARTICLE 11

### ANTI-DISCRIMINATION

The Employer will not discriminate against any employee or prospective employee because of his membership or activities in the Union or because of his race, color, creed, sex, age, national origin, disability, or political belief or affiliation.

; Hubbard, P.C.
niversity Place
ork, NY 10003
!.473.8°°00

## ARTICLE 12

### SENIORITY

A.      The employer recognizes and will apply the principle of seniority in all matters pertaining to the job.  Seniority shall be based upon the total length of employment with the Employer and/or its predecessors if employees of the predecessor were represented by the Union, subject to Article 10.  The last employee hired shall be the first laid off. Employees laid off shall be placed on a preferential list from which vacancies or new openings shall be filled and in the filling of vacancies or new openings employees shall be rehired in the inverse order of their layoffs at a salary which shall not be less than that received by them at the time of such layoff.  An employee's tenure on a preferential list shall terminate, if not rehired, at the end of one (1) year.  A layoff shall not be deemed an interruption of service for the purpose of this Agreement.

B.      Except for "Union leave of essence," as is below described in Article 21, any employee absent for any reason whatsoever for two (2) or more years shall be deemed terminated.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

# ARTICLE 13

## PROMOTIONS

A.      Should a promotional opening due to a vacancy or otherwise occur, preference shall be given for such position to the members of the Union in the store on the basis of seniority, provided in the judgment of the Employer, they are qualified to fill such position. The Employer's judgment in respect to an employee's qualifications shall be made without discrimination whatsoever. An employee promoted shall be on a four (4) weeks' probationary period to demonstrate his qualifications, and if not retained therein, shall be restored to his old position.

B.      A Supervising Pharmacist, Key Cashier or Assistant Manager who is demoted for just cause shall have removed from his rate of pay the differential which he or she is paid under the Contract for acting as such. A Supervising Pharmacist promoted after October 5, 1985, who is demoted for just cause, shall have $50.00 removed from his rate of pay.

C.      Employees promoted or transferred out of the bargaining unit shall have six (6) months to raise any contractual claims or grievances as a condition of the promotion or transfer. Thereafter, all such claims or grievances are barred. This will also apply to employees who are terminated for any reason.

*Hubbard, P.C.*
*versity Place*
*k, NY 10003*
*1 3.8 00*

## ARTICLE 14

### CONSCRIPTION

Notwithstanding anything to the contrary which may be set forth herein above, the Employer agrees to reinstate in his position, with all rights and privileges, including cumulative salary increases and seniority status, any employees who shall have volunteered or have been drafted into the United States Armed Services immediately upon his leaving such services, providing however, that such employees shall apply for reinstatement within ninety (90) days of leaving such service. In such event, the Employer, upon reinstatement of such employee, shall have the right to dismiss without severance pay an employee in the same category having the least seniority.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

## ARTICLE 15

## CONCESSION

A.     The Employer hereby agrees that it will not during the term of this Agreement grant a concession in any drug store to any person, firm or corporation or permit any person, firm or corporation to operate a concession in such drug store without the written consent of the Union.  The Union's refusal to grant its consent shall be conclusive and shall not be subject to arbitration, anything in this Agreement to the contrary notwithstanding.

The foregoing provision, with respect to the requirement of the Union's consent for the granting of a concession, shall not apply in any case where a concession has heretofore been granted and is in existence at the time of the execution of this Agreement.

B.     Should the Union consent to the Employer's grant of a concession, and in any situation where the grant of a concession by the Employer is not by Paragraph A hereof forbidden, it is specifically understood and agreed to that no more than one (1) concessionaire shall work in such concession.

Hubbard, P.C.
versity Place
k, NY 10003
873.8'00

## ARTICLE 16

## CLASSIFICATIONS

A.    A seniority list will be furnished to the Union by the Employer upon request for each store, which list sets forth the store number, the names of employees at the store, their classifications by category of work, their date of hire, their rate of pay and whether they are full-time or part-time. The Union shall have the right hereafter to go to arbitration to correct and rectify any inaccuracies that may appear on the seniority list.

B.    Where an Employer employs only one full-time or part-time employee and such employee's employment is terminated by resignation or discharge for cause (except when such discharge is due to the bona fide sale of the store where such employee works or the reduction of the working force due to adverse business conditions as heretofore provided), the vacancy created shall be filled forthwith in the same category and for at least the same number of hours.

C.    During the continuance of this Agreement, the classification of the employees or any of them shall not be changed, and no employee shall be transferred from one of the enumerated categories to another without the written consent of the parties, and no employee's salary shall be reduced except as provided in Article 13.

D.    Employees who were hired to work in a specific category but who have since been doing work that would bring them into another category, shall be reclassified and their salaries be fixed on the basis of this new category.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

## ARTICLE 17

## NO STRIKE OR LOCKOUT

During the term of this Agreement there shall be no lockout, or individual shop lockout by the Employer, or strike or individual shop strike or shop stoppage or boycott by the Union against the Employer for any reason or cause whatsoever so long as this Agreement is complied with in respect to submitting complaints, grievances and disputes to arbitration as herein provided and there is compliance with the decision of the arbitrator as herein provided.

There shall be no lockout, strike or stoppage pending the determination of any complaint, grievance or dispute.

*lubbard, P.C.*
*ersity Place*
*t, NY 10003*
*~3.8~00*

## ARTICLE 18

### NO INDIVIDUAL AGREEMENTS

The Employer agrees that it will not enter into any individual agreements, directly or indirectly, with any of its employees, whereby any of the provisions of this Agreement are modified or abrogated, and further, that during the continuance of this Agreement, it will not negotiate or enter into any agreement for the employment of pharmacists and/or any and all clerks working in drug stores covered by this Agreement with any organization, association or corporation claiming to be a labor union representing pharmacists and/or clerks working in drug stores, other than the Union, party to this Agreement.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

## ARTICLE 19

### UNION ACCESS TO PREMISES

Any authorized representative of the Union shall be permitted to enter the Employer's place of business during reasonable hours for the collection of dues, the adjustment of disputes and grievances, to communicate with its members and/or confer with the Employer, provided the same shall not involve the loss of work time; and the Union shall be further permitted, at its option, to appoint or elect one of the employees actually working in the Employer's place of business as a Union representative, for either or all of the aforementioned purposes.

# ARTICLE 20

## TRIAL PERIOD

The Employer may discharge a new employee during the trial period of sixty (60) days from the day such new employee has been engaged by the Employer.  Such a discharge shall not be subject to the grievance and arbitration procedure.

## ARTICLE 21

## UNION LEAVE OF ABSENCE

Any employee who shall accept a full time salaried position with the Union shall be entitled to a leave of absence and upon termination of his employment with the Union shall be reinstated in his position in the store with all rights and privileges including seniority status. It is specifically understood and agreed to that an employee on such leave of absence shall not during such leave of absence be entitled to vacation, holiday or severance pay, and that upon the return of such employee, the Employer shall have the right to dismiss, without severance pay an employee in the same category having least seniority.

The Union shall give two (2) weeks written notice prior to an employee's leave of absence for Union business. The employee may take such leave for a period of up to two (2) years

& Hubbard, P.C.
'niversity Place
York, NY 10003
12.473.8'00

# ARTICLE 22

## TRANSFERS

A.    The Employer shall not permanently transfer any of its nonprofessional employees from one of its stores to another without first receiving the written consent of the Union thereto.

B.    The Employer may transfer any employee on a temporary basis from store to store, for up to a maximum of ninety (90) days, provided that any such transfer is not discriminatory or made to impose a penalty, and provided further that such transfer does not result in a reduction of wages or earnings or a deprivation of other benefits.

C.    The Employer agrees to provide reasonable advance notice of any transfer of any employee, and, for Supervising Pharmacists and Staff Pharmacists, to provide a reason for any permanent transfer.

D.    An employee may request in writing to the District Manager a transfer to any open position for which the employee is qualified, and said request shall be granted by the Employer based upon the principles of seniority set out in Article 12 of this Agreement.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

## ARTICLE 23

## CHILD LABOR

The Employer agrees not to hire children under the age of sixteen (16) years at its store or stores.

; Hubbard, P.C.
iversity Place
ark, NY 10003
2.4″3.8″00

## ARTICLE 24

### SEVERABILITY

Should any Article, in whole or in part, of this Agreement, or any clause or provision therein, be adjudged invalid or unenforceable, the same shall not in any way whatever affect the balance of the Agreement.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

## ARTICLE 25

### PRIOR BENEFITS AND PRIVILEGES

All rights, privileges and benefits which have heretofore accrued to and have been enjoyed by the employees, and which are not inconsistent with the terms of this Agreement, shall continue unimpaired and shall continue to accrue to and be enjoyed as heretofore by said employees.

: Hubbard, P.C.
iiversity Place
ork, NY 10003
!.473.8~00

## ARTICLE 26

## NATIONAL BENEFIT FUND

A.    The Employer shall continue to contribute to the National Benefit Fund for Hospital and Health Care Employees, and shall make monthly payments based upon the previous month's payroll.  From the effective date of this Agreement through June 30, 1999, the contribution shall consist of a sum equal to 15.58% of the gross payroll of the Employees for the preceding month exclusive of the amounts earned by the Employees during the first four (4) months following the beginning of their employment, provided that on July 1, 1999, and each twelve (12) months thereafter the rate shall be adjusted, as determined by the Fund's actuary, to the level required to maintain all existing benefits including new benefits and a minimum one (1) month surplus (as defined in the Agreement between the Union and the Leage of Voluntary Hospitals), through the expiration of the Agreement.

Payments shall be due no later than thirty (30) days following the payroll month on which they are based.  By way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the 30th day of August.

Such payments shall be used by the Trustees of the Benefit Fund for the purpose of providing the Employees with social benefits, e.g., disability benefits, death benefits and hospital benefits as the Trustees of the said Fund may from time to time determine.

B.    Effective October 1, 1998, the Benefit Fund will implement the improvements set out in Schedule A, attached hereto.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

C.    If a payment of payments are not made in compliance with Section A above, the Employer shall, from and after the due date thereof, and until full payment of arrears is made, pay interest on such arrears at the rate of one and one-half percent (1 ½%) per month or the maximum permitted by law, whichever is less.

However, in cases where an Employer has voluntarily agreed to a verification of the amounts contributed to the Fund through an inspection of the payroll records of its Employees by a Certified Public Accountant retained by the Fund, the Employer shall not be obligated to make retroactive interest payments or payment of costs and expenses pursuant to Article 28, Paragraph C(3) where the Employer proves to the satisfaction of the Arbitrator designated under Article 28 that the principal amounts at issue were not contributed because of a genuine oversight by the Employer. In such a case, interest upon the principal amounts determined by the Certified Public Accountant retained by the Fund shall be due the Fund at the rate specified in the immediately preceding paragraph from and after the early of the following dates: (1) the date of the Award of the Arbitrator designated under Article 28; or (2) thirty (30) days following receipt of a written request for payment form the Fund which sets forth the amount claimed, and the basis upon which it has been determined.

D.    The National Benefit Fund shall be held and administered under the terms and provisions of the Agreement and Declaration of Trust, and any amendments thereof, which provides for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise of deadlock that may develop among or between said Trustees shall be submitted to arbitration before an Arbitrator or Umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

E.    It is agreed that the National Benefit Fund will provide disability benefits for the Employees covered by the Agreement, in accordance with the requirements of the New York State Disability Benefits Law. In view of the assumption of this obligation by the said Fund, the Employer agrees not to make any deductions from the covered Employees' wages on account of disability benefits. The National Benefit Fund will certify the assumption of this obligation in connection with disability benefits to the appropriate State agency and to the Employer.

F.    An independent audit of the National Benefit Fund shall be made annually and a statement of the results thereof shall be furnished to the Employer.

G.    The Trustees shall continue to provide Benefit Fund enrollment cards to the Employer in accordance with its prior practice.

H.    1999 EMPLOYMENT, TRAINING AND JOB SECURITY FUND. Effective upon suspension of Pension Fund contributions pursuant to Article 27(A) hereof, the Employer shall contribute to the 1199 Employment, Training and Job Security Fund and shall make monthly payments based upon the previous month's payroll. The contribution shall consist of a sum equal to .3% of the gross payroll of the Employees for the preceding month, exclusive of the amounts earned by Employees during the first four (4) months following the beginning of their employment, through the expiration of this Agreement. The Union and the Employer agree that the remaining provisions of the collective bargaining agreement between the Union and the League of Voluntary Hospitals governing the 1199 Employment, Training and Job Security Fund shall be binding on them and that such provisions shall be and hereby are incorporated herein by reference.

I.    1199 CHILD CARE FUND. Effective as of January 1, 1999, the Employer shall contribute to the 1199 Child Care Fund and shall make monthly payments

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Page 42

based upon the previous month's payroll. The contribution shall consist of a sum equal to .5% of the gross payroll of the Employees for the preceding month, exclusive of the amounts earned by Employees during the first four (4) months following the beginning of their employment. The Union and the Employer agree that the remaining provisions of the collective bargaining agreement between the Union and the Leage of Voluntary Hospitals governing the 1199 Child Care Fund shall be binding on them and that such provisions shall be and hereby are incorporated herein by reference.

J.    The Employer agrees that the provisions of this Article and Article 28 will continue in full force and effect in the event of any change in the name, composition or structure of the National Benefit Fund or the creation of any successor fund which assumes the responsibility to provide the same or similar health benefits to the Employees covered by this Agreement, which change or changes are consented to by a majority of the Union Trustees and a majority of the Employer Trustees from the New York District or by operation of law. In any event, all payment and other obligations referred to herein will be to the successor fund.

Hubbard, P.C.
iversity Place
rk, NY 10003
4 3.8 00