# ARTICLE 27

## PENSION FUND

A.    The Employer shall contribute to the 1199 Health Care Employees Pension Fund and shall make monthly payments based upon the previous month's payroll. Effective on the ratification date of this Agreement and through September 30, 2001, the contribution shall consist of a sum equal to six and twenty-five one-hundredths of a percent (6.25%) of the gross payroll of the Employees for the preceding month. Effective October 1, 2001, the contribution rate shall increase to six and seventy-five one-hundredths of a percent (6.75%) of the gross payroll of the Employees for the preceding month. Excluded from gross payroll shall be amounts earned by the Employees for the first two (2) months following the beginning of their employment for Employees employed within the two (2) months prior to ratification of this Agreement, and amounts earned by Employees for the first twelve (12) months following the beginning of their employment for Employees employed after ratification of this Agreement.

Payments shall be due no later than thirty (30) days following the payroll month on which they are based. By way of example, an August contribution shall be based on the payroll for the month of July and shall be made no later than the 30th day of August.

Such payments shall be used by the Trustees of the Pension Fund for the purpose of providing Pension or Retirement benefits for the Employees as the Trustees of the said Fund may from time to time determine.

During the term of this Agreement, contributions to the Pension Fund shall be suspended for ten (10) months according to a schedule determined by the Union and the League of Voluntary Hospitals based upon the recommendations of the Fund actuary.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

B.    If a payment or payments are not made in compliance with Section A above, the Employer shall, from and after the due date thereof, and until full payment of arrears is made, pay interest on such arrears at the rate of one and one-half percent (1 ½%) per month or the maximum permitted by law, whichever is less.

However, in cases where an Employer has voluntarily agreed to a verification of the amounts contributed to the Fund through an inspection of the payroll records of its Employees by a Certified Public Accountant retained by the Fund, the Employer shall not be obligated to make retroactive interest payments or payment of costs and expenses pursuant to Article 28, Paragraph C(3) where the Employer proves to the satisfaction of the Arbitrator designated under Article 28 that the principal amounts at issue were not contributed because of a genuine oversight by the Employer. In such a case, interest upon the principal amounts determined by the Certified Public Accountant retained by the Fund shall be due the Fund at the rate specified in the immediately preceding paragraph from and after the earlier of the following dates: (1) the date of the Award of the Arbitrator designated under Article 28; or (2) thirty (30) days following receipt of a written request for payment from the Fund which sets forth the amount claimed, and the basis upon which it has been determined.

The 1199 Health Care Employees Pension Fund shall be held and administered under the terms and provisions of the Agreement and Declaration of Trust, and any amendments thereof, which provide for equal representation by the Union and the Employer contributing to said Fund and that any dispute whatsoever that may arise or deadlock that may develop among or between said Trustees shall be submitted to arbitration before an Arbitrator or Umpire, except as may be otherwise provided for in said Agreement and Declaration of Trust, and his/her decision shall be final and binding.

Hubbard, P.C.
iversity Place
ork, NY 10003
1.473.8700

D.    Effective October 1, 1998, the Pension Fund will implement the improvements set out in Schedule B, affixed hereto.

E.    Such Fund at all times shall take whatever action is necessary to secure and retain approval of the U.S. Internal Revenue Service as a qualified pension fund.

F.    An independent audit of the 1199 Hospital and Health Care Employees Pension Fund shall be made annually and a statement of the results thereof shall be furnished to the Employer.

G.    The Employer's obligation with respect to contributions to existing pension plans and the Pension Fund established hereunder shall not exceed the greater of the contribution required hereunder or the present cost of such existing plans to the Employer per Employee. The parties shall meet to study existing pension plans for the purpose of protecting Employee rights thereunder and providing for an orderly transfer of Employees into the Pension Fund hereunder. Any disagreement regarding implementation of these provisions shall not be subject to arbitration hereunder.

H.    The Employer shall not withdraw from the Social Security Program.

I.    The Employer agrees that the provisions of this Article and Article 28 will continue in full force and effect in the event of any change in the name, composition or structure of the 1199 Pension Fund or the creation of any successor fund which assumes the responsibility to provide the same or similar health benefits to the Employees covered by this Agreement, which change or changes are consented to by a majority of the Union Trustees and a majority of the Employer Trustees from the New York District or by operation of law. In the latter event, all payment and other obligations referred to herein will be to the successor fund.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Page 46

## ARTICLE 28

## ENFORCEMENT

A.    The Employer shall submit regular monthly reports in such form as may be necessary for the sound and efficient administration of the Funds and/or to enable the Funds to comply with the requirements of Federal and applicable State law and for the collection of payments due pursuant to Articles 26 and 27 of this Agreement.

B.    The Employer agrees to make available to the Funds such records of Employees as classifications, names, social security number, days worked, and accounts of payroll and/or wages paid which the Funds may require in connection with the sound and efficient operation of the Funds or that may be so required in order to determine the eligibility of Employees for the Fund benefits, and to permit Accountants for the Funds to audit such records of the Employer.

C.    In the event that an Employer fails to make payment of contributions as required by Articles 26 and 27, there shall be prompt arbitration thereof before the Impartial Arbitrator designated under this Article. The Arbitrator is hereby empowered to:

(1)    direct the remedying of such violations up to the date of hearing that have not been cured;

(2)    direct that there be no further violations of such provision(s) of these Articles:

(3)    direct that the following amounts, being the reasonable costs and expenses in connection with each Fund arbitration proceeding, be paid to the Fund(s) by the Employer:

& Hubbard, P.C.
University Place
Tork, NY 10003
12.473.8 00

(a)    for an uncontested proceeding, the lesser of ten percent (10%) of the amount found due to each Fund or five hundred dollars ($500) to each Fund involved.

(b)    for a contested proceeding, the lesser of twenty percent (20%) of the amount found due to each Fund or one thousand dollars ($1,000) to each Fund involved.

(4)    In the event that an Employer fails to make payment of contributions as required by Articles 26 and 27, the Arbitrator shall also have the power to require the properly authorized agent of the Employer to sign a Confession of Judgment in the amount of the Award including interest, costs and expenses as herein above provided within ten (10) days from the issuance of the Award.

D.    By December 31, 1998, the parties shall designate as an Impartial Arbitrator to hear and determine any disputes which may arise between the parties with regard to payment of contributions and/or interest under Articles 26 and 27 and the enforcement thereof under this Article. Such arbitration shall be heard no later than ten (10) days after written request for arbitration is submitted to the Arbitrator. The Award of the Arbitrator shall be issued within five (5) days thereafter. In the event of a vacancy in this position for whatever cause, the parties shall expedite the selection of an arbitrator to fill the vacancy. If the parties are unable to agree, such disputes shall be handled in accordance with Article 31 until such time as the parties do agree on a replacement.

E.    In the event that the attorneys for the Fund(s) or the Union are required to move in court for confirmation of the Award or to oppose a stay and/or motion to vacate or set aside the Award in whole or in part, reasonable attorney's fees shall be imposed by the

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Court, if the Award is confirmed or the stay denied. Service of notices, papers, petitions, summonses or other process to enforce or confirm awards or judgments with respect to the collection of contributions to the Fund may be certified or registered mail.

F.    In the event that the Trustees of the Fund(s) have terminated benefit coverage or pension credits of Employee(s) because the Employer has failed to comply with the contribution requirements of Articles 26 and 27, then the Employer shall be directly liable to the affected Employee(s) for benefits to which the Employees would otherwise be entitled under the Funds; the amount may not be credited or offset by the Employer against the amounts due the Fund(s) under Articles 26 and 27. However, in the event that the Employer pays all past due contributions, interest costs and expenses as provided in this Article, it shall be entitled to a credit equal to sixty-five (65%) of the actual audited benefits paid directly, but shall in addition be liable for the costs of auditing such direct payments in the amount of fifteen percent (15%) of such amount.

G.    Employees elected or appointed as Trustees of the Benefit or Pension Fund shall be released by the Employer without pay to attend scheduled meetings of the Trustees.

& Hubbard, P.C.
niversity Place
'ork, NY 10003
2.473.8700

## ARTICLE 29

### SICK LEAVE AND OTHER LEAVES

A.     Employees shall be entitled to seven (7) days sick leave during the year with full pay at their regular salary or wages, same to be paid in full to the employees at the end of the week in which such sick leave is taken. Employees shall not be entitled to any paid sick leave during their first six (6) months of employment.

B.     Sick leave shall not be cumulative from contract year to contract year. All unused sick leave shall be paid to employees by January 15th of the next succeeding year. If the unused sick leave is paid after January 15, the Employer shall pay it at the then current rate.

C.     In each contract year each employee having six (6) months or more but less than one (1) year of employment with the Employer or his predecessors shall, in the event he is kept from work because of sickness or injury, be entitled to a prorated sick leave not to exceed three and one-half (3 1/2) days with pay at his regular salary or wages. Any such employee who is sick or disabled for a greater period than his accumulated sick leave entitlement shall be entitled to receive the extra days up to an aggregate maximum of three and one half (3-1/2) days as and when he completes his first year of employment and the Employer shall pay same to said employee periodically on the basis above provided. After one (1) year of employment such newly hired employees shall accrue sick leave on the basis of seven (7) days per year.

D.     Employees with less than six (6) months employment at the time of any sickness or injury shall not be entitled to any pay for sick leave resulting from sickness or injury.

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Employees who quit without notice or who are discharged for cause shall not be entitled to pay for any earned but unused sick leave.

The Employer may require proof of illness after three (3) days of consecutive sick leave.

E.  **Funeral Leave.**  In the case of death in the employee's immediate family (defined as parent, spouse, child, brother or sister) the employee shall be granted leave of absence with pay not to exceed a maximum of four (4) scheduled work days for the purpose of arranging for or attending the funeral.  Additional days of leave may be taken by the employee to be applied against the annual unused paid sick leave.

F.  **Jury Duty.**  The Employer shall pay to an employee, who has been employed six (6) months or more, the difference to a maximum of ten (10) working days between the jury fees paid to the employee at his regular straight time pay while he is required to be absent from his scheduled work because of jury duty, provided also that he shall request exemption from jury duty if he is entitled to such exemption.  Employees on jury duty who are not required to remain in the courthouse on any day shall be obligated to ascertain whether the Employer wishes him to return to his job to perform the balance of his regularly scheduled work day.

G.  **Rest Periods for Check-Out Clerks.**  Employees shall be entitled to a fifteen (15) minutes rest-period for each four (4) hours of work in any shift.

· & Hubbard, P.C.
University Place
York, NY 10003
'12.4˜3.8˜00

## ARTICLE 30

## THE PROFESSION

A.    It is hereby acknowledged that the foremost obligation of the profession is to the public. It is therefore essential that Employer and pharmacist join cooperatively in the strict adherence to the ethic and the body of laws and rules pertinent to the profession. Toward this end, proper and current information is required. Consequently, all new technical information, literature, periodicals and other matter related to the professional conduct of drug store operations should be rightfully and freely available to the pharmacist.

B.    The Employer agrees to provide, at his own cost and expense, insurance coverage which a reputable insurance carrier will issue, covering each pharmacist employed, and such insurance shall hold the pharmacist or pharmacists harmless from liability arising out of such pharmacist's professional duties. Upon request by the Union, the Employer is required to exhibit his policy to a Union representative.

C.    It is understood that it is the function of the Supervising Pharmacist to see to it that the rules and regulations governing the practice and operation of pharmacies in the State of New York are strictly observed. The Employer therefore agrees to consult with the Supervising Pharmacist concerning all matters relating to the practice of the profession of pharmacy and to cooperate with the Supervising Pharmacist in complying with all of the requirements required by law.

In the event that a Supervising Pharmacist becomes involved in proceedings before the State Board of Pharmacy or before any other regulatory governmental agencies or in a court action in connection with an alleged violation of a law or a rule or regulation governing the practice of pharmacy which was not committed by him

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

personally, but chargeable in his capacity as Supervising Pharmacist, the Employer agrees to make him whole for any loss of time or imposition of penalty resulting therefrom, provided that the employee has taken all reasonable and prudent precautions to inform the Employer and the employees of the laws, rules and regulations of the State Board of Pharmacy.

D.    After twenty (20) years of employment with the Employer, each employee shall be entitled to three (3) weeks of unpaid sabbatical leave, above and beyond all other paid leaves provided for in this Agreement.  Such leave shall be granted to the employee during his twentieth (20th) year of employment.

Hubbard, P.C.
iversity Place
rk, NY 10003
.473.8700

# ARTICLE 31

## GRIEVANCE AND ARBITRATION

A.    All complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement (herein referred to as a "grievance") shall be adjusted pursuant to the terms and conditions of this grievance and arbitration procedure.

STEP I:  An employee having a grievance and/or his Union Delegate or other representative shall take it up with the Store Manager of the employee's store at Step I within a reasonable time.  The Employer shall give its answer to the employee and/or his Union Delegate or other representative within ten (10) working days after the presentation of the grievance in Step I.

STEP II:  If the grievance is not settled in Step I, the grievance may be presented at Step II within ten (10) working days after receipt of the Step I answer. When a grievance is presented in Step II, it shall be reduced to writing, signed by the grievant and/or his Union Delegate, and presented to the Employer's Human Resources representative.  A grievance so presented in Step II shall be answered by the Employer in writing within thirty (30) calendar days after presentation.

A grievance concerning a discharge or suspension or a grievance affecting more than one employee may be presented initially at Step II in the first instance.

A grievance on behalf of the Employer may be presented initially at Step II by notice in writing addressed to the Union at its offices.

STEP III:  If the grievance is not settled in Step II, the grievance may be presented at Step III within thirty (30) calendar days after receipt of the Step II

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8?00

answer. When a grievance is presented in Step III, it shall be reduced to writing, signed by the grievant and his/her delegate, and presented to the Employer's Director of Labor Relations. A grievance so presented in Step III shall be answered by the Employer in writing within thirty (30) calendar days after presentation. Failure of the Employer to render its decision within said time limit shall result in default by the Employer, and the grievance shall be deemed granted by the Employer.

All time limits under this grievance procedure may be extended by mutual agreement.

STEP IV: ARBITRATION. If the grievance is not settled in Step III, the Union may refer and submit the grievance promptly to arbitration before an Arbitrator designated by the New York State Board of Mediation, located at 400 Broome Street, New York, New York 10013. The Award of the Arbitrator shall be final and binding upon all the parties herein.

The demand for arbitration shall concisely state the alleged breach of the Agreement and remedy sought.

The cost of the arbitration shall be shared equally between the Union and the Employer.

B.      Any such complaint, dispute or grievance shall be instituted by the Union or the Employer, as the case may be, and no right of action shall accrue in favor of any individual employees.

C.      The parties further agree that the Arbitrator shall fix the time and place for each hearing, and that notice thereof shall be sufficient if sent by ordinary mail at least five (5) days prior to the time fixed for the hearing.

D.   The decision of the Arbitrator shall have the effect of a judgment entered upon an Award and shall be enforceable under the Arbitration Law of the State of New York, or otherwise, entitling the entry of judgment in a court of competent jurisdiction against the defaulting party who fails to carry out or abide by the decision.

E.   It is expressly agreed between the parties that the oath of the Arbitrator is hereby waived.

F.   In the event of default by any of the parties under this Agreement in appearing before the Arbitrator after five (5) days' written notice by ordinary mail, as hereinabove provided, the Arbitrator is hereby authorized and empowered to render an Award upon the testimony of the appearing party.

G.   It is specially understood and agreed that any notice, papers, petition or other process necessary or proper on motion to confirm any award or for judgment on any award may be served either personally or by certified or registered mail directed to the last known address of the addressee or his attorney.

H.   All awards rendered by the Arbitrator shall be complied with within forty-eight (48) hours.

Should the Employer fail or refuse to submit any complaint, grievance or dispute to arbitration when requested to do so by the Union or shall fail or refuse to comply with the award of the Arbitrator as hereinabove provided, it shall automatically lose all rights and privileges under this Agreement and the Union shall be free to take any action it deems necessary to enforce the rights of the Union, and of the employees against the Employer, including striking and picketing.  Should the Union fail or refuse to submit any complaint, grievance or dispute to arbitration when requested to do so by the Employer or shall fail or refuse to comply with the award of the Arbitrator as provided above, the

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Employer shall be free to take any action which he deems necessary to enforce his rights against the Union and the employees.

I.     Any party who shall intentionally or deliberately violates any of the terms or provisions of this Agreement shall pay damages for such violation in a sum to be fixed by the Arbitrator; the proceeds of all damages collected hereunder shall be used towards defraying the expense incurred in maintaining the arbitration machinery.

J.     In any arbitration in which an employee has been disciplined or dismissed for violation of a Company policy, regulation or rule, the Company shall have the burden of proving that the employee was made aware of the policy, rule or regulation before the violation for which the employee was disciplined or dismissed.

Hubbard, P.C.
ersity Place
k. NY 10003
r3.8700

## ARTICLE 32

### UNION DECAL

The Union and the Employer shall establish a committee to jointly design an identifying Union decal. The Union shall supply each establishment covered by this Agreement with such an identifying Union decal which the Employer shall display during the term of this Agreement.

The decal shall be the property of the Union and may be removed by it, in which event the Union shall refund the amount of rental fee equal to the proportion of unused time still remaining and not used.

*Eisner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

## ARTICLE 33

### SHIFTS AND SHIFT DIFFERENTIALS

A.      Employees working on shifts on which their straight time ends after 12:00 midnight or begins prior to 6:00 A.M. shall receive a 75-cent hourly night differential for those hours worked after 12:00 midnight and/or before 6:00 A.M.

B.      Key Persons must be available to answer alarm calls.  However, no Key Person shall be disciplined for failure to answer such a call unless the Key Person has intentionally refused to answer said calls.  Any Key Person who answers such calls shall be paid his or her hourly rate for any and all time spent addressing the problem.

*lubbard, P.C.*
*ersity Place*
*, NY 10003*
*-73.8700*

## ARTICLE 34

## SECURITY SHOPPERS

A.      Each employee has the right to request representation by the Union during any disciplinary process, including security shopper interviews.

B.      The Employer and Union recognize the need for adequate security to ensure the employees' safety.  The Employer agrees to meet with the Union to discuss the need for security in high-risk situations.

C.      No Key Person or Assistant Manager shall be required to make bank drops or bank deposits after dark.  Any Key Person or Assistant Manager making a bank drop or bank deposit shall be accompanied by a security guard or manager, if available.  If possible, the manager or co-manager should make bank deposits.

sner & Hubbard, P.C.
'13 University Place
New York, NY 10003
212.473.8 00

# ARTICLE 35

## MANAGEMENT RIGHTS

Except as otherwise provided in this Agreement, the Employer retains all of its inherent management rights, including but not limited to the exclusive right to hire, direct, and schedule the working force; to plan, direct, and control operations; to promulgate reasonable rules and regulations; to introduce new or improved methods or facilities; and in all respects to carry out the ordinary and customary functions of management. It is understood that nothing contained herein will permit the Employer to violate any term or condition of this Agreement. The Company will provide the Union with copies of all published policies, rules and regulations, will advise the Union of new or changed rules or regulations before their implementation, and will negotiate in good faith with the Union to the extent such new or changed rules and regulations constitute terms and conditions of employment.

*thhard, P.C.*
*rsity Place*
*NY 10003*
*3.8˜00*

## ARTICLE 36

### SUCCESSORS AND ASSIGNS

The Employer's obligations under this Agreement shall also be binding upon its successors, assigns, purchasers, lessees, transferees, administrators, and executors. In the event an entire active or inactive operation, or a portion thereof, is sold, assigned, leased, transferred or taken over by sale, transfer, lease, assignment, receivership, or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. Corporate reorganization by the Employer, occurring during the term of this Agreement, shall not relieve the Employer of the obligation of this Agreement during its term.

The Employer agrees that in the event of any sale, assignment, lease, or transfer, or any combination thereof, of an entire active or inactive operation, or a portion thereof, assumption of the Employer's obligations under this Agreement by any purchaser, assignee, lessee, or transferee shall be made a condition of such sale, assignment, lease, transfer, or any combination thereof. Such assumption shall be in writing and in the form of the "Assumption Agreement" annexed hereto.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation, or a portion thereof, covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union, prior to the time the seller, assignee, transferee, or lessee executes a contract or transaction as herein described. The Union shall also be advised of the exact nature of the transaction, including terms ensuring compliance with this Article, at a time and in a manner so as not to prejudice the Union's ability to determine and ensure compliance

isner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

with this Article prior to the execution of any covered transaction. In the event the Employer fails to require the purchaser, assignee, transferee, or lessee to assume the obligations of this Agreement, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to require assumption of the terms of this Agreement. Transactions covered by this Article also include stock sales or exchanges, mergers, consolidations, spin-offs or any other method by which a business is transferred.

This provision shall not apply to sales of store(s) pursuant to an order of divestiture by an appropriate governmental entity and shall not apply to the sale of only a single store.

~ & Hubbard, P.C.
University Place
· York, NY 10003
?12.473.8700

## ARTICLE 37

## DURATION

This Agreement shall be in full force and effect and shall be and remain operative and binding upon the parties hereto, and their successors and assigns from the 11th day of October, 1998, up to and including the 10th day of October, 2002, and shall survive any change in name, reorganization or incorporation.

It is specifically understood and agreed to that should the Union, party to this Agreement, which is now affiliated to a national and international labor organization, become disaffiliated from the national and/or international labor organization at any time during the term of this Agreement, or should said Union thereafter become again affiliated with a national and/or international labor organization, then and in any such event or events this Agreement and the terms and provisions thereof shall continue in full force and effect as between the Employer and the Local Union as if no such affiliation or disaffiliation, as the case may be, had occurred.

isner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

AGREED and ACCEPTED:

RITE AID CORPORATION

Robert Souder, Senior Vice President
Date: 11/13/98

Lance Clark, Director of Labor Relations
Date: 11/12/98

1199 NATIONAL HEALTH AND HUMAN SERVICES EMPLOYEES UNION, SEIU, AFL-CIO

Dennis Rivera, President
Date: 11/13/98

Mike Rifkin, Executive Vice President
Date: 11/13/98

Yvonne Armstrong, Vice President
Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Page 65

Carla Verdecias

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Date:

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Page 66

**1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)**

**1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)**

4130 _Carol Sosa_
Date: NOV·13·98

4135 _Latisha Tigon_
Date: NOV · 13, 1998

4157 _Juan Carlos Garcia_
Date: 11·13·88

3848 _Lilian Sanchez_
Date: Nov 13, 1998
4215

4865 _Dalia Mtengo_
Date: 11/13/98

_Andrea Morris_
Date:                    Nov 13-98

4889 _____
Date: 1/13/98

(377) _Laura Rodriguez_ 11/13/98
Date: 11-13 98

_____
Date:

# 1711
_George Clinton_
Date: 11/13-98

4302 _____ Johnson
Date:

#4197
_Christopher Rodriguez_
Date: 11-13-98      #4869

_____ Graham
Date

_Jhirel Collins-Rivera_
Date: 11-13-98      4857

_____ #4798
Date

_Daniel Ramon Otero_
Date: 11-13-1998   #2703

_____ #4469
Date: 11-13-98

_Shantell Carcait_
Date:

ner & Hubbard, P.C.
13 University Place
ew York, NY 10003
212.473.8700

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

_Dahlia Reyes_ 3481
Date: 11-13-98

_Virginia D. Stefano_ 668
Date: 11-13-98

_Josefina Feliciano_ 743
Date: 11-03-98

_Mary Lou Walsh_ #4858
Date: 11-13-98

11/13/98 _Frances Ruiz_ #572
Date:

_Barbara Lima_ #4865
Date: 11/3/98

11/13/98 _Marcia Ortiz_ #1921
Date:

11/13/98 _Pamela Khetram_ #3385
Date:

11/13/98 _Luis Cubillos_ #3385
Date:

11/13/98 _Martha Negron_ 4428
Date:

11/12/98 _Anita Chones_ #2791
Date:

11/13/98 _Maria E Camacho_ #4584
Date:

11/13/98 _Jamie Peters_ (4805)
Date:

11-13-98 _Virginia Andino_ #4471
Date:

11/13/98 _Carmen Sweeney_ (4726)
Date:

11-13-98 _____ (4507)
Date:

11/13/98 _____ (3962)
Date:

11-13-98 _Kathy Mastrangelo_ (1692)
Date:

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

**1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)**

**1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)**

#4878
Date: 11/13/98 _Nancy Neumann_

#4435
Date: 11/13/98 _Laura Serio_

#4186
Date: 11/13/98 _Ingrid Arroyo_

3816
Date: 11/13/98 _Janellen Perez_

#424
Date: 11/13/98 _Heather M Halloway_

0687
Date: 11/13/98 _Daniel Thomas_

#3678
Date: 11/15/98 _Nidia Kelley_

(4605
Date: 11/13/98 _Eulice Fuller_

4664
Date: 11/13/98 _Monserrate Ruiz_

4876
Date: 11-13-98 _Veronica Meise_

#3869
Date: 11/13/98 _Theresa Brewster_

4876
Date: 11/13/98 _Deana Estrada_

3879
Date: 11/13/98 _Elfis Joy Schumis_

3814
Date: 111/3/98 _Josetti Williams_

564
Date: 11-13-98 _Barbara Olivieri_

4605
Date: 11/13/98 _Chester Edge_

(3879)
Date: 11/13/98 _Janette Claborn_

Date: 11/13/98

er & Hubbard, P.C.
1 University Place
w York, NY 10003
212.473.8700

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

11-13-98

_Betinele Alleyne_

Date:
4679

_Larniece Clemons_

Date: 11-13-98          -4805

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____


1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO (cont.)

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

Date: _____

_Eisner & Hubbard, P.C._
_113 University Place_
_New York, NY 10003_
_212.473.8700_

## <u>SCHEDULE A</u>

## BENEFIT FUND IMPROVEMENTS

1.    <u>Dental</u>: Comprehensive Dental Preferred Providers with no maximum and no co-pay (Member Choice enrollees only).

2.    <u>Lifetime Maximum</u>: The lifetime maximum shall be increased to $1,000,000.

3.    <u>Maximum Disability</u>: The maximum disability benefit shall be increased to $385 with 5% increase in all brackets.

4.    <u>Mental Health Allowance</u>: The following reimbursement rates shall apply for mental health: Psychiatric = $55 per visit; Psychologist = $45 per visit; Social Worker = $40 per visit.

5.    <u>Emergency Room Reimbursement</u>.  The reimbursement rate for emergency room care shall be $300.

6.    <u>Vision Care</u>: The vision care reimbursement shall be $75.

7.    <u>Chiropractor</u>: The chiropractor reimbursement shall be $35 per visit, with a cap of twelve (12) visits per year..

8.    <u>Disabled Retirees</u>: Disabled retirees shall receive NBF benefits prior to Medicare eligibility.

9.    <u>Retiree Health Benefits</u>: Pension Plan participants retiring at age 60 or later with ten (10) or more years of service will be eligible for regular Health Benefits at age 65.  In addition, benefits previously provided to Pension Plan participants retiring at age sixty-two (62) with twenty-five (25) years of vesting service shall be provided to those retiring at age sixty-two (62) with twenty (20) years of vesting service.

& Hubbard, P.C.
University Place
York, NY 10003
12.473.8700

10.    <u>Spouse Health Benefits</u>: Employees' spouses shall be entitled to continued retiree health coverage when the retired employee dies.

11.    <u>Full Death Benefits for Older New-Hires</u>: All employees hired after age 50 shall be entitled to full death benefits.

## SCHEDULE B

### PENSION FUND IMPROVEMENTS

A.  <u>COLA Increases for Current Retirees</u>.  All retirees shall receive a pension benefit increase of two percent (2%) on July 1, 1998; three percent (3%) on July 1, 1999; and two percent (2%) on July 1, 2000.

B.  <u>Early Retirement Benefit (62/20)</u>.  Employees who leave covered employment at age sixty-two (62) or later with twenty (20) years of service shall be entitled to unreduced retirement benefits.

C.  <u>Pre-Retirement Joint and Survivor Option</u>.  If an employee dies before retirement, the employee's spouse shall be entitled to receive all benefits due to the deceased employee at the time of the employee's death.  This option shall be provided at no additional cost to the employee or spouse.

D.  <u>Past Service Credit</u>.  All past service credits will be computed on 1980 earnings base.

E.  <u>Home Mortgage Program</u>.  Participants in the Pension Fund may borrow from the Pension Fund for housing mortgage purposes.

F.  <u>Retirement Incentive Plan</u>.  A retirement incentive plan will be implemented with the following two programs.

<u>Program A</u>.  The Employer shall pay $25,000 lump sum payment to 500 employees who qualify for the Plan.  Qualification will be based upon a combination of age and service, referred to as the "selection rank."  To qualify, an employee must be age 62 with twenty (20) years of service, or age 65 with five (5) years of

·& Hubbard, P.C.
University Place
York, NY 10003
12.473.8700

service. The election period shall be 90 days from formal announcement of the Plan. If not eligible for Program B, the participant in the Plan must leave employment within two months of election period.

Program B. The Employer shall submit a list of those classifications and/or departments it deems "at risk" immediately upon such determination. Employees in such "at risk" classifications/departments shall receive: (i) $25,000 as a lump sum or an amortized increase to regular monthly pension; (ii) if the participant is aged 55 through 65 with 10 years of service shall receive a medical benefit valued at approximately $3,6000 until age 65. As an alternative, the participant may receive a lump sum payment instead of medical benefits of: age 55-57 — $12,500; age 58-61 — $10,000; age 62-64 — $7,500.

Eisner & Hubbard, P.C.
115 University Place
New York, NY 10003
212.473.8700

## ASSUMPTION AGREEMENT

Dated: _____

The undersigned Employer, having purchased a drug store covered by the collective bargaining agreement between 1199 NATIONAL HEALTH AND HUMAN SERVICE EMPLOYEES UNION, SEIU, AFL-CIO, and RITE-AID CORPORATION, hereby agrees as follows:

1.  To assume and adopt the aforementioned collective bargaining agreement and to abide by and carry out the said agreement in all of its terms and provisions for the balance of the contract term.

2.  To pay any and all monies that may be due from the predecessor Employer to the National Benefit Fund, the 1199 Employment, Training and Job Security Fund, and/or the 1199 Child Care Fund under ARTICLE TWENTY-SIX of the aforementioned agreement or of any prior agreement, representing unpaid welfare contributions, and to the National Pension Fund under ARTICLE TWENTY-SEVEN of the aforementioned agreement or of any prior agreement, representing unpaid pension contributions, and any other indebtedness that may be due from said predecessor Employer arising out of the aforementioned agreement hereby assumed by the undersigned employer.

*isner & Hubbard, P.C.*
*113 University Place*
*New York, NY 10003*
*212.473.8700*

_____

**EMPLOYER**

APPROVED AND ACCEPTED:

1199 NATIONAL HEALTH AND HUMAN

SERVICE EMPLOYEES UNION, SEIU, AFL-CIO

BY: _____

Eisner & Hubbard, P.C.
113 University Place
New York, NY 10003
212.473.8700

Page 71



**Rite Aid Corporation**
(717) 972-3904

• **MAILING ADDRESS**
P.O. Box 3165
Harrisburg, PA 17105

• **GENERAL OFFICE**
30 Hunter Lane
Camp Hill, PA 17011

• **(717) 761-2633**

March 31, 1999

Mr. Mike Rifkin, Executive Vice President
Yvonne Armstrong, Vice President
NH & HSEU Local 1199
310 West 43rd Street
New York, NY 10036

Re:    Side letter for Schedules C and D
       of the 10/11/98 – 10/10/02
       Collective Bargaining Agreement

Dear Mike:

The following constitutes our agreement on matters raised during negotiations for Schedules C and D of the above referenced agreement which we agreed would be the subject of a "side letter".

• Rite Aid agrees to establish a non-matching 401(k) plan if a minimum of 33% of the then existing members of the bargaining unit apply for the benefit.

• Rite Aid agrees to continue its current policy with regard to Military Leave.

If the foregoing correctly reflects our agreement, please sign below where indicated and return the signed letter to me for our records.

Sincerely,

*Lance M. Clark*

Lance M. Clark
Director of Labor Relations

**ACKNOWLEDGED AND AGREED TO:**

_____    ____4/8/99____
Mike Rifkin                 Date
Exec. Vice President
NH & HSEU Local 1199

_____    ___4/7/99___
Yvonne Armstrong            Date
Vice President
NH & HSEU Local 1199

–76–

# Schedule C

Modifications to the Agreement affecting the New York counties of Orange, Putnam, Ulster, Dutchess, and Sullivan, and the City of Albany.

1. **Article 5 – Wage Increases**
   Article 5, as set forth in the Agreement, is replaced with the following:
   A. For purposes of wage increases, minimum wages, and progressions, any part-time employee who works thirty-five (35) or more hours per week for twelve (12) consecutive weeks shall thereafter be considered a full-time employee. If such employee works less than thirty-five (35) hours per week for twelve (12) consecutive weeks, they shall revert to part-time status.

   B. All pharmacy technicians and part-time cashiers with more than thirty-six (36) months service on the date of the increase, and all full-time cashiers with more than twenty-four (24) months service on the date of the increase, shall be entitled to the following across the board increases on the dates specified:

| 3/1/99 | 3/1/00 | 3/1/01 |
|--------|--------|--------|
| $.25   | $.25   | $.30   |

   C. All pharmacists shall continue to be paid as exempt salary employees. All pharmacists employed on the dates of the increase shall be entitled to the following increases based upon a corresponding hourly rate on the dates specified:

| 3/1/99 | 3/1/00 | 3/1/01 |
|--------|--------|--------|
| $.90   | $.95   | $1.00  |

   D. Part-time employees are guaranteed a minimum of four (4) hours of work per scheduled work day.

2. **Article 6 – Minimum Wages**
   Article 6, as set forth in the Agreement, is replaced with the following:
   A. The following minimum rate schedule and progression increases schedule are hereby established for the categories herein below listed. In each category, the employee shall receive the greater of the minimum rate or the monetary increase.

| Category | Minimum Rate 3/1/99 | Minimum Rate 3/1/00 | Minimum Rate 3/1/01 |
|----------|---------------------|---------------------|---------------------|
| Pharmacy techs (FT & PT) | | | |
| At hire | $5.50 | $5.75 | $6.00 |
| After 6 months | $6.00 or $.25 | $6.25 or $.25 | $6.50 or $.25 |
| After 12 months | $6.50 or $.25 | $6.75 or $.25 | $7.00 or $.25 |
| After 18 months | $7.00 or $.25 | $7.25 or $.25 | $7.50 or $.25 |
| After 24 months | $7.30 or $.25 | $7.55 or $.25 | $7.75 or $.25 |
| After 30 months | $7.65 or $.25 | $7.90 or $.25 | $8.00 or $.25 |
| After 36 months | $8.00 or $.25 | $8.25 or $.25 | $8.50 or $.25 |

| Category | Minimum Rate | Minimum Rate | Minimum Rate |
|---|---|---|---|
| **Full time clerks** | **3/1/99** | **3/1/00** | **3/1/01** |
| At hire | $5.50 | $5.50 | $5.75 |
| After 6 months | $5.75 or $.15 | $6.00 or $.15 | $6.10 or $.15 |
| After 12 months | $6.00 or $.15 | $6.75 or $.15 | $6.75 or $.15 |
| After 18 months | $6.50 or $.15 | $7.00 or $.15 | $7.00 or $.15 |
| After 24 months | $7.00 or $.15 | $7.25 or $.15 | $7.25 or $.15 |

| Category | Minimum Rate | Minimum Rate | Minimum Rate |
|---|---|---|---|
| **Part time clerks** | **3/1/99** | **3/1/00** | **3/1/01** |
| At hire | $5.30 | $5.40 | $5.50 |
| After 6 months | $5.45 or $.15 | $5.55 or $.15 | $5.65 or $.15 |
| After 12 months | $5.60 or $.15 | $5.70 or $.15 | $5.80 or $.15 |
| After 18 months | $5.75 or $.15 | $5.85 or $.15 | $6.00 or $.15 |
| After 24 months | $5.90 or $.15 | $6.00 or $.15 | $6.15 or $.15 |
| After 30 months | $6.05 or $.15 | $6.15 or $.15 | $6.30 or $.15 |
| After 36 months | $6.20 or $.15 | $6.30 or $.15 | $6.50 or $.15 |

B. Salaries or wages, including overtime, if any, shall be paid at the end of each week. All monies due an employee shall be itemized on the paycheck. Bonuses, whenever earned and whenever payable, to which an employee may be entitled, shall not be deemed part of the weekly salaries or wages but shall be paid to said employees in addition to their weekly salaries or wages. Neither salaries or wages nor fixed bonuses shall be reduced except as provided in Article 14.

C. Pharmacists who are promoted to Supervising Pharmacists following the ratification of this agreement shall receive a $50.00 per week increase in their then present weekly wages, notwithstanding the amount of the Pharmacist weekly wages at the time of his/her promotion.

D. The term "Key Person" is to be applied to these persons who are entrusted with the keys to a store for the purpose of normal openings and closings when the store manager is not available. A Key Person shall receive a $.50 per hour premium over the minimum hourly rate applicable on the rate at promotion, or $6.25, whichever is greater, in addition to his/her base hourly rate during the time he/she serves as a Key Person.

3. **Article 7 – Hours of work**
   Any language in Section B. of this Article, as it pertains to the Pharmacists covered under this Addendum, which is contrary to the treatment of Pharmacists as exempt salary employees is hereby deleted.

4. **Article 8 – Vacations**

Section A of Article 8, as set forth in the Agreement, is replaced with the following:

A. All employees employed on the effective date of this Agreement shall receive a vacation with full pay during each anniversary year as follows: If at the time such vacation is taken, an employee has been employed by the Employer and/or its predecessors one (1) year but less than two (2) years, one (1) weeks vacation; two (2) years but less than eight (8) years, two (2) weeks vacation; eight (8) years but less than sixteen (16) years, three (3) weeks vacation; sixteen (16) years but less than twenty (20) years, four (4) weeks vacation; twenty (20) years or more, five (5) weeks vacation.

Part-time employees shall be entitled to vacation on the same basis as set forth above, but prorated in the proportion that their work hours bear to the full work-week in the category in which employed.

The Employer and the employees shall by mutual consent work out the vacation schedules for the ensuing calendar years in the December immediately preceding the respective calendar year. The schedule shall be posted in the store no later than December 31 for the ensuing calendar year.

5. **Article 9 – Holidays**

Article 9, as set forth in the Agreement, is replaced with the following:

A. Each employee on the payroll as of the effective date of this Agreement who has completed six (6) months of service shall be eligible to be paid for the following holidays: New Year's Day, Martin Luther King's Birthday (as observed), Memorial Day, July Fourth, Labor Day, Thanksgiving, and Christmas Day.

Employees on the payroll as of the effective date of this Agreement with less than six (6) months of service shall be scheduled off on holidays when the store is closed and provided with another day's work during the holiday week.

B. All full-time employees are entitled to one (1) personal holiday after six (6) months service, one (1) personal holiday after twelve (12) months service, one (1) personal holiday after eighteen (18) months service, and two (2) personal holidays per anniversary year after twenty-four (24) months service. All part-time employees are entitled to one (1) personal holiday after twelve (12) months service, one (1) personal holiday after twenty-four (24) months service, and two (2) personal holidays per anniversary year after thirty-six (36) months service. There will be no carry over for the personal holidays from one period to the next. Once a holiday is designated, employees shall be required to work the regularly scheduled day before and after the holiday in order to be eligible for holiday pay, unless the employee has a justifiable excuse.

C. Should any of the enumerated holidays to which an employee is entitled, fall on his day off or during his vacation, such employee shall, in addition to his regular pay, be paid for such holiday. Should any employee be called in to work on any holiday to which he is entitled, he shall, in addition to this regular day's pay, be paid for such holiday at the rate of time and one-half his regular rate.

D. Part-time employees shall be entitled to holidays with pay on the same basis as herein above set forth, but prorated in the proportion that their work hours bear to the full work-week under the category in which employed.

6. **Article 25 – Prior Benefits and Privileges**
It is understood that the following benefits shall not be covered by Article 25, as set forth in the Agreement: The Rite Aid Matching 401(k) Plan, The Rite Aid Key Employee Profit Sharing Plan; any Rite Aid pension plans or other health or welfare plans; any existing Rite Aid management or professional incentive/bonus programs. However, the pharmacists covered by this Schedule shall be entitled to participate in any pharmacy incentive/bonus program to which the pharmacists covered by the Agreement are entitled.

7. **Article 29 – Sick Leave and Other Leaves**
Sections A, B, C, and D or Article 29, as set forth in the Agreement, are replaced with the following:
   A. Effective July 1, 1999, all full and part time employees with at least one (1) year of service shall receive one (1) sick day on that day. On the employee's next and subsequent anniversaries, they shall receive one (1) sick day per year of service, up to a maximum of three (3), to be used during their next anniversary year. There shall be no carry over of sick days from one period to the next. All unused sick leave shall be paid to the employees at the end of their anniversary year at the employee's then current rate. Employees with less than one (1) year of service on July 1, 1999 shall be entitled to their first sick day on their anniversary date.
   Part time employees shall receive pro-rated pay for all sick days.

8. **Article 31 – Grievance and Arbitration**
Revise Section A, Step IV of Article 31, as set forth in the Agreement, as follows:
   STEP IV: ARBITRATION. If the grievance is not settled in Step III, the Union may refer and submit the grievance promptly to arbitration before an Arbitrator designated by the American Arbitration Association. The Award of the Arbitrator shall be final and binding upon all parties herein.

Agreed and accepted this ___31___ day of ___March___, 1999.

RITE AID CORPORATION

1199 NATIONAL HEALTH AND
HUMAN SERVICES EMPLOYEES
UNION, SEIU, AFL-CIO

By:_~~Dave M Clark~~_

By:_~~Norna Amsky~~_ VP

By:_____

By:_~~Nile Righer~~_

Exec VP

# Schedule D

Modifications to the Agreement affecting the New Jersey Counties of Passaic, Bergen, Essex, Hudson, and Union, and the Cities of Edison, Perth Amboy, Carteret, and Woodbridge in Middlesex County, New Jersey.

1. All provisions of the Agreement relating to, referring to, or otherwise pertaining to pharmacists, including, but not limited to, Article 2, Article 7(E), Article 13(B), Article 22(C), Article 30, and the "side letter", are hereby deleted.

2. **Article 5 – Wage Increases**

Article 5, as set forth in the Agreement, is replaced with the following:

A. For purposes of wage increases, minimum wages, and progressions, any part-time employee who works thirty-five (35) or more hours per week for twelve (12) consecutive weeks shall thereafter be considered a full-time employee. If such employee works less than thirty-five (35) hours per week for twelve (12) consecutive weeks, they shall revert to part-time status.

B. All pharmacy technicians and part-time cashiers with more than thirty-six (36) months service on the date of the increase, and all full-time cashiers with more than twenty-four (24) months service on the date of the increase, shall be entitled to the following across the board increases on the dates specified:

| 3/1/99 | 3/1/00 | 3/1/01 |
|--------|--------|--------|
| $.25 | $.25 | $.30 |

C. Part-time employees are guaranteed a minimum of four (4) hours of work per scheduled work day.

3. **Article 6 – Minimum Wages**

Article 6, as set forth in the Agreement, is replaced with the following:

A. The following minimum rate schedule and progression increases schedule are hereby established for the categories herein below listed. In each category, the employee shall receive the greater of the minimum rate or the monetary increase.

| Category | Minimum Rate | Minimum Rate | Minimum Rate |
|----------|--------------|--------------|--------------|
| Pharmacy techs (FT & PT) | 3/1/99 | 3/1/00 | 3/1/01 |
| At hire | $5.50 | $5.75 | $6.00 |
| After 6 months | $6.00 or $.25 | $6.25 or $.25 | $6.50 or $.25 |
| After 12 months | $6.50 or $.25 | $6.75 or $.25 | $7.00 or $.25 |
| After 18 months | $7.00 or $.25 | $7.25 or $.25 | $7.50 or $.25 |
| After 24 months | $7.30 or $.25 | $7.55 or $.25 | $7.75 or $.25 |
| After 30 months | $7.65 or $.25 | $7.90 or $.25 | $8.00 or $.25 |
| After 36 months | $8.00 or $.25 | $8.25 or $.25 | $8.50 or $.25 |

| Category | Minimum Rate | Minimum Rate | Minimum Rate |
|---|---|---|---|
| Full time clerks | 3/1/99 | 3/1/00 | 3/1/01 |
| At hire | $5.50 | $5.50 | $5.75 |
| After 6 months | $5.75 or $.15 | $6.00 or $.15 | $6.10 or $.15 |
| After 12 months | $6.00 or $.15 | $6.75 or $.15 | $6.75 or $.15 |
| After 18 months | $6.50 or $.15 | $7.00 or $.15 | $7.00 or $.15 |
| After 24 months | $7.00 or $.15 | $7.25 or $.15 | $7.25 or $.15 |

| Category | Minimum Rate | Minimum Rate | Minimum Rate |
|---|---|---|---|
| Part time clerks | 3/1/99 | 3/1/00 | 3/1/01 |
| At hire | $5.30 | $5.40 | $5.50 |
| After 6 months | $5.45 or $.15 | $5.55 or $.15 | $5.65 or $.15 |
| After 12 months | $5.60 or $.15 | $5.70 or $.15 | $5.80 or $.15 |
| After 18 months | $5.75 or $.15 | $5.85 or $.15 | $6.00 or $.15 |
| After 24 months | $5.90 or $.15 | $6.00 or $.15 | $6.15 or $.15 |
| After 30 months | $6.05 or $.15 | $6.15 or $.15 | $6.30 or $.15 |
| After 36 months | $6.20 or $.15 | $6.30 or $.15 | $6.50 or $.15 |

B. Salaries or wages, including overtime, if any, shall be paid at the end of each week. All monies due an employee shall be itemized on the paycheck. Bonuses, whenever earned and whenever payable, to which an employee may be entitled, shall not be deemed part of the weekly salaries or wages but shall be paid to said employees in addition to their weekly salaries or wages. Neither salaries or wages nor fixed bonuses shall be reduced except as provided in Article 14.

C. The term "Key Person" is to be applied to these persons who are entrusted with the keys to a store for the purpose of normal openings and closings when the store manager is not available. A Key Person shall receive a $.50 per hour premium over the minimum hourly rate applicable on the rate at promotion, or $6.25, whichever is greater, in addition to his/her base hourly rate during the time he/she serves as a Key Person.

4. **Article 8 – Vacations**
   Section A of Article 8, as set forth in the Agreement, is replaced with the following:
   A. All employees employed on the effective date of this Agreement shall receive a vacation with full pay during each anniversary year as follows: If at the time such vacation is taken, an employee has been employed by the Employer and/or its predecessors one (1) year but less than two (2) years, one (1) weeks vacation; two (2) years but less than eight (8) years, two (2) weeks vacation; eight (8) years but less than sixteen (16) years, three (3) weeks vacation; sixteen (16) years but less than twenty (20) years, four (4) weeks vacation; twenty (20) years or more, five (5) weeks vacation.

Part-time employees shall be entitled to vacation on the same basis as set forth above, but prorated in the proportion that their work hours bear to the full work-week in the category in which employed.

The Employer and the employees shall by mutual consent work out the vacation schedules for the ensuing calendar years in the December immediately preceding the respective calendar year. The schedule shall be posted in the store no later than December 31 for the ensuing calendar year.

## 5. Article 9 – Holidays

Article 9, as set forth in the Agreement, is replaced with the following:

A. Each employee on the payroll as of the effective date of this Agreement who has completed six (6) months of service shall be eligible to be paid for the following holidays: New Year's Day, Martin Luther King's Birthday (as observed), Memorial Day, July Fourth, Labor Day, Thanksgiving, and Christmas Day.

Employees on the payroll as of the effective date of this Agreement with less than six (6) months of service shall be scheduled off on holidays when the store is closed and provided with another day's work during the holiday week.

B. All full-time employees are entitled to one (1) personal holiday after six (6) months service, one (1) personal holiday after twelve (12) months service, one (1) personal holiday after eighteen (18) months service, and two (2) personal holidays per anniversary year after twenty-four (24) months service. All part-time employees are entitled to one (1) personal holiday after twelve (12) months service, one (1) personal holiday after twenty-four (24) months service, and two (2) personal holidays per anniversary year after thirty-six (36) months service. There will be no carry over for the personal holidays from one period to the next. Once a holiday is designated, employees shall be required to work the regularly scheduled day before and after the holiday in order to be eligible for holiday pay, unless the employee has a justifiable excuse.

C. Should any of the enumerated holidays to which an employee is entitled, fall on his day off or during his vacation, such employee shall, in addition to his regular pay, be paid for such holiday. Should any employee be called in to work on any holiday to which he is entitled, he shall, in addition to this regular day's pay, be paid for such holiday at the rate of time and one-half his regular rate.

D. Part-time employees shall be entitled to holidays with pay on the same basis as herein above set forth, but prorated in the proportion that their work hours bear to the full work-week under the category in which employed.

## 6. Article 25 – Prior Benefits and Privileges

It is understood that the following benefits shall not be covered by Article 25, as set forth in the Agreement: The Rite Aid Matching 401(k) Plan, The Rite Aid Key Employee Profit Sharing Plan; any Rite Aid pension plans or other health or welfare plans; any existing Rite Aid management or professional incentive/bonus programs.

7. **Article 29 – Sick Leave and Other Leaves**

Sections A, B, C, and D or Article 29, as set forth in the Agreement, are replaced with the following:

A. Effective July 1, 1999, all full and part time employees with at least one (1) year of service shall receive one (1) sick day on that day. On the employee's next and subsequent anniversaries, they shall receive one (1) sick day per year of service, up to a maximum of three (3), to be used during their next anniversary year. There shall be no carry over of sick days from one period to the next. All unused sick leave shall be paid to the employees at the end of their anniversary year at the employee's then current rate.

Employees with less than one (1) year of service on July 1, 1999 shall be entitled to their first sick day on their anniversary date.

Part time employees shall receive pro-rated pay for all sick days.

8. **Article 31 – Grievance and Arbitration**

Revise Section A, Step IV of Article 31, as set forth in the Agreement, as follows:

STEP IV: ARBITRATION. If the grievance is not settled in Step III, the Union may refer and submit the grievance promptly to arbitration before an Arbitrator designated by the American Arbitration Association. The Award of the Arbitrator shall be final and binding upon all parties herein.

Agreed and accepted this ___31___ day of ___March___, 1999.

RITE AID CORPORATION

By: _____

By: _____

1199 NATIONAL HEALTH AND HUMAN SERVICES EMPLOYEES UNION, SEIU, AFL-CIO

By: _____

By: _____

5

Signature Page

Signed this 11 day of February 1999

Rite Aid Corporation                    Local 1199

Yvonne Almshy   VP

Laura Wellins 1199 OE

Sandra Bischoff

Marie Kennedy

Margaret Seymour

Eileen Knowlesae

Francisca Sierra

Jose N. Freeman

Patricia Williams

JoAnn McCoy

85-1199

– 6 –

Signature    (con't)

Rite Aid                    1199

Barbara Xa~

Jacqueline Phillips

Mer Garcia

Carla Verdecias

Bruce Gablena

PAGE.02          2124738705          MAR 04 '99 17:12

 **NATIONAL HEALTH & HUMAN SERVICE EMPLOYEES UNION, AFL-CIO**
310 West 43rd Street • New York, NY 10036-6407
Telephone 212/582-1890 • Fax 212/262-4985

November 12, 1998

**PRESIDENT**
Dennis Rivera

**SECRETARY-
TREASURER**
Phyllis Harris

**EXECUTIVE
VICE PRESIDENTS**
Norma Amsterdam
Aida Garcia
George Gresham
Sylvia Gutierrez-Grant
Gerald Hudson
Betty Hughley
Eustace Jarrett
Edward Kay
Steve Kramer
John Reid *
Michael Rifkin

**VICE PRESIDENT
AT LARGE**
Lenora Colbert
Occupational Safety and Health

**VICE PRESIDENTS**
Terry Alaimo
Edith Brown
James Crampton
James Crisafull
Angela Doyle
Patricia Harris
Inel King
Coramsha Mehr
Dalton Mayfield
Phyllis Mushkin
Gerald Nordenberg
Rona Shapiro
Clare Thompson
Nelson Valdez
Juan Vasquez
Carlton Yearwood

* Acting

**Via Facsimile and First-Class Mail**

Robert Souder
Senior Vice President
Rite Aid Corporation
30 Hunter Lane
Camp Hill, Pennsylvania

Re:    Side letter to 10/11/98-10/10/02
Collective Bargaining Agreement
between 1199 and
Rite Aid Corporation

Dear Bob:

The following constitutes our agreement on matters raised during negotiations for the above-referenced agreement which we agreed would be the subject of "side letters." An alleged violation of our agreement on any of the following matters is subject to the grievance and arbitration procedure contained in the collective bargaining agreement:

- The parties will meet prior to the date established for payment of the bonuses set forth in Article 5C of the Agreement to determine whether the amount of the bonuses should be changed based on the value of the five (5) month diversion as determined by the Pension Fund's actuaries

- The Employer will use its best efforts to provide sufficient training for Pharmacists to meet their continuing education requirements.

- Employees of the Employer who were formerly employed by Pathmark and remained employed by Rite Aid following its purchase of the store(s) in which said employees worked shall continue to receive the

–87–

PAGE.03    21247738705    MAR 04 '99 17:12

Page 2
Robert Souder
Senior Vice President
Rite Aid Corporation
November 12, 1998

wages that they received from Pathmark or those provided under this agreement, whichever are greater, and such employees shall be credited with seniority from their date of hire by Pathmark.

- In existing stores, the Employer will replace all Prescription Department Managers who leave or are terminated with a Supervising Pharmacist, subject to the willingness of the Supervising Pharmacist to accept certain additional responsibilities set forth hereunder. On or before December 31, 1998, the parties will agree in writing on the ordinary and customary job duties of a Supervising Pharmacist and on the additional responsibilities of a Supervising Pharmacist who replaces a Prescription Department Manger in an existing store.

- It is agreed that pharmacists employed on or prior to the ratification date of this Agreement shall receive overtime pay after eight (8) hours of work on any day. If such an incumbent pharmacist, during the first year of the Agreement, voluntarily chooses to receive overtime pay after forty (40) hours of work per week, such employee shall have the option, within the first six (6) months of work under such arrangement, to opt out of the said arrangement and to return to receiving overtime pay after eight (8) hours of work per day without any loss, change, or diminution of benefits, including seniority, as set forth in this Agreement and as enjoyed prior to voluntarily choosing to receive overtime after forty (40) hours per week.

- Vacations should not be taken during the period November 1 through December 31, except in cases of personal or family emergency.

- Should a federal or state law be enacted directing the Employer to contribute towards a health insurance benefit for the employees, the parties will negotiate in good faith on the impact of such law on the continuation or modification of the Employer's contribution to the 1199 National Benefit Fund.

- Should a New York state law change to permit payment of wages less frequently than each week, the Union and the Employer shall negotiate

2124738705                                    MAR 04 '99 17:12

NOV-13-98 FRI 12:52 PM  RITE AID HR DEPT        FAX NO. 717 731 3860        P. 02
                                                11/12 '98 18:25 NO.863  04/04

Page 3
Robert Souder
Senior Vice President
Rite Aid Corporation
November 12, 1998

in good faith over whether such pay period may be adopted by the Employer and incorporated in the collective bargaining agreement.

If the foregoing correctly reflects our agreement, please sign below where indicated and return the signed letter to me for our records.

Bob, it was a pleasure working with you, and we can justly be proud of the Agreement we have reached.

Sincerely,

VP President                                    Mike Rifkin
                                                Executive Vice President

ACKNOWLEDGED AND AGREED TO:

Robert Souder, Senior Vice President
Rite Aid Corporation

Date: 11/13/98