UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE          :
WORKERS EAST,                        :
                                     :
                                     :
               Plaintiff,            :
                                     :   07 cv. 04816 (GBD)
        -against-                    :
                                     :
RITE AID CORPORATION,                :
                                     :
               Defendant.            :
------------------------------------------------------------X

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ARBITRATION AND IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY ARBITRATION PROCEEDINGS

Scott B. Gilly (SG-6861)
THOMPSON WIGDOR & GILLY LLP
The Empire State Building
350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

- and –

Stephen M. Silvestri (*Admitted Pro Hac Vice*)
Stefan J. Marculewicz (*Admitted Pro Hac Vice*)
Laura Pierson-Scheinberg (*Admitted Pro Hac Vice*)
MILES & STOCKBRIDGE, P.C.
10 Light Street
Baltimore, MD 21202
Telephone: (410) 727-6464
Facsimile: (410) 385-3700

Counsel for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

I. INTRODUCTION ..................................................................................................................... 1

II. ARGUMENT ............................................................................................................................ 2

    A. Notwithstanding Its Assertions To The Contrary, The Union Continues To Pursue An Illegal Arbitration Demand. ............................................................................ 2

    B. To The Extent The Union Now Concedes That It Must Represent A Majority Of Employees In The Newly Acquired Stores In Order To Have A Viable Argument That The CBA Applies, The Union's Claims Are Not Arbitrable Because There Is No Dispute. ................................................................................................ 3

    C. The Union Cannot Rely Upon The 1998 Agreement As A Basis To Compel Arbitration Over Neutrality Because The 1998 Agreement Has Concluded ........... 4

    D. The Court Should Stay The AAA Proceeding Until Such Time As The Court Decides The Pending Outstanding Motions ....................................................... 7

III. CONCLUSION ........................................................................................................................ 8

I. **INTRODUCTION**

In its Memorandum in Support of its Motion to Compel Arbitration, the Union has again shifted its legal theory in an effort to compel its desired outcome. Instead of addressing key, relevant legal and factual issues, the Union simply insists that the Court rely on a general legal presumption of arbitrability to grant its Motion to Compel arbitration. For the following reasons, the Union's Motion to Compel should be denied, its Amended Complaint dismissed with prejudice, and Rite Aid's Motion to Stay granted.

- Notwithstanding assertions to the contrary, the cornerstone of the Union's arbitration demand remains Rite Aid's alleged "[f]ailing to apply contract to newly acquired stores." The Union's continued pursuit of that claim without majority support in an appropriate bargaining unit makes the arbitration demand unlawful and not arbitrable on its face.

- Assuming the Union now seeks to compel Rite Aid to apply the terms of the CBA once it lawfully gains recognition through a showing of majority support in an appropriate bargaining unit, there is no dispute for the Union to arbitrate, since it has at no time claimed it has majority support in an appropriate bargaining unit.

- The Union's failure to address Rite Aid's arguments concerning the alleged 1998 Neutrality Agreement, and the fact that it sought to arbitrate this case under Article 31 of the current CBA, and not the arbitration clause of the fully performed 1998 Neutrality Agreement, are an implicit acknowledgement by the Union that the terms of the latter do not apply to the new stores.

To avoid needless duplication of arguments and citations, Rite Aid adopts and incorporates its previously filed Memoranda in support of the Motions pending before the

Court.[1]

## II. ARGUMENT

### A. Notwithstanding Its Assertions To The Contrary, The Union Continues To Pursue An Illegal Arbitration Demand.

The Union continues to pursue an arbitration demand through which it seeks to remedy an alleged violation of the CBA by Rite Aid for "[f]ailing to apply contract to newly acquired stores and enjoining anti-union campaigns." D.I. 1, Affidavit of Laurianne D. Vallone ¶ 47, Ex. 12. The Union further asserts that "[t]he dispute involves violations of the CBA, by stating its [Rite Aid's] intent not to apply the CBA to newly-acquired stores that would result from a pending merger…" D.I. 1, Affidavit of Laurianne D. Vallone ¶¶ 47-48, Ex. 12-13. (demanding "arbitration with Rite Aid…over its breach and threatened breach of the parties' collective bargaining agreement… including 'Coverage,' as applied to Eckerd/Brooks stores that will be acquired by Rite Aid pursuant to the merger currently pending.")

The scope of the Union's arbitration demand has not changed since this case started. The American Arbitration Association ("AAA") continues to process the arbitration as characterized by the Union. The Union's conduct immediately preceding its arbitration demand makes clear that it wanted Rite Aid to apply the terms of the CBA to the newly acquired stores irrespective of the wishes of the employees. D.I. 15, Memorandum of Law in Support of Rite Aid's Motion to Dismiss at pp. 1-3. Moreover, the Union has done nothing to retract the statements made with respect to the automatic application of the CBA or explain its internal communications that clearly demonstrate its unlawful motives.

The Union's efforts to apply that clause to stores where the employees have not chosen

---

[1] Pending before this Court are Motions to Dismiss the original Verified Complaint, the Union's First Amended Complaint, and Rite Aid's Motion to Stay Arbitration. In those pleadings, Rite Aid has set forth in detail the basis for its position that the Union's demand for arbitration is not subject to arbitration and therefore not actionable. Rite Aid incorporates into this pleading by reference the arguments it has set forth in those pleadings.

2

the Union as their representative are geared toward reaching an illegal end. There is no factual dispute that the Union engaged in a comprehensive effort at the highest levels to coerce and threaten Rite Aid to automatically apply the CBA to the new stores without enjoying majority status. This arbitration is another step by the Union to further its effort to obtain an unlawful end. D.I. 15, Memorandum of Law in Support of Rite Aid's Motion to Dismiss at pp. 2-3 and 8-9 and cases cited therein.

      **B.    To The Extent The Union Now Concedes That It Must Represent A Majority Of Employees In The Newly Acquired Stores In Order To Have A Viable Argument That The CBA Applies, The Union's Claims Are Not Arbitrable Because There Is No Dispute.**

The Union does not have the legal or factual predicates necessary to establish the existence of a dispute over the after acquired stores clause that could be remedied by an arbitrator. In its brief, the Union asserts:

> "The Union <u>has not yet demanded recognition under the After-Acquired Clause</u> at any former Eckerd store, no less a store in which it does not have majority status, nor is the Union seeking to obtain recognition without majority status through the arbitration process. <u>Rather the Union simply seeks an award requiring the lawful enforcement of its bargained-for guarantee that upon a showing of majority status, Rite Aid will recognize the Union at and apply the CBA to the newly acquired stores</u>."

D.I. 34, Plaintiff's Memorandum of Law In Support of its Cross-Motion to Compel Arbitration and in Opposition to Defendant's Motion to Stay Arbitration at p. 10 (emphasis added)("D.I. 34, Plaintiff's Memo"). The Union seeks a remedy for an action that has not occurred. Since there is no demand for recognition based upon a lawful showing that a majority of employees in an appropriate unit have designated the Union as their representative, Rite Aid has no obligation to take any action under the CBA. The Union's morphed contention before this Court does not create a dispute the parties can arbitrate.

Indeed, the Union's acknowledgement that it wants the arbitrator to resolve a "dispute"

3

that has not yet occurred is contrary to the legal authority the Union relies upon to make its point. D.I. 34, Plaintiff's Memo at p. 7 (citing <u>Steelworkers Trilogy</u> cases as standing for the proposition that it is "national policy to encourage arbitration of labor <u>disputes</u>." (emphasis added)). The CBA that would be the basis of an order to arbitrate is limited to actual disputes. <u>See</u> D.I. 1, Affidavit of Laurianne D. Vallone ¶ 15, Ex. 1, Collective Bargaining Agreement article 31 (grievance procedure is for complaints and disputes). There is no policy that requires forcing a party to arbitration where there is no dispute under the parties' CBA.

### C. The Union Cannot Rely Upon The 1998 Agreement As A Basis To Compel Arbitration Over Neutrality Because The 1998 Agreement Has Concluded.

The terms the parties agreed upon demonstrate that the 1998 agreement was not intended to go beyond the Rite Aid stores that were non-union as of June 29, 1998, and once those stores became unionized in October of 1998, it was complete and no longer effective.

The 1998 agreement is limited on its face in both time and geographic scope. Rite Aid and the Union made an agreement "regarding neutrality and union access to those Rite Aid stores which **are currently** non-union." D.I. 25, Second Declaration of Niels Hansen ¶ 3, Ex. A (emphasis added). In other words, the language **only applied to stores that were non-union at the time the parties entered into the agreement**.

The Brooks and Eckerd stores acquired by Rite Aid in June of 2007, and at issue in the Union's arbitration demand here, were not Rite Aid stores in 1998. Moreover, not only did the contract expire automatically on October 31, 1998 by its terms, but once the Union was certified as the exclusive representative of Rite Aid employees in the then-"currently" non-union stores, the 1998 agreement was fully performed and there was no further purpose for the contract. Consistent with this fact, the parties entered into a collective bargaining agreement which formed

the foundation of the CBA that exists today. That CBA does not incorporate the expired 1998 agreement, nor does it in any way include a neutrality requirement for future organizing efforts.

Significantly, the Union does not use the 1998 agreement as the contractual foundation for its Motion to Compel arbitration. Rather, it has clearly stated in its demand that the contractual authority for the arbitration over neutrality appears in Article 31 of the CBA. See D.I. 1, Affidavit of Laurianne D. Vallone ¶¶ 47-48, Exs. 12-13. As has been amply set forth in prior pleadings submitted by Rite Aid, the Union does not have a basis for neutrality in the CBA, and its shifting theories highlight that fact.

The Union cites Abram Landau Real Estate v. Bevona, 123 F.3d 69 (2d Cir. 1997), as its authority for the premise that an arbitrator and not this court should decide whether the 1998 agreement expired. The Bevona decision is readily distinguishable.

In Bevona, the court enforced an arbitrator's award reinstating the employment of an employee who had been terminated four (4) months after the expiration date of a collective bargaining agreement with an evergreen clause.[2] Id. The court concluded that because the dispute was over an interpretation of that clause, and because the parties agreed such disputes were to be resolved by an arbitrator, it would not overturn the district court's decision to sustain the arbitrator's award. Id.

This case is fundamentally different from Bevona. There is no evergreen clause or anything remotely resembling an agreement to continue the terms of an agreement indefinitely. Instead, the temporal and geographic scopes of the 1998 contract were clearly limited by its

---

[2] An evergreen clause is a clause that continues the effectiveness of a collective bargaining agreement even after its termination until a new agreement is established. 123 F.3d at 71.

5

terms.[3] Further, the Union does not seek to arbitrate the dispute under the 1998 agreement, but rather under the CBA, which does not incorporate the 1998 agreement.

More recently, in Katz v. Feinberg, 290 F.3d 95 (2d Cir. 2002), the Second Circuit distinguished Bevona in a way that applies to the instant case. In Katz, the agreement at issue contained a broad arbitration clause, and a narrow clause that assigned certain questions to be resolved by an independent accountant. Id. at 97. The court concluded that the presence of the two clauses created an ambiguity which required the court to assign questions of arbitrability to the district court, and not the arbitrator. Id. Here, a similar ambiguity exists because the Union seeks to arbitrate the neutrality provision under one contract using the arbitration clause of another. How the two contracts interplay is a question that can only be resolved by the Court because it is unclear how an arbitrator empowered by one contract can have the authority to resolve matters that arise under another.

Moreover, given the fact that there is nothing in the CBA that can be construed to cover the matter the Union seeks to arbitrate, the Court should decide whether the issue is arbitrable, not the arbitrator. Contrary to the situation in Bevona, where nothing in the agreement can be construed to cover the dispute, it will not be deemed arbitrable by the courts. Local 807, Int'l Broth. of Teamsters v. Brink's Inc. et. al., 744 F.2d 283, 286-87 (2d Cir. 1984); *cited with approval in* Hotel & Rest. Employees Union, Local 217 v. J.P. Morgan Hotel, 996 F.2d 561, 565 (2d Cir. 1993); see also, Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206, 682 F.2d 301, 303-04 (2d Cir. 1982); Congreso de Uniones Industriales de Puerto Rico v. V.C.S. National Packing Co., Inc., 756 F.Supp. 69, 73-74 (D.P.R. 1991).

---

[3] This is the case, even if one were to disregard the cover page that the Union omitted from their original argument.

### D. The Court Should Stay The AAA Proceeding Until Such Time As The Court Decides The Pending Outstanding Motions.

The Union has made no argument preventing a stay of the current AAA proceeding pending a determination by this Court as to what, if anything, has to be arbitrated. The Union has failed to address any of Rite Aid's arguments in its Motion to Stay or to distinguish the cited case law supporting a stay.

Since the Union put the arbitrability of this matter before the Court by filing its Complaint and Amended Complaint, it should be ordered to wait for a determination on those claims before proceeding to arbitration.

Moreover, AAA continues to process the case over Rite Aid's objections because, in its view, "[t]he Union has met the filing requirements of the rules by filing of a demand for arbitration." D.I. 31, Ex. A Third Declaration of Hansen ¶ 10, Ex. 5. AAA is ignoring the proceeding before this Court without good reason. Even though it has authority to defer the proceeding or to place the issue of stay before the Arbitrator it appointed, AAA has indicated it will cease further processing only if stayed by order of the Court, or by agreement of the parties. Unless this Court orders a stay of the AAA proceeding pending determination of the merits of the parties' dispositive motions, Rite Aid will be forced into unnecessary simultaneous litigation over the same issues before an arbitrator, which are properly before this Court. This requires duplication of efforts, and a waste of time and resources. To force a party to arbitrate a matter not properly subject to arbitration constitutes "per se irreparable harm." Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365, 975 F.Supp. 445, 446-47 (E.D.N.Y. 1997)(citing Spear, Leeds & Kellogg v. Central Life Assurance Co., 879 F.Supp. 403, 404 (S.D.N.Y. 1995), *rev'd on other grounds*, 85 F.3d 21 (2d Cir. 1996)). "'[T]he time and resources [a party] would expend in arbitration is not compensable by any monetary award of

attorneys' fees or damages.'" Tellium, Inc. v. Corning Inc., 2004 WL 307238, at *3, (S.D.N.Y. Feb. 13, 2004)(No. 03 CIV. 8487(NRB))(quoting Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations, 107 F.3d 979, 985.

### III.   CONCLUSION

For the foregoing reasons and for the reasons set forth in Rite Aid's Memoranda In Support of its Motion to Dismiss, Reply, Motion to Stay, and in Response to the Order to Show Cause, Rite Aid respectfully requests that Plaintiff's Motion to Compel be denied, and that its Motion to Dismiss the Amended Complaint be granted. Furthermore, Rite Aid respectfully requests that this Court order a stay of the underlying arbitration proceedings until such time as this Court disposes of the instant suit.

Dated: July 23, 2007
      New York, New York

                Respectfully submitted,

                THOMPSON WIGDOR & GILLY LLP

By: _____
      Scott B. Gilly (SG-6861)

The Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001
E-mail: sgilly@twglawyers.com

- and -

Stephen M. Silvestri (*Admitted Pro Hac Vice*)
Stefan J. Marculewicz (*Admitted Pro Hac Vice*)
Laura Pierson-Scheinberg (*Admitted Pro Hac Vice*)
MILES & STOCKBRIDGE P.C.
10 Light Street
Baltimore, MD 21202
Telephone: (410) 727-6464
Facsimile: (410) 385-3700

Counsel for Defendant