UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE              :
WORKERS EAST,                            :
                                         :
                      Plaintiff,    :
                                         :    07 cv. 04816 (GBD)
    -against-                          :
                                         :
RITE AID CORPORATION,                    :
                                         :
                      Defendant.    :
------------------------------------------------------------X


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
RITE AID CORPORATION'S UNOPPOSED MOTION TO DISMISS**

Scott B. Gilly (SG-6861)
THOMPSON WIGDOR & GILLY LLP
The Empire State Building
350 Fifth Avenue, Suite 5720
New York, NY 10118
Telephone: (212) 239-9292
Facsimile: (212) 239-9001

- and –

Stephen M. Silvestri (*Admitted Pro Hac Vice*)
Stefan J. Marculewicz (*Admitted Pro Hac Vice*)
Laura Pierson-Scheinberg (*Admitted Pro Hac Vice*)
MILES & STOCKBRIDGE, P.C.
10 Light Street
Baltimore, MD 21202
Telephone: (410) 727-6464
Facsimile: (410) 385-3700

Counsel for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ................................................................................................................ 2

    A. Rite Aid's Unopposed Motion To Dismiss Should Be Decided As Addressed To The Amended Complaint. ................................................................................ 2

    B. Rite Aid's Unopposed Motion To Dismiss Warrants Dismissal Of The Amended Complaint For The Same Reasons As The Original Complaint ............ 4

        1. The Union's demand for arbitration is illegal and unenforceable because it seeks to apply the CBA without a showing of majority support .............. 4

        2. There is no current agreement that requires Rite Aid to maintain neutrality in the face of the Union's organizing efforts ............................... 5

III. CONCLUSION ............................................................................................................ 7

I.  **PRELIMINARY STATEMENT**

Plaintiff 1199SEIU United Healthcare Workers East (the "Union") commenced this action against Defendant Rite Aid Corporation ("Rite Aid"), as well as recently dismissed Defendants The Jean Coutu Group (PJC), Inc. and The Jean Coutu Group USA, Inc. ("Coutu Group"). In its original Complaint, the Union sought a declaration that Rite Aid's refusal to apply the terms of its collective bargaining agreement ("CBA") to newly acquired stores, as well as Defendants' alleged "union avoidance campaign," were arbitrable disputes and requested a preliminary injunction in aid of arbitration. All Defendants moved to dismiss this action on several independent grounds.[1]

After securing a stipulated extension of time "to submit its Opposition to Defendants' Motion[s] to Dismiss" by July 13, 2007, the Union filed no Opposition. Instead, on July 16, 2007, the Union filed a First Amended Complaint that tracks the allegations of the original Complaint with only two substantive exceptions:

- the Amended Complaint abandons any request for preliminary injunctive relief; and

- the Amended Complaint newly alleges –merely "upon information and belief" - the existence of a current neutrality agreement between the Union and Rite Aid.

See D.I. 32, Amend. Compl. ¶¶ 16-19. Nothing in the Amended Complaint cures the fundamental legal deficiencies that warranted dismissal of the original Complaint. Specifically, the Union's action still must be dismissed for the same reasons established in Rite Aid's moving papers: (1) the Union's demand for arbitration is unenforceable because it seeks an illegal application of the CBA to employees prior to a showing of majority support; and (2) there is no

---

[1] The motion to dismiss filed by the Coutu Group is now moot because the Union has conceded the Coutu Group's dismissal from this action by not naming them as defendants in the First Amended Complaint. The Coutu Group Defendants are now dismissed from this action.

current agreement with Rite Aid to arbitrate such issues. Accordingly, the Court should dismiss the Amended Complaint in its entirety with prejudice.

## II. ARGUMENT

### A. Rite Aid's Unopposed Motion To Dismiss Should Be Decided As Addressed To The Amended Complaint.

When, as here, a plaintiff files an amended complaint that suffers from the same defects as the original and does not change the legal theories underlying a pending motion to dismiss, federal courts will consider the motion as being addressed to the amended complaint. See, e.g., Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 570 (E.D. Va. 2004), aff'd, 141 Fed. Appx. 129 (4th Cir. 2005); Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 641 (E.D. Pa. 1999); Sun Co., Inc. v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 367 n.3 (E.D. Pa. 1996); see also 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 at 556-58 (2d ed. 1990) (recognizing federal courts follow this practice because "to hold otherwise would be to exalt form over substance").

Here, the Court should grant Rite Aid's motion to dismiss because the Union's Amended Complaint does not cure the legal deficiencies that warrant dismissal of this action. Specifically, neither of the two substantive changes contained in the Amended Complaint in any way alter the legal defects present in the Original Complaint or the legal theories underlying Rite Aid's motion to dismiss.

First, the abandonment of the Union's request for preliminary injunctive relief does not address, let alone cure, the grounds for dismissal set forth in Rite Aid's Motion to Dismiss. The legal arguments supporting dismissal of this action apply with equal force whether the Union is seeking a preliminary injunction or an order to compel arbitration. In both cases, the Union must establish the existence of a valid dispute subject to arbitration. As discussed below, the Union

has failed to allege a basis for finding an arbitrable dispute under either the CBA or any current neutrality agreement. This omission in the Amended Complaint is as fatal to the Union's case as it was in the original Complaint – regardless of the different remedies being sought by the Union.

Second, the "new allegations" concerning an expired 1998 neutrality agreement likewise do not cure the grounds for dismissal of this action. The Union now relies upon the alleged existence of a neutrality agreement outside of the CBA itself, abandoning the allegation in its original Complaint that a neutrality obligation was somehow an implied term of the CBA. The Union's shifting contract theories defy common sense – why would the Union would have negotiated a separate neutrality agreement in 1998 if, all along, a neutrality obligation truly existed within the CBA itself? It also defies common sense that the Union would have initiated a lawsuit arguing a quasi-contract theory when it could have relied on an alleged actual contract from the start.

The expired 1998 neutrality agreement on which the Union now relies is inapplicable on its face. The tentative and unverified nature of the Union's allegations alone is telling of the lack of validity of its argument that this document remains in effect to this day. <u>Despite having access to the very Union officials who negotiated the 1998 agreement, the Union has pled merely "upon information and belief" that this document is currently in force.</u> Moreover, there is not a single <u>fact</u> alleged in the Amended Complaint to support the Union's conclusory allegation that "[u]pon information and belief the Neutrality Agreement is currently in full force and effect." D.I. 32, Amend. Compl. ¶ 19. It is incumbent on the Union –when the very officials who negotiated the 1998 agreement have verified allegations in the original Complaint and given supporting affidavits throughout this proceeding – to allege <u>facts</u> sufficient to conclude that a current neutrality agreement exists. Based upon the absence of such <u>factual</u> allegations in the

3

Amended Complaint and the deficiencies contained within the 1998 agreement itself, this Court may properly consider and resolve whether this document is a current neutrality agreement on this Rule 12 motion. See, e.g., Subaru Distribs. Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."); BS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472, 476 (S.D.N.Y. 2007) ("[A] court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit. In addition, even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").

### B. Rite Aid's Unopposed Motion To Dismiss Warrants Dismissal Of The Amended Complaint For The Same Reasons As The Original Complaint.

#### 1. The Union's demand for arbitration is illegal and unenforceable because it seeks to apply the CBA without a showing of majority support.

The first alleged arbitral dispute claimed by the Union in its Amended Complaint is Rite Aid's supposed violation of the after-acquired stores clause. As set forth in Rite Aid's moving papers, the Union has attempted to automatically apply the terms of the CBA to the employees working in the newly acquired Brooks and Eckerd stores despite the fact that these employees have not designated the Union to be their bargaining representative. D.I. 15, Dismissal Mem. at pp. 2-3, 8-9. The Union has attempted to achieve this unlawful outcome both in direct communications with new Rite Aid employees and through the Union's demand for arbitration at

4

issue here. Id. This conduct violates the core principles of the National Labor Relations Act and is the subject of a nearly completed investigation of Rite Aid's unfair labor practice charges by the National Labor Relations Board. As such, the Union's demand for arbitration is illegal and any arbitration award granting the relief that it seeks would be unenforceable as a matter of law. Id. at pp. 4-5 (citing authorities).

Moreover, to the extent that the Union has reversed course again and now concedes that it must demonstrate majority support among the employees it will be seeking to represent, there is no dispute to arbitrate. Nowhere has the Union alleged that it actually has majority support in an appropriate bargaining unit; nor has it alleged that it has offered to present evidence of such support to Rite Aid; nor has it alleged that Rite Aid has refused to consider evidence of majority support and apply the CBA to any group of employees who have expressed majority support for the Union; nor has it alleged that Rite Aid threatened to violate the after-acquired store provision of the CBA. Absent at least one of these events being alleged has having happened, there is no dispute under the after-acquired stores clause of the CBA to be arbitrated. When no arbitrable dispute exists, there is no basis to compel arbitration. Accordingly, the Union's claim in the Amended Complaint seeking to compel arbitration of this non-existent dispute must be dismissed.

### 2. There is no current agreement that requires Rite Aid to maintain neutrality in the face of the Union's organizing efforts.

In addition to the illegality of the Union's arbitration demand, there is no current neutrality agreement in effect between the Union and Rite Aid and, thus, there can be no neutrality dispute subject to arbitration. The absence of any neutrality obligation in the CBA is now indisputable given not only the complete absence of any language in the CBA that even remotely resembles a neutrality commitment, but also the fact that the Amended Complaint

5

shows the Union's implicit acknowledgement of the absence of a neutrality requirement in the CBA by alleging the existence of a separate neutrality agreement apart from the CBA.

The last minute "discovery" of an expired and inapplicable 1998 agreement does not render the Union's 2007 demand arbitrable. The neutrality agreement referenced in the Amended Complaint expired by its terms on October 31, 1998. The cover sheet to that document was signed on the <u>same</u> day by the <u>same</u> individuals. It required that both the recognition process, as well as the terms and conditions of the collective bargaining agreement to be negotiated, "shall be completed by October 31, 1998."

The alleged neutrality agreement by its expired terms covered only stores that existed and were non-union at the time the agreement was signed. The operative language covers only "those Rite Aid stores which are <u>currently non-union</u> ("the Non-union Stores") and the process by which 1199 may obtain status as collective bargaining representative of the employees in the Non-union stores." D.I. 25, Second Declaration of Niels Hansen ¶ 3, Ex. A. (*emphasis added)*. There is no reference to stores Rite Aid would or may acquire sometime in the future, and the unambiguous use of the term "currently" precludes the expansion the Union now seeks.

The narrow limitations of this document are further evidenced by the fact that it outlined a comprehensive recognition process – not just limited to neutrality on Rite Aid's part. <u>Id.</u> It also referenced other key rights including access, card check procedure, and recognitional picketing, among other things. <u>Id.</u> Moreover, the parties successfully negotiated and executed a new collective bargaining agreement covering all Rite Aid stores then in existence by the October 31, 1998 deadline set forth in the agreement itself. The agreement, therefore, not only expired by its terms on October 31, 1998, but also concluded as the result of complete performance by that date because the Union obtained representation rights for the employees of

6

all Rite Aid stores that existed in the limited geographic area defined at that time. Id.

In addition, the CBA involved stores outside the geographic coverage of the 1998 agreement. A comparison of the geographic jurisdictions of the two agreements confirms that the scope of the 1998 agreement was discrete and finite in terms of time and geography. Compare CBA § 1.1 (geographic coverage), with 1998 Agreement § 3 (geographic coverage). Once that time period passed, and those people became represented by the Union, the agreement ended because it was fully performed. It cannot possibly be interpreted to have continuing effect in geographic areas beyond those listed in the agreement itself.

Finally, there is no basis to find any agreement on the part of Rite Aid to arbitrate the Union's alleged neutrality dispute. The 1998 agreement contained its own arbitration provisions that were in effect before that agreement expired, which were separate and apart from the arbitration provisions of the CBA. Any asserted dispute under the 1998 agreement, therefore, is not arbitrable under the separate arbitration machinery in the CBA. Accordingly, there not only is no current neutrality agreement but there also is no current agreement to arbitrate any alleged dispute under the 1998 agreement.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in Rite Aid's motion to dismiss, Rite Aid requests that this Court grant its motion to dismiss the First Amended Complaint.

Dated: July 23, 2007
    New York, New York

        Respectfully submitted,

        THOMPSON WIGDOR & GILLY LLP

        By: _____
            Scott B. Gilly (SG-6861)

        The Empire State Building
        350 Fifth Avenue, Suite 5720
        New York, New York 10118
        Telephone: (212) 239-9292
        Facsimile: (212) 239-9001
        E-mail: sgilly@twglawyers.com

        - and –

        Stephen M. Silvestri (*Admitted Pro Hac Vice*)
        Stefan J. Marculewicz (*Admitted Pro Hac Vice*)
        Laura Pierson-Scheinberg (*Admitted Pro Hac Vice*)
        MILES & STOCKBRIDGE, P.C.
        10 Light Street
        Baltimore, MD 21202
        Telephone: (410) 727-6464
        Facsimile: (410) 385-3700

        Counsel for Defendant