UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE      :
WORKERS EAST,                    :
                                 :
        Plaintiff,              :      07-Civ.-4816 (GBD)
                                 :
        v.                      :
                                 :
RITE AID CORPORATION             :
                                 :
        Defendant.              :
------------------------------------------------------X


**PLAINTIFF 1199'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS CROSS-MOTION TO COMPEL ARBITRATION
AND ITS OPPOSITION TO DEFENDANT'S MOTIONS TO
STAY THE ARBITRATION AND DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Allyson A. Belovin, Esq.
Levy Ratner, P.C.
80 Eighth Avenue Floor 8
New York, NY 10011-5126
(212) 627-8100
(212) 627-8182 (fax)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 3

    I.    THE UNION'S CLAIMS REGARDING THE AFTER
         ACQUIRED CLAUSE ARE LAWFUL AND ARBITRABLE ........................................ 3

    II.   THE UNION'S CLAIMS WITH RESPECT TO
         THE NEUTRALITY AGREEMENT ARE ARBITRABLE ............................................ 6

    III.  RITE AID'S MOTION TO DISMISS THE
         AMENDED COMPLAINT SHOULD BE DENIED. ........................................................ 8

CONCLUSION .................................................................................................................................... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abram Landau Real Estate v. Bevona,
    123 F.3d 69 (2d Cir. 1997)..................................................................................6, 7

Aramark Sports and Entertainment,
    04-1 Lab. Arb. Awards (CCH) 3676 (Dobry, 2003).............................................5

Beckett Paper Company,
    95-2 Lab. Arb. Awards (CCH) 5344 (Goldman, 1995).........................................5

Brotherhood of Teamsters and Automobile Truck Drivers
    Local # 70 v. Interstate Distributing Co.,
    832 F.2d 507 (9th Cir. 1987) ..................................................................................7

Hotel Employees, Restaurant Employees, Local 2 v. Marriott Corp.,
    961 F.2d 1546 (9th Cir. 1992) ................................................................................3

International Association of Machinists v. General Electric Co.,
    496 F.2d 1046 (2d Cir. 1968)..................................................................................2

International Associate of Machinists v. United States Potash Co.,
    270 F.2d 496 (10th Cir. 1959) ................................................................................5

Katz v. Feinberg,
    290 F.3d 95 (2d Cir. 2002).....................................................................................7

Kroger Co.,
    219 N.L.R.B. 388 (1975) .......................................................................................3

Pall Corp. v. NLRB,
    275 F.3d 116 (D.C.Cir. 2002) ................................................................................3

Rochdale Village, Inc. v. Public Service Emp. Union,
    605 F.2d 1290 (2d Cir. 1979).................................................................................7

Transit Mix concrete corp. v. Local Union 282,
    809 F.2d 963 (2d Cir. 1987)...................................................................................2

UMWA v. Rag America Coal Co.,
    392 F.3d 1233 (10th Cir. 2004) .............................................................................5

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
1199SEIU, UNITED HEALTHCARE            :
WORKERS EAST,                          :
                                       :
           Plaintiff,                  :    07-Civ.-4816 (GBD)
                                       :
     v.                                :
                                       :
RITE AID CORPORATION                   :
                                       :
           Defendant.                  :
-------------------------------------------------------X
```

**PLAINTIFF 1199'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS CROSS-MOTION TO COMPEL ARBITRATION
AND ITS OPPOSITION TO DEFENDANT'S MOTIONS TO
<u>STAY THE ARBITRATION AND DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

## INTRODUCTION

1199SEIU, United Healthcare Workers East ("1199" or "Union") submits this reply memorandum of law in further support of its Cross-Motion to compel Defendant Rite Aid Corporation ("Rite Aid" or "Employer") to arbitrate a contractual dispute and in opposition to Rite Aid's motions to stay that arbitration and to dismiss Plaintiff's Amended Complaint.

As the Court is aware, a dispute exists between Rite Aid and 1199 regarding the Union's representation of and the collective bargaining agreement's ("CBA") application to employees at newly acquired Rite Aid drug stores (formerly Eckerd drug stores and referred to herein as "Eckerd stores"). Specifically, the Union claims that by stating its intention to operate the Eckerd stores pursuant to a "union free business model," and by implementing a union avoidance campaign targeted at the employees of those stores, Rite Aid violated both the CBA's After-

Acquired Clause (*see* Exhibit C, CBA, Article 1, p. 2) [1] and the parties' Neutrality Agreement (*see* Exhibit F).

Notwithstanding the broad arbitration provisions in both the CBA and the Neutrality Agreement, Rite Aid seeks a stay of arbitration. However, in none of its submissions to date has Rite Aid set forth a single cognizable basis for ignoring the strong national policy favoring arbitration of labor disputes. *See, e.g.*, Transit Mix concrete corp. v. Local Union 282, 809 F.2d 963, 968 (2d Cir. 1987), quoting Int'l Ass'n of Machinists v. General Electric Co., 496 F.2d 1046 (2d Cir. 1968). Instead, perhaps with the hope that the simple act of repeating itself will make its positions more valid, Rite Aid continues to assert disingenuous and inaccurate descriptions of the nature of the Union's claims, the breadth of the CBA's arbitration provision, and the existence of the Neutrality Agreement. These assertions are insufficient to permit Rite Aid to avoid an arbitrator's resolution of what this Court has already recognized to be a clearly arbitrable dispute. *See* Exhibit A, Transcript of July 19, 2007 Conference before Hon. George B. Daniels ("Conf. Tr.") pp. 66, 67. As this Court noted,

> without injunctive relief, I don't anticipate that any further action by this Court would be taken with regard to the merits of the arbitrable dispute unless the nature of the dispute turns out to be something more than a dispute over enforcement of the collective bargaining agreement, which by its provisions is clearly enforceable by an arbitrator's determination and not a court's determination.

Id. at 66.

Therefore, as set forth in Plaintiff's moving papers, and as further discussed below, the underlying dispute is arbitrable under both the CBA and the Neutrality Agreement and an order

---

[1] Exhibits referred to herein are those attached to the Affirmation of Allyson L. Belovin dated July 16, 2007 that accompanied Plaintiff's Motion to Compel Arbitration.

should issue compelling Rite Aid to arbitrate the dispute, denying its motions to stay and to dismiss the Amended Complaint, and granting such further relief as this Court deems just and proper.

## ARGUMENT

I.     **THE UNION'S CLAIMS REGARDING THE AFTER ACQUIRED CLAUSE ARE LAWFUL AND ARBITRABLE**

Unable to maintain its position that the After-Acquired Clause is unlawful in the face of well-settled law to the contrary,[2] Rite Aid now abandons that argument and seeks to stay the arbitration based on its patently false assertion the Union is seeking to enforce the After-Acquired Clause in an unlawful manner. Rite Aid's claim that the Union has demanded and seeks in arbitration the automatic application of the CBA to Eckerd employees without any showing of majority status is inaccurate and, given the Union's representations in this and other proceedings, can only be explained as a deliberate effort to mislead the Court. As the Union has stated to this Court, to the National Labor Relations Board, and to the American Arbitration Association, the Union is simply seeking the lawful enforcement of the After-Acquired Clause: application of the CBA to employees at the Eckerd stores upon the demonstration of majority support among those employees. The Union does not seek, and acknowledges it has no right to obtain, an arbitration award applying the CBA to Eckerd employees without majority status.

---

[2] In its moving papers, as well as in other submissions to this Court, the Union demonstrated that the CBA's After-Acquired Clause is valid and enforceable upon a showing of majority support. *See Kroger Co.*, 219 NLRB 388, 389 (1975); *see also Pall Corp. v. NLRB*, 275 F.3d 116, 118 (D.C.Cir. 2002); *Hotel Employees, Restaurant Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1546, 1468 (9th Cir. 1992). Rite Aid does not and cannot dispute that *Kroger* and its progeny remains good law.

Therefore, Rite Aid's contention that the Union's efforts at enforcing the After-Acquired Clause render the dispute inarbitrable is baseless.

Similarly baseless is Rite Aid's argument that the Union's claims with respect to the After-Acquired Clause are not viable because it has not yet demanded recognition at any Eckerd store. The Union makes two claims with respect to the After-Acquired Clause: first, that Rite Aid's stated intention to operate the Eckerd stores pursuant to a "union free business model" constitutes a threatened breach of the After-Acquired Clause, and second, that Rite Aid's union avoidance campaign constitutes a breach of the After-Acquired Clause's implied covenant of good faith and fair dealing. As remedies, the union seeks both a declaratory award that the After-Acquired Clause requires Rite Aid to apply the CBA to employees at the Eckerd stores when the Union demonstrates majority support and an order requiring Rite Aid to cease and desist from engaging in its anti-union campaign while the Union collects the majority support necessary to enforce the After-Acquired Clause.

With respect to the Union's first claim -- that Rite Aid threatened to breach the After-Acquired Clause by stating that it will operate the Eckerd stores pursuant to a "union free business model" -- it is initially worth noting that Rite Aid has not denied making such statements in any of its submissions or otherwise provided the Union or this Court with assurances that it will recognize the Union upon a showing of majority support. Rather, Rite Aid simply argues that the Union's claim is not ripe, ignoring the clear language of the CBA's broad grievance and arbitration provision. That provision allows for the arbitration of all grievances and defines "grievance" as "all complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or *threatened breach* of this agreement .

. .") Exhibit C, CBA, Article 31, p. 54 (emphasis added). Thus, the Union is entitled to grieve Rite Aid's threatened breach of the After-Acquired Clause, to submit that grievance to arbitration, and to obtain a declaratory award from the arbitrator regarding the threatened breach.

The Union's second claim -- that Rite Aid's union avoidance campaign violates the After-Acquired Clause's implied covenant of good faith and fair dealing -- is clearly viable as it involves Rite Aid's actual and ongoing conduct, conduct which Rite Aid does not and cannot deny. As noted in our moving papers, a dispute over a subject not expressly mentioned in a collective bargaining agreement -- as the union avoidance campaign is here -- is suitable for arbitration under a good faith and fair dealing theory. *See*, UMWA v. Rag Am. Coal Co., 392 F.3d 1233 (10th Cir. 2004); International Assoc. of Machinists v. United States Potash Co., 270 F.2d 496 (10th Cir. 1959). Accordingly, arbitrators have routinely applied the doctrine of good faith and fair dealing to parties' collective bargaining agreements and have interpreted the requirements of the doctrine in the context of such agreements. *See, e.g.,* Aramark Sports and Entertainment, 04-1 Lab. Arb. Awards (CCH) 3676 (Dobry, 2003); Beckett Paper Company, 95-2 Lab. Arb. Awards (CCH) 5344 (Goldman, 1995).[3] Therefore, whether Rite Aid's union avoidance campaign violates the After-Acquired Clause's implied covenant of good faith and fair dealing is a matter of contract interpretation properly consigned to the arbitrator.

---

[3] Copies of the arbitration decisions cited herein were previously submitted to this Court on July 16, 2007 as Exhibit 1 to Plaintiff's Memorandum of Law in Support of its Cross-Motion to Compel Arbitration.

**II.     THE UNION'S CLAIMS WITH RESPECT TO
         THE NEUTRALITY AGREEMENT ARE ARBITRABLE**

Rite Aid seeks to avoid arbitration with respect to the Neutrality Agreement by claiming, based on a separate and ambiguous document, that the Neutrality Agreement has expired. *See* Exhibit I. A determination as to whether this document terminates the Neutrality Agreement is one for the arbitrator to make, not this Court. The Neutrality Agreement contains a broad arbitration clause which provides an arbitrator with authority to hear and resolve "all disputes" regarding the application of the Agreement. Exhibit F, ¶9. Included among "all disputes" are disputes regarding the agreement's expiration.

Notwithstanding Rite Aid's efforts to distinguish Abram Landau Real Estate v. Bevona, 123 F.3d 69 (2d Cir. 1997), that case is clearly applicable here. In Bevona, as in this case, the Employer claimed that the agreement pursuant to which the Union sought arbitration had expired. Id. The Court properly held that "[w]here the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the 'evergreen' clause, disputes over these matters should be submitted to arbitration." Id. at 73. Here, the Neutrality Agreement has a broad arbitration clause covering "all disputes" and neither the arbitration clause nor any other provision of the Neutrality Agreement excludes disputes over what Rite Aid deems a termination or "sunset" provision. *See* Exhibits F and I. Thus, if the termination provision is, as Rite Aid contends, a part of the Neutrality Agreement, any dispute over that provision *must* be submitted to arbitration.

The fact that <u>Bevona</u> involved the application of an evergreen clause while this case involves a so-called "sunset" provision, is of absolutely no import. The question in both cases is whether, based on an interpretation of certain provisions, the agreement expired. As the Court stated in *Bevona*, that question is one for an arbitrator. *See also*, <u>Brotherhood of Teamsters and Auto Truck Drivers Local # 70 v. Interstate Distrib. Co.</u>, 832 F.2d 507 (9th Cir. 1987); <u>Rochdale Village, Inc. v. Public Service Emp. Union</u>, 605 F.2d 1290, 1095 (2d Cir. 1979).

<u>Katz v. Feinberg</u>, 290 F.3d 95 (2d Cir. 2002), the primary case relied upon by Rite Aid, does not warrant a different conclusion. The Court in <u>Katz</u> considered whether to vacate a commercial arbitration award interpreting an agreement with two separate provisions, one which consigned "all disputes" to arbitration and another which specified that valuation determinations are to be made by the company accountants and such determinations are not subject to arbitration. The Court concluded that the parties' dispute, which involved the valuation of the company's shares, was not arbitrable because of the separate provision excluding valuation determinations from arbitration. Leaving aside the fact that <u>Katz</u> is a commercial arbitration case that does not implicate the same national policy favoring the arbitration of labor disputes, this case is significantly distinguishable from the instant matter. Whereas in <u>Katz</u>, the agreement at issue contained a specific provision excluding certain disputes from arbitration, the Neutrality Agreement between 1199 and Rite Aid contains no such exclusionary clause, it simply contains a broad provision relegating "all disputes" to resolution by an arbitrator. *See* Exhibit F.

Moreover, Rite Aid's contention that the Union seeks to arbitrate a breach of the Neutrality Agreement under the CBA's arbitration clause is simply incorrect. The Neutrality Agreement's own arbitration clause provides the basis for arbitrating that breach. As Rite Aid

has repudiated the existence of that agreement, the Union was left with no choice but to seek the appointment of an arbitrator by the American Arbitration Association ("AAA"). Indeed, in compliance with the Neutrality Agreement's requirement that all disputes regarding the application of the agreement be resolved by "an arbitrator mutually agreed upon by the parties" (*see* Exhibit F, ¶9), 1199 and Rite Aid mutually agreed upon Arbitrator Richard Roth pursuant to the AAA's procedures for designating an arbitrator.

### III. RITE AID'S MOTION TO DISMISS THE AMENDED COMPLAINT SHOULD BE DENIED.

On June 15, 2007, Rite Aid filed a motion to dismiss the Union's original complaint which sought a preliminary injunction of Rite Aid's union avoidance campaign. Following the Court's denial of the Union's request for injunctive relief on June 19, 2007, the Union amended its complaint to assert the existence of the Neutrality Agreement and to seek an order compelling Rite Aid to arbitrate the underlying dispute. Rather than filing a new motion to dismiss the Amended Complaint, Rite Aid has chosen to rely upon its original motion.

As its stands, Rite Aid's motion to dismiss the Amended Complaint is based entirely upon its contention that the dispute is not arbitrable. For all of the reasons discussed in Parts I and II above, the dispute is arbitrable under both the CBA and the Neutrality Agreement and Rite Aid's motion to dismiss the Amended Complaint should, therefore, be denied.

## CONCLUSION

For all of the foregoing reasons, and as set forth in the Union's moving papers, this Court should issue an order compelling Rite Aid to arbitrate the underlying dispute between the parties, denying Rite Aid's motions to stay the arbitration and dismiss the Amended Complaint, and granting such further relief as this Court deems just and proper.

Dated: New York, New York
June 30, 2007

                                        Respectfully submitted,

                                        LEVY RATNER, P.C.

                                        By:   /s/ Allyson L. Belovin
                                               Allyson L. Belovin (AB 3702)
                                               80 Eighth Avenue, 8th Floor
                                               New York, New York 10011
                                               (212) 627-8100 (phone)
                                               (212) 627-8182 (fax)
                                               abelovin@lrbpc.com