UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                                       :

1199 SEIU, UNITED HEALTHCARE        :
WORKERS EAST
                                                      :
                       Plaintiff,      : :    MEMORANDUM DECISION
                                     : :         AND ORDER
         -against-               : :
                                        :       07 CV 4816 (GBD)
RITE AID CORPORATION,                  :

                       Defendant.     :
------------------------------------- x

GEORGE B. DANIELS, District Judge:

      Plaintiff 1199 SEIU, United Healthcare Workers East, ("plaintiff" or "the Union"), brought this action, under Section 301 of the Labor Management Relations Act of 1947, as amended 29 U.S.C. § 185, seeking a preliminary injunction in aid of arbitration against defendant Rite Aid Corporation, ("defendant" or "Rite Aid").  This Court denied, without prejudice, the Union's motion for a preliminary injunction.  Thereafter, defendant filed motions to dismiss this action and to stay arbitration proceedings.  Plaintiff then filed an amended complaint and cross-moved to compel arbitration.  Defendant contends this Court should dismiss plaintiff's amended complaint, and this entire action, with prejudice.

## BACKGROUND

      The plaintiff Union represents approximately 6,500 pharmacists, pharmacy technicians and interns, clerks, stock persons, shift supervisors, assistant managers, and other employees of Rite Aid in various counties and cities in New York and New Jersey ("Bargaining Unit").  The Union and Rite Aid have been parties to a number of successive collective bargaining agreements, the most recent of which was for the period beginning October 11, 1998 and

continuing through October 10, 2002 ("CBA"). The CBA was extended, with certain modifications, by two subsequent Memoranda of Agreement. The CBA contains an after-acquired clause[1], which both parties agree, requires Rite Aid to apply the terms of the CBA to all stores in which the company acquires an interest of 50% or more in certain counties in the Bargaining Unit, upon a showing of majority support for the Union. See Defendant's Memorandum of Law in Further Support of Rite Aid Corporation's Motion to Dismiss at 5. In June 1998, the parties also entered into a separate neutrality agreement, which, in relevant part, provides: "Rite Aid further agrees that it and its managers and supervisors shall remain entirely neutral with respect to unionization and 1199 as the union seeking to represent its employees. 1199 will not disparage Rite Aid or its management in the course of these efforts." Supplemental Affidavit of Laurianne D. Vallone, ("Vallone Supp. Aff."), Ex. A, p. 2. While the parties agree that the CBA remains in effect, the parties disagree about whether the 1998 Neutrality Agreement remains in force. Plaintiff contends that the 1998 Neutrality Agreement is currently binding on the parties, while defendant asserts that it, and Rite Aid's duty to remain neutral during the unionization process, expired on October 31, 1998.[2]

---

[1]Article 1 of the CBA provides: "This agreement shall be binding upon the Union, the Employer and its successors and assigns, but shall apply only to those drug stores operated by said Employer, and to drug stores hereafter opened by the Rite Aid Corporation (including, but not limited to those in which the Employer directly or indirectly acquires an interest of 50% or more in existing stores), in the City of New York, and the New York Counties of Nassau, Suffolk, Westchester, Orange, Putnam, Ulster, Dutchess, Sullivan, and Rockland, and the City of Albany, and the New Jersey Counties or Passaic, Bergen, Essex, Hudson, and Union, and the Cities of Edison, Perth Amboy, Carteret and Woodbridge in Middlesex County, New Jersey, regardless of the name or whether the drug store is operated individually or as a partnership or corporation." Affidavit of Laurianne D. Vallone ("Vallone Aff."), Ex. 1, p. 2.

[2]Defendant contends that the cover sheet attached to the 1998 Neutrality Agreement "was signed on the same day by the same individuals as the 1998 agreement. It required that (1) the recognition process; and (2) the terms and conditions of the collective bargaining agreement to be negotiated 'shall be completed by October 31, 1998.' The 1998 agreement by its expired terms covered only stores that existed and were non-union at the time the agreement was signed. The

This dispute arises out of the acquisition of Eckerd and Brooks drug stores, by Rite Aid, from the Jean Coutu Group, Inc., ("Coutu"), a former defendant voluntarily dismissed from this action.  In August 2006, Rite Aid entered into an agreement with Coutu to acquire these additional drug stores within the Bargaining Unit area.  Vallone Aff., Ex. B ¶¶ 17.  According to plaintiff, before the acquisition was completed, a senior vice president in Rite Aid's human resources department told senior Union representatives that Rite Aid planned to operate the newly acquired stores "under a 'union-free' business model."  Vallone Aff., ¶ 44.  Plaintiff also alleges that in the early Spring of 2007, defendant in conjunction with Eckerd management launched a campaign, directed at Eckerd employees, designed to discourage employee support for the Union ("the Union Avoidance Campaign").  Plaintiff contends that Rite Aid's stated intention to operate the new stores according to a union-free business model, in conjunction with the Union Avoidance Campaign, violates the CBA and the 1998 Neutrality Agreement, documents to which both parties are signatories.

On May 31, 2007, the Union sent an arbitration demand to the American Arbitration Association, seeking "declaratory relief from an arbitrator that Rite Aid's stated intention of keeping the to-be-acquired Eckerd Stores union-free is a violation of Article 1 of the CBA," and "an order enjoining the Employer from further engaging in anti-union campaign activities..." Vallone Aff., ¶ 47; Ex. 12, at 1.  On June 5, 2007, Rite Aid filed an unfair labor practice charge against the Union with the National Labor Relations Board ("NLRB"), alleging that the Union's efforts to automatically apply the CBA to new Rite Aid employees without regard to the wishes

---

operative language covers only 'those Rite Aid stores which are currently non-union ("the Non-union stores") and the process by which 1199 may obtain status as collective bargaining representative of the employees in the Non-union stores.'" Defendant's Memorandum of Law in Support of Rite Aid Corporation's Motion to Stay Arbitration Proceedings at 8.  Thus, Rite Aid reasons that the language of the cover sheet and the 1998 Neutrality Agreement indicates that Rite Aid's duty to remain neutral ended upon the completion of terms of the contract on October 31, 1998.

3

of those employees violates the National Labor Relations Act, 29 U.S.C. §158. On June 6, 2007, plaintiff filed the instant action seeking preliminary injunctive relief. On June 7, 2007, defendant filed a second unfair labor practice charge with the NLRB, protesting plaintiff's lawsuit. This Court denied, without prejudice, the Union's motion for a preliminary injunction[3], finding that plaintiff had failed to satisfy its burden of showing irreparable injury or likelihood of success. On July 2, 2007, Defendant filed a motion to dismiss the claim and to stay arbitration proceedings. Plaintiff then filed an amended complaint and cross-moved to compel arbitration.

In its Amended Complaint, plaintiff petitioned this Court to "enter an order directing the Defendant to submit to arbitration the disputes between the parties involving Rite Aid's threatened refusal to apply the terms of the parties' CBA to drugstores acquired by Rite Aid and the Defendant's union avoidance campaign directed towards those employees at those stores..." Pl. Amend. Compl., Prayer for Relief. Plaintiff alleges that Rite Aid's alleged anti-Union behavior violates the parties contractual responsibilities under the both CBA and the 1998 Neutrality Agreement.

## THE COLLECTIVE BARGAINING AGREEMENT

"The question of 'substantive arbitrability' is for the court not for the arbitrator to decide." Livingston v. John Wiley & Sons, Inc., 313 F.2d 52, 55 (2d Cir. 1963) (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962)). In determining whether a dispute is arbitrable, a court must decide "whether the parties agreed to arbitrate, and if so, whether the

---

[3]This Court ruled that plaintiff had not demonstrated "that Rite Aid is engaged in or it will be imminently engaged in a course of conduct which would cause irreparable injury." Transcript of June 19, 2007 Conference, 64. The Court also refused to enjoin defendant "from engaging in any lawful activity that would take a position with regard to unionization or with regard to 1199 being the collective bargaining unit for new employees in stores that are not yet unionized", as plaintiff failed to produce sufficient evidence to demonstrate a likelihood of success. Id., 62-63.

scope of that agreement encompasses the asserted claims." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 45 (2d Cir. 1993) (quoting David L. Threlkeld & Co. v. Metallgesellschafr Ltd., 923 F.2d 245, 249 (2d Cir. 1991)).

Since the Supreme Court's decision in the 1960 Steelworkers Trilogy[4], federal courts have routinely held that arbitration should be compelled unless it is clear that the dispute is not arbitrable under any interpretation of the relevant contract. See, e.g., Transit Mix Concrete Corp. v. Local Union No. 282, 809 F.2d 963, 968 (2d Cir. 1987). Parties opposing arbitration must demonstrate "that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ITT World Communications, Inc. v. Communications Workers of America, 422 F.2d 77, 81 (2d Cir. 1970) (quoting Warrior & Gulf, 363 U.S. at 582-83).

The role of this Court in determining whether a particular arbitration clause covers the asserted dispute is limited, in that it "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." Bressette v. Int'l Talc Co., Inc., 527 F.2d 211 (2d Cir. 1991) (quoting American Mfg., 363 U.S. at 567-68). Clearly, a party cannot be compelled to arbitrate where it has not contracted to submit to arbitration. Truck Drivers Local Union No. 807, I.B.T. v. Regional Imp. & Exp. Trucking Co., Inc., 944 F.2d 1037, 1042 (2d Cir. 1991). However, disputes arising out of an agreement are properly put before an arbitrator where the relevant contract contains a broad arbitration clause, such as a clause referring to an arbitrator any and all disputes relating to the agreement. See e.g., Rochdale Vill., Inc. v. Public Serv. Employees Union, 605 F.2d 1290, 1295 (2d Cir. 1979).

---

[4]United Steelworkers of Am. v. American Mfg Co., 363 U.S. 565, 80 S.Ct. 1343 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347 (1960); United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358 (1960)

On May 31, 2007, plaintiff "filed a demand for arbitration seeking a declaratory relief from an arbitrator that Rite Aid's stated intention of keeping the to-be-acquired Eckerd Stores union-free is a violation of Article 1 of the CBA," and "an order enjoining the Employer from further engaging in anti-union campaign activities..." Vallone Aff., ¶ 47; Ex. 12, at 1. Plaintiff informed defendant of its demand by letter and requested that Rite Aid consent to expedited arbitration of the dispute. Id., ¶ 24. To date, defendant has not consented to arbitration. Defendant argues that it has not violated the CBA as plaintiff has neither produced any evidence that it has majority support in an appropriate bargaining unit, nor has it alleged that Rite Aid has refused to consider evidence of majority support and apply the CBA to such employees who have expressed support for the Union. It is Rite Aid's position that only after a majority of newly acquired employees embrace the Union, will Rite Aid be required to apply the terms of the CBA to those employees. Rite Aid also contends that neither the CBA nor the 1998 Neutrality Agreement impose upon defendant an obligation to remain neutral during the current unionization process.

The dispute over the requirements and possible violation of the CBA is a proper subject for arbitration.[5] The CBA's arbitration provision submits to arbitration, "[a]ll complaints or disputes arising between the Union and the Employer under or out of this Agreement, or any breach or threatened breach of this Agreement ("herein referred to as a "grievance")...". Vallone

---

[5] In its Amended Complaint, Plaintiff also alleged that under the terms of the 1998 Neutrality Agreement, Rite Aid must observe a neutral position with regards to the Union, and must refrain from Union avoidance tactics, as it acquires the new Eckerd and Brooks stores. The parties disagree as to whether the 1998 Neutrality Agreement is still in effect or has expired. In any event, plaintiff did not demand arbitration pursuant to the 1998 Neutrality Agreement's arbitration clause. Plaintiff alleged that defendant's Union Avoidance Campaign was a violation of the CBA. Whether any anti-union campaign activities engaged in by defendant violate the terms of the CBA, and any related issue of the 1998 Neutrality Agreement, is proper for consideration by the arbitrator.

Aff. Ex. 1, p. 54. It is the "paradigm of a broad clause." Oldroyd v. Elmira Savings Bank, FSB, 143 F.3d 72, 76 (2d Cir. 1998) (quoting Collins & Aikman Prod. Co. V. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (holding that such broad arbitration clauses warrant a presumption of arbitrability). The Union's claims that Rite Aid has refused to apply the terms of the CBA to its newly acquired drug stores and that Rite Aid is engaged in a Union Avoidance Campaign in violation of the terms of the CBA, give rise to a dispute that is arbitrable under the broad arbitration clause of the CBA. The parties are, therefore, ordered to submit to arbitration.

## CONCLUSION

Plaintiff's motion to compel arbitration is GRANTED. Defendant's motions to dismiss and to stay arbitration proceedings are DENIED.

Dated: March 24, 2008
New York, New York

SO ORDERED:

*[signature]*

GEORGE B. DANIELS
United States District Judge